Douglas S. Eakeley
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE CADBURY PLC SHAREHOLDER LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL CASES | **DOCUMENT ELECTRONICALLY FILED**<br><br>Civil Action No. 09-5006 (DMC) (MF)<br><br>**Hearing Date: January 21, 2010**<br><br>Filed Under the Briefing Schedule Set by the Court at the January 5, 2010 Hearing |

**DEFENDANTS' BRIEF IN OPPOSITION TO EXPEDITED DISCOVERY**

Defendants Roger Carr, Todd Stitzer, Andrew R.J. Bonfield, Wolfgang Berndt, Guy R. Elliot, Raymond Viault, Colin R. Day, Baroness Sarah Elizabeth Hogg, Lord Christopher Francis Patten and nominal defendant Cadbury plc (collectively, "Defendants") respectfully submit this brief in opposition to the requests for expedited discovery set forth in Plaintiffs' letter to the Court dated January 5, 2009 (the "Requests") (Docket No. 25).[1]

## I.   PLAINTIFFS ARE NOT ENTITLED TO EXPEDITED DISCOVERY

Plaintiffs' request for expedited discovery is wholly unjustified under these circumstances and should be denied outright.  The determination of whether a plaintiff is entitled to the extraordinary measure of expedited discovery "requires the party seeking the discovery to prove that the requests are reasonable under the circumstances."  *Better Packages, Inc. v. Zheng*, 2006 U.S. Dist. LEXIS 30119, at *6-7 (D.N.J. May 17, 2006).  This involves a consideration of factors such as "a pending preliminary injunction hearing, the need for the discovery and the breadth of the requests."  *Id.* at *8.  Plaintiffs cannot satisfy this standard.

First, there is no preliminary injunction hearing pending, nor is one necessary.  To the contrary, Plaintiffs stated at the conference on January 5, 2010 that "[t]he timing has changed since even the filing of [the request for a preliminary injunction].  This is a fairly fluid situation . . . .  And now we're functioning under slightly different timing."  (Jan. 5, 2010 Trans. at 9:9-16.)  Plaintiffs agreed with the Court that the present timing "allows us to not be so emergent."  (*Id.* at 9:21-22.).  Indeed, at the conference, Plaintiffs did not ask the Court for any injunctive relief, or even a preliminary injunction hearing, and have apparently withdrawn their request for a preliminary injunction *sub silientio*.  *See Better Packages, Inc.*, 2006 U.S. Dist. LEXIS 30119, at

---

[1] This brief is being submitted pursuant to the Court's direction at the conference held on January 5, 2010.  (*See* Jan. 5, 2010 Trans. at 19:20-24.)  Defendants are contemporaneously filing a Motion to Dismiss the Complaint, with supporting brief and Declaration of David Watkins, dated January 11, 2010 ("Watkins Decl") and Declaration of Douglas S. Eakeley, dated January 11, 2010 ("Eakeley Decl.").

*15 (denying expedited discovery where "there is no pending preliminary injunction hearing for which the parties need to prepare that would make expedited discovery necessary").

Second, Plaintiffs are seeking expedited discovery in support of their claims that Defendants breached their fiduciary duties for failing to negotiate a deal with Kraft and for publishing shareholder communications with allegedly material omissions. But nowhere in the Complaint do Plaintiffs assert which laws Defendants supposedly violated, or what disclosure obligations were supposedly breached. Indeed, Plaintiffs have not even asserted one violation of U.S. law, and their generic breach of fiduciary duty claims misapprehend the most basic elements of U.K. law. Specifically, Plaintiffs have failed to grasp that Cadbury's board has no power to accept or reject Kraft's offer under U.K. law – that power rests exclusively with the shareholders. (*See* Watkins Decl. ¶ 24.) The Complaint also ignores the objective fact that Cadbury's shares have traded consistently *above* Kraft's offer price since the offer was first announced in September 2009 – and continue to do so as of the date of this brief.[2] Since Plaintiffs' claims fail on their face, their request for expedited discovery cannot be reasonable. *See In re Sungard Data Sys., Inc. S'holders Litig.*, 2005 WL 1653975, at *2-3 (Del. Ch. July 8, 2005) (rejecting expedited discovery where plaintiff's allegations of improper disclosure in connection with a proposed merger did not present colorable claims); *Capgrowth Partners v. V. Prem Watsa, et al.*, No. CV 096002152-S, slip op. at *4 (Conn. Super. Ct. Oct. 16, 2009) (rejecting request for expedited discovery where plaintiff failed to make colorable claims).

---

[2] *See* David Jones, *Cadbury shares dip below Kraft bid for first time,* Reuters, Jan. 7, 2010 (noting that January 7 was the first date since Kraft's offer was announced that Cadbury's shares traded below Kraft's implied offer price), available at http://www.reuters.com/article/idUSTRE6054E120100107. Based on Kraft's stock price and the USD/GBP exchange rate at midday (EST) on January 11, 2010, Kraft's implied offer was worth 762 pence per share, and Cadbury closed at 781 pence per share on the London Stock Exchange. A court may take judicial notice of stock prices "because these facts are 'not subject to reasonable dispute [and are] capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned.'" *In re Merck & Co. Sec. Litig.* 432 F.3d 261, 264 n.3 (3d Cir. 2005) (quoting *Ieradi v. Mylan Lab., Inc.* 230 F.3d 594, 600 n.3 (3d Cir. 2000)).

2

Third, with respect to the breadth of the requests, Plaintiffs are seeking documents that are located entirely in England. But Plaintiffs have not followed the procedures in the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters. In addition, as explained in more detail below, the documents requested by Plaintiffs, such as discussions with potential third-party bidders and unverified financial projections, are protected from disclosure under U.S. or U.K. law, or both. Plaintiffs fail to acknowledge that their entire dispute is governed by U.K. law and procedures, which is highly developed in the area of takeover offers.

Plaintiffs are therefore not entitled to the extraordinary measure of expedited discovery.

## II. THE COURT SHOULD REJECT PLAINTIFFS' DISCOVERY REQUESTS

### A. General Objections

1. Defendants object to the Requests to the extent that they seek documents and information in the possession, custody or control of entities and citizens of the United Kingdom, which is a signatory to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444 (the "Hague Convention"), without following the procedures set forth in the Hague Convention for obtaining such documents and information.

2. Defendants object to the Requests to the extent that they seek the private disclosure of documents which, pursuant to Rule 20.1 of The City Code on Takeovers and Mergers (the "Takeover Code"), Defendants would be required to disclose to all shareholders. Defendants are not permitted to selectively provide documents to Plaintiffs without having to provide such documents to all shareholders. (*See* Watkins Decl. ¶ 47.)

3. Defendants object to the Requests to the extent that they purport to require Defendants to produce documents that were prepared for or in anticipation of litigation, that

3

constitute attorney work product, that are protected by the attorney-client privilege or the joint-defense privilege, that constitute or disclose the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Defendants concerning this or any other litigation, or that are protected by any other applicable privilege, statute, rule or immunity. Such information will not be produced to Plaintiffs, and any inadvertent production shall not be deemed a waiver of any privilege with respect to such information or of any work product doctrine which may apply. Defendants reserve their rights to demand and obtain the return of any such document and all copies thereof.

4. Defendants object to the Requests to the extent that they are overly broad, unduly burdensome or seek information that is not relevant to the claims or defenses asserted by the parties in this litigation, or are otherwise outside the scope of discovery permitted by the Hague Convention and/or Federal Rules of Civil Procedure. Defendants also object to the Requests to the extent they are vague, ambiguous or fail to specify the documents sought with reasonable particularity.

5. Defendants object to the Requests to the extent that they purport to require Defendants to produce documents and information outside their possession, custody or control.

6. Each one of these General Objections is incorporated in each Specific Objection below as if fully set forth therein.

**B.     Specific Objections**

**Request No. 1**

Cadbury Board meeting minutes with attachments and materials reviewed at the meetings, insofar as the materials relate to the Tender Offer, employment agreements, stockholder agreements, voting agreements, stock options, strategic alternatives or the potential acquisition by or business combination with Kraft, Nestle, Ferrero, Hershey or any other possible Cadbury.

4

Response to Request No. 1

Board discussions and deliberations in response to a potential takeover are protected by the business strategy doctrine. *See Grand Metro. PLC v. Pillsbury Co.*, 1988 WL 130637 (Del. Ch. Nov. 21, 1988) (holding that board's efforts to find alternative takeover transactions that would better promote corporate and shareholder welfare are protected from disclosure by the business strategy doctrine). In addition, these materials are highly sensitive and contain discussions about potential third-party offers, which are protected from disclosure. *See Dolphin Ltd. P'ship I, L.P. v. info USA, Inc.*, 2006 Del. Ch. LEXIS 76, at *3 (Del. Ch. Apr. 11, 2006) (denying plaintiff's request for board materials in the context of a proxy contest because "the materials still contain highly sensitive non-public information concerning valuation and strategic alternatives, including potential strategic partners").

Furthermore, Schedule 14d-9, which sets forth the information to be included in Cadbury's Solicitation/Recommendation Statement on Schedule 14D-9 to U.S. shareholders, explicitly provides that disclosures regarding third parties are *not* required if the board has made a determination that such disclosure would jeopardize ongoing negotiations and would not be in the best interest of shareholders. *See* 17 C.F.R. Section 240.14d-101. U.K. law is consistent in this regard. (*See* Watkins Decl. ¶ 46.) Accordingly, paragraph 13.1 of Appendix 1 to Cadbury's Schedule 14D-9 states that:

> The Board has determined that disclosure with respect to the parties to, and the possible terms of any transactions or proposals would jeopardise any discussions that Cadbury may engage in and therefore would not be in the interests of Shareholders. Accordingly, the Board has adopted a resolution instructing management not to disclose the possible terms of any such transactions or proposals, or the parties thereto, unless and until an agreement in principle relating thereto has been reached or, upon the advice of counsel, as may otherwise be required by law.

(Ex. 6 to Eakeley Decl.) Thus, the production of the documents demanded by Plaintiffs is not required under U.S. or U.K. law and would be contrary to the best interest of shareholders.

5

**Request No. 2**

All materials given to or received from the Company's financial advisor Goldman Sachs International, Morgan Stanley & Co., and UBS Limited, relating to the Tender offer or the potential acquisition or business combination with Kraft, Nestle, Ferrero, Hershey or any other possible acquirer of Cadbury, including, but not limited to projections of the company's future financial performance and valuation of the Company's assets.

> Response to Request No. 2

Non-public financial analyses are protected from disclosure in an active merger or takeover situation. *See NiSource Capital Mkts., Inc. v. Columbia Energy Group*, 1999 Del. Ch. LEXIS 198, at *1 (Del. Ch. Sept. 24, 1999) (denying request for production of "highly confidential financial information" such as target's internal valuations, market comparables, discounted cash flow analysis and the premiums negotiated by targets in similar situations). In addition, the business strategy doctrine "entitles a target corporation to shield itself from discovery of time-sensitive information in the takeover context, including delicate financial information, defensive strategies, and potential responses to hostile bids." *Pfizer Inc. v. Warner-Lambert Co.*, 1999 WL 33236240, at *2 (Del. Ch. Dec. 8, 1999). Moreover, the disclosure of "projections of the company's future financial performance" is strictly regulated by the Takeover Code, which prohibits the public disclosure of unverified profit forecasts. (*See* Watkins Decl. ¶ 42-43.)

**Request No. 3**

All materials given to or received from the Panel on Takeovers and mergers relating to the Tender Offer or the potential acquisition of or business combination with Kraft, Nestle, Ferrero, Hershey or any other possible acquirer of Cadbury.

> Response to Request No. 3

The Takeover Panel is a statutory body of the United Kingdom which operates under a policy of strict confidentiality. The Panel strongly disfavors requests for information from it in relation to a particular takeover. (*See* Watkins Decl. ¶ 48.)

6

**Request No. 4**

Computer printouts summarizing to date the Cadbury executives' and directors' option holdings, options exercised, options vested and unvested, option grant dates, option vesting schedules, and option prices.

Response to Request No. 4

Details on executive directors' and dealings in Cadbury shares, including options, is disclosed in paragraph 6 of Appendix 1 in Cadbury's Schedule 14D-9, as required by the Takeover Code.

**Request No. 5**

Monthly and quarterly executive and/or director packages or any other document contained Cadbury's historical and projected operations and financial performance, and regulation of the Company's assets.

Response to Request No. 5

Non-public financial analyses are protected from disclosure in an active merger or takeover situation.  *See NiSource Capital Mkts*, 1999 Del. Ch. LEXIS 198, at *1 (denying request for production of "highly confidential financial information" such as target's internal valuations, market comparables, discounted cash flow analysis and the premiums negotiated by targets in similar situations).  In addition, the business strategy doctrine "entitles a target corporation to shield itself from discovery of time-sensitive information in the takeover context, including delicate financial information, defensive strategies, and potential responses to hostile bids."  *Pfizer Inc.*, 1999 WL 33236240, at *2.  Furthermore, detailed information on both executive remuneration and Cadbury's historical financial performance is available publicly.  To the extent this request seeks projections of future financial performance, the public disclosure of unverified profit forecasts is prohibited by the Takeover Code.  (*See* Watkins Decl. ¶ 42-43.)

**Request No. 6**

All communications between defendants, Goldman Sachs International, Morgan Stanley & Co., and UBS Limited, Kraft, Nestle, Ferrero, Hershey and/or any other entities expressing interest in acquiring Cadbury, and all communications to or from defendants containing any potential

7

acquisition of or business combination with Cadbury, or any other entity, any voting agreements, and/or any employment agreements.

Response to Request No. 6

This request (at least in part) seeks documents that are not in the possession, custody or control of Defendants. In addition, documents concerning or reflecting negotiations with potential third-party offerors are protected from disclosure in an active merger context. *See Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Servs.*, 1995 WL 347799, at *3 (Del. Ch. 1995) (recognizing "a target corporation's need to protect secret business strategies, such as negotiations with a white knight, from discovery by a hostile bidder"). Disclosure of such negotiations could interfere with the board's ability to maximize shareholder value. *See BNS Inc. v. Koppers Co., Inc.*, 683 F. Supp. 454, 457 (D. Del. 1988) (denying plaintiff's motion to compel documents relating to prospective defensive strategies on the basis that it would seriously impair the board's ability to negotiate a higher offer for its shareholders); *Temple Holdings v. Sea Containers*, 131 F.R.D. 360, 361 (D.D.C. 1989) (precluding discovery on the basis that "the interest of the shareholders would be impaired if discovery is permitted *at this time* with respect to alternatives being considered by the defendants"). As noted above, the board has already determined that the disclosure of information regarding third parties is not in the best interest of shareholders, and is therefore not required to be disclosed under U.S. or U.K. law.

**Request No. 7**

All communications between defendants and the Panel on Takeovers and Mergers relating to the Tender Offer or the potential acquisition of or business combination with Kraft, Nestle, Ferrero, Hershey or any other possible acquirer of Cadbury.

8

Response to Request No. 7

As noted above, the Takeover Panel is a statutory body of the United Kingdom which operates under a policy of strict confidentiality. The Panel strongly disfavors requests for information from it in relation to a particular takeover. (*See* Watkins Decl. ¶ 48.)

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Douglas S. Eakeley<br>Jason Halper<br>**LOWENSTEIN SANDLER PC**<br>65 Livingston Avenue |
| *Of Counsel:* | Roseland, New Jersey  07068 |
|  | 973.597.2500 |
| Alan S. Goudiss | 973.597.2400 (Fax) |
| Alexandra Dosman | deakeley@lowenstein.com |
| Brian G. Burke | *Attorneys for Defendants* |
| **SHEARMAN & STERLING LLP** |  |
| 599 Lexington Avenue |  |
| New York, New York  10022 |  |
| 212.848.4000 | By:  /s  Douglas S. Eakeley |

Dated:  January 11, 2010

9