**B₁**

## GENERAL PRINCIPLES

1.   All holders of the securities of an offeree company of the same class must be afforded equivalent treatment; moreover, if a person acquires control of a company, the other holders of securities must be protected.

2.   The holders of the securities of an offeree company must have sufficient time and information to enable them to reach a properly informed decision on the bid; where it advises the holders of securities, the board of the offeree company must give its views on the effects of implementation of the bid on employment, conditions of employment and the locations of the company's places of business.

3.   The board of an offeree company must act in the interests of the company as a whole and must not deny the holders of securities the opportunity to decide on the merits of the bid.

4.   False markets must not be created in the securities of the offeree company, of the offeror company or of any other company concerned by the bid in such a way that the rise or fall of the prices of the securities becomes artificial and the normal functioning of the markets is distorted.

5.   An offeror must announce a bid only after ensuring that he/she can fulfil in full any cash consideration, if such is offered, and after taking all reasonable measures to secure the implementation of any other type of consideration.

6.   An offeree company must not be hindered in the conduct of its affairs for longer than is reasonable by a bid for its securities.

**C₁**

# DEFINITIONS

### Acting in concert

*This definition has particular relevance to mandatory offers and further guidance with regard to behaviour which constitutes acting in concert is given in the Notes on Rule 9.1.*

Persons acting in concert comprise persons who, pursuant to an agreement or understanding (whether formal or informal), co-operate to obtain or consolidate control (as defined below) of a company or to frustrate the successful outcome of an offer for a company. A person and each of its affiliated persons will be deemed to be acting in concert all with each other (see Note 2 below).

Without prejudice to the general application of this definition, the following persons will be presumed to be persons acting in concert with other persons in the same category unless the contrary is established:—

(1)  a company, its parent, subsidiaries and fellow subsidiaries, and their associated companies, and companies of which such companies are associated companies, all with each other (for this purpose ownership or control of 20% or more of the equity share capital of a company is regarded as the test of associated company status);

(2)  a company with any of its directors (together with their close relatives and related trusts);

(3)  a company with any of its pension funds and the pension funds of any company covered in (1);

(4)  a fund manager (including an exempt fund manager) with any investment company, unit trust or other person whose investments such fund manager manages on a discretionary basis, in respect of the relevant investment accounts;

(5)  a connected adviser with its client and, if its client is acting in concert with an offeror or with the offeree company, with that offeror or with that offeree company respectively, in each case in respect of the interests in shares of that adviser and persons controlling#, controlled by or under the same control as that adviser (except in the capacity of an exempt fund manager or an exempt principal trader); and

(6)  directors of a company which is subject to an offer or where the directors have reason to believe a bona fide offer for their company may be imminent. (See Note 5 on this definition.)

*#See Note at end of Definitions Section.*

30.3.09

**C₂**

**DEFINITIONS *CONTINUED***

*NOTES ON ACTING IN CONCERT*

*1.   Break up of concert parties*

*Where the Panel has ruled that a group of persons is acting in concert, it will be necessary for clear evidence to be presented to the Panel before it can be accepted that the position no longer obtains.*

*2.   Affiliated persons*

*For the purposes of this definition an "affiliated person" means any undertaking in respect of which any person:*

*(a)  has a majority of the shareholders' or members' voting rights;*

*(b)  is a shareholder or member and at the same time has the right to appoint or remove a majority of the members of its board of directors;*

*(c)  is a shareholder or member and alone controls a majority of the shareholders' or members' voting rights pursuant to an agreement entered into with other shareholders or members; or*

*(d)  has the power to exercise, or actually exercises, dominant influence or control.*

*For these purposes, a person's rights as regards voting, appointment or removal shall include the rights of any other affiliated person and those of any person or entity acting in his own name but on behalf of that person or of any other affiliated person.*

*3.   Underwriting arrangements*

*The relationship between an underwriter (or sub-underwriter) of a cash alternative offer and an offeror may be relevant for the purpose of this definition. Underwriting arrangements on arms' length commercial terms would not normally amount to an agreement or understanding within the meaning of acting in concert. The Panel recognises that such underwriting arrangements may involve special terms determined by the circumstances, such as weighting of commissions by reference to the outcome of the offer. However, in some cases, features of underwriting arrangements, for example the proportion of the ultimate total liability assumed by an underwriter, the commission structure or the degree of involvement of the underwriter with the offeror in connection with the offer, may be such as to lead the Panel to conclude that a sufficient level of understanding has been created between the offeror and the underwriter to amount to an agreement or understanding within the meaning of acting in concert. In cases of doubt, the Panel should be consulted.*

30.3.09

**C3**

**DEFINITIONS *CONTINUED***

*NOTES ON ACTING IN CONCERT continued*

4.   *Other statutory or regulatory provisions*

*This definition applies only in respect of the relevant provisions of the Code. Any Panel view expressed in relation to "acting in concert" can only relate to the Code and should not be taken as guidance on the interpretation of any other statutory or regulatory provisions.*

5.   *Standstill agreements*

*Agreements between a company, or the directors of a company, and a person which restrict that person or the directors from either offering for, or accepting an offer for, the shares of the company or from increasing or reducing the number of shares in which he or they are interested, may be relevant for the purpose of this definition. In cases of doubt, the Panel should be consulted.*

6.   *Consortium offers*

*Investors in a consortium (eg through a vehicle company formed for the purpose of making an offer) will normally be treated as acting in concert with the offeror. Where such an investor is part of a larger organisation, the Panel should be consulted to establish which other parts of the organisation will also be regarded as acting in concert.*

*Where the investment in the consortium is, or is likely to be, 10% or less of the equity share capital (or other similar securities) of the offeror, the Panel will normally be prepared to waive the acting in concert presumption in relation to other parts of the organisation, including any connected fund manager or principal trader, provided it is satisfied as to the independence of those other parts from the investor. Where the investment is, or is likely to be, more than 10% but less than 50%, the Panel may be prepared to waive the acting in concert presumption in relation to other parts of the organisation depending on the circumstances of the case. (See also Connected fund managers and principal traders in the Definitions Section and Rule 7.2.)*

7.   *Pension funds*

*The presumption that a company is acting in concert with any of its pension funds will normally be rebutted if it can be demonstrated to the Panel's satisfaction that the assets of the pension fund are managed under an agreement or arrangement with an independent third party which gives such third party absolute discretion regarding dealing, voting and offer acceptance decisions relating to the fund. Where, however, the discretion given is not absolute, the presumption will be capable of being rebutted, provided that the pension fund trustees do not exercise any powers they have retained to intervene in such decisions.*

30.3.09

**C4**

**DEFINITIONS** *CONTINUED*

*NOTES ON ACTING IN CONCERT continued*

8.   *Sub-contracted fund managers*

*Where a fund manager sub-contracts discretionary management of funds to another independent fund manager, the Panel will normally regard those funds as controlled by the latter if the discretion regarding dealing, voting and offer acceptance decisions relating to the funds, originally granted to the fund manager, has been transferred to the sub-contracted fund manager and presumption (4) will apply to the sub-contracted fund manager in respect of those funds. This approach assumes that the sub-contracted fund manager does not take instructions from the beneficial owner or from the originally contracted manager on the dealings in question and that fund management arrangements are not established or used to avoid disclosure.*

9.   *Irrevocable commitments*

*A person will not normally be treated as acting in concert with an offeror or the offeree company by reason only of giving an irrevocable commitment. However, the Panel will consider the position of such a person in relation to the offeror or the offeree company (as the case may be) in order to determine whether he is acting in concert if either:*

*(a)   the terms of the irrevocable commitment give the offeror or the offeree company (as the case may be) either the right (whether conditional or absolute) to exercise or direct the exercise of the voting rights attaching to the shares or general control of them; or*

*(b)   the person acquires an interest in more shares.*

*The Panel should be consulted before the acquisition of any interest in shares in such circumstances.*

**Associate**

*This definition has particular relevance to disclosure of dealings under Rule 8.*

It is not practicable to define associate in terms which would cover all the different relationships which may exist in an offer. The term associate is intended to cover all persons (whether or not acting in concert) who directly or indirectly are interested or deal in relevant securities of an offeror or the offeree company in an offer and who have an interest or potential interest, whether commercial, financial or personal, in the outcome of the offer.

Without prejudice to the generality of the foregoing, the term associate will normally include the following:—

(1) an offeror's or the offeree company's parent, subsidiaries and fellow subsidiaries, and their associated companies, and companies of which such

**C₅**

**DEFINITIONS *CONTINUED***

companies are associated companies (for this purpose ownership or control of 20% or more of the equity share capital of a company is regarded as the test of associated company status);

(2)   connected advisers and persons controlling#, controlled by or under the same control as such connected advisers;

(3)   the directors (together with their close relatives and related trusts) of an offeror, the offeree company or any company covered in (1);

(4)   the pension funds of an offeror, the offeree company or any company covered in (1);

(5)   any investment company, unit trust or other person whose investments an associate manages on a discretionary basis, in respect of the relevant investment accounts;

(6)   an employee benefit trust of an offeror, the offeree company or any company covered in (1); and

(7)   a company having a material trading arrangement with an offeror or the offeree company.

**Cash acquisitions**

Acquisitions for cash include contracts or arrangements where the consideration consists of a debt instrument capable of being redeemed in less than 3 years.

**Competition reference period**

Competition reference period means the period from the time when an announcement is made of the referral of an offer or possible offer to the Competition Commission or of the initiation of proceedings by the European Commission under Article 6(1)(c) of Council Regulation 139/2004/EC, until the time of:

(a)   an announcement of clearance (including clearance subject to conditions) or prohibition by the Competition Commission or the Secretary of State, as appropriate; or

(b)   the issuance of a decision under Article 8(1), Article 8(2) or Article 8(3) of the said Council Regulation; or

(c)   the expiry of the time limits set out in Article 10(3) of the said Council Regulation with no decision having been issued by the European Commission and the offer being deemed compatible with the common market under Article 10(6).

*#See Note at end of Definitions Section.*

30.3.09

**C6**

## DEFINITIONS *CONTINUED*

### Connected adviser

Connected adviser normally includes only the following:

(1) in relation to the offeror or the offeree company:

    (a) an organisation which is advising that party in relation to the offer; and

    (b) a corporate broker to that party;

(2) in relation to a person who is acting in concert with the offeror or the offeree company, an organisation which is advising that person either:

    (a) in relation to the offer; or

    (b) in relation to the matter which is the reason for that person being a member of the relevant concert party; and

(3) in relation to a person who is an associate of the offeror or of the offeree company by virtue of paragraph (1) of the definition of associate, an organisation which is advising that person in relation to the offer.

Such references do not normally include a corporate broker which is unable to act in connection with the offer because of a conflict of interest.

### Connected fund managers and principal traders

A fund manager or principal trader will normally be connected with an offeror or the offeree company, as the case may be, if the fund manager or principal trader is controlled# by, controls or is under the same control as:—

(1) an offeror or any person acting in concert with it (for example as a result of being an investor in a consortium (see also Note 6 on the definition of acting in concert));

(2) the offeree company or any person acting in concert with the offeree company; or

(3) any connected adviser to any person covered in (1) or (2).

### Control

Control means an interest, or interests, in shares carrying in aggregate 30% or more of the voting rights (as defined below) of a company, irrespective of whether such interest or interests give de facto control.

*#See Note at end of Definitions Section.*

30.3.09

**C7**

**DEFINITIONS *CONTINUED***

**Date, day and period of time**

Unless otherwise stated in the Code:—

(1)  a reference to the date of an event is to the time of occurrence of the event on the day in question;

(2)  a business day is a day on which the Stock Exchange is open for the transaction of business; and

(3)  where a period of time is calculated from a stated event, the day on which that event occurs should be excluded from the calculation of the period (this is not relevant to the definition of an offer period).

**Dealings**

A dealing includes the following:—

(a)  the acquisition or disposal of securities, of the right (whether conditional or absolute) to exercise or direct the exercise of the voting rights attaching to securities, or of general control of securities;

(b)  the taking, granting, acquisition, disposal, entering into, closing out, termination, exercise (by either party) or variation of an option (including a traded option contract) in respect of any securities;

(c)  subscribing or agreeing to subscribe for securities;

(d)  the exercise or conversion, whether in respect of new or existing securities, of any securities carrying conversion or subscription rights;

(e)  the acquisition of, disposal of, entering into, closing out, exercise (by either party) of any rights under, or variation of, a derivative referenced, directly or indirectly, to securities;

(f)  entering into, terminating or varying the terms of any agreement to purchase or sell securities; and

(g)  any other action resulting, or which may result, in an increase or decrease in the number of securities in which a person is interested or in respect of which he has a short position.

**Derivative**

Derivative includes any financial product whose value in whole or in part is determined directly or indirectly by reference to the price of an underlying security.

30.3.09

**C8**

**DEFINITIONS *CONTINUED***

*NOTE ON DEFINITION OF DERIVATIVE*

*The term "derivative" is intentionally widely defined to encompass all types of derivative transactions. However, it is not the intention of the Code to restrict transactions in, or require disclosure of, derivatives which are not connected with an offer or potential offer. The Panel will not normally regard a derivative which is referenced to a basket or index of securities, including relevant securities, as connected with an offer or potential offer if at the time of dealing the relevant securities in the basket or index represent less than 1% of the class in issue and, in addition, less than 20% of the value of the securities in the basket or index. In the case of any doubt, the Panel should be consulted.*

**Directors**

Directors include persons in accordance with whose instructions the directors or a director are accustomed to act.

**Electronic form**

A document, an announcement or any information will be sent in electronic form if it is:

(1)  sent by means of electronic equipment for the processing or storage of data; and

(2)  entirely transmitted and conveyed by wire, radio, optical or other electromagnetic means,

provided that the sender reasonably considers that the form in which it is sent, and the means by which it is sent, will enable the recipient to read and retain a copy of it.

**Exempt fund manager**

An exempt fund manager is a person who manages investment accounts on a discretionary basis and is recognised by the Panel as an exempt fund manager for the purposes of the Code (see Notes under Exempt principal trader).

**Exempt principal trader**

An exempt principal trader is a principal trader who is recognised by the Panel as an exempt principal trader for the purposes of the Code.

**C9**

**DEFINITIONS *CONTINUED***

*NOTES ON EXEMPT FUND MANAGER AND EXEMPT PRINCIPAL TRADER*

*1.   Persons who manage investment accounts on a discretionary basis and principal traders must apply to the Panel in order to seek the relevant exempt status and will have to comply with any requirements imposed by the Panel as a condition of its granting such status.*

*2.   When a principal trader or fund manager is connected with the offeror or offeree company, exempt status is not relevant unless the sole reason for the connection is that the principal trader or fund manager is controlled# by, controls or is under the same control as a connected adviser to:*

*(1)  the offeror;*

*(2)  the offeree company; or*

*(3)  a person acting in concert with the offeror (for example as a result of being an investor in a consortium) or with the offeree company.*

*References in the Code to exempt principal traders or exempt fund managers should be construed accordingly. (See also Rule 7.2.)*

*3.   The effect of a principal trader or fund manager having exempt status is that presumption (5) of the definition of acting in concert will not apply. However, the principal trader or fund manager will still be regarded as connected with the offeror or offeree company, as appropriate. Connected exempt principal traders, but not connected exempt fund managers, must comply with Rule 38.*

*4.   In appropriate cases, a fund manager based overseas may be granted special exempt status subject to its satisfying certain conditions. References in the Code to exempt fund managers (with the exception of those in Rule 8.1(b)) include such special exempt fund managers, subject always to the conditions on which such special exempt status is granted in any particular case.*

*5.   In appropriate cases, a trading entity may be granted exempt status on an ad hoc basis subject to the satisfaction of certain conditions. References in the Code to exempt principal traders include persons granted such ad hoc exempt status, for so long as the grant of such exempt status remains valid and subject always to the conditions on which such ad hoc exempt status is granted in any particular case.*

**Hard copy form**

A document, an announcement or any information will be sent in hard copy form if it is sent in a paper copy or similar form capable of being read.

*#See Note at end of Definitions Section.*

30.3.09

**C**10

## DEFINITIONS *CONTINUED*

### Interests in securities

*This definition and its Notes apply equally to references to interests in shares and interests in relevant securities.*

A person who has long economic exposure, whether absolute or conditional, to changes in the price of securities will be treated as interested in those securities. A person who only has a short position in securities will not be treated as interested in those securities.

In particular, a person will be treated as having an interest in securities if:-

(1)  he owns them;

(2)  he has the right (whether conditional or absolute) to exercise or direct the exercise of the voting rights attaching to them or has general control of them;

(3)  by virtue of any agreement to purchase, option or derivative he:

    (a)  has the right or option to acquire them or call for their delivery; or

    (b)  is under an obligation to take delivery of them,

whether the right, option or obligation is conditional or absolute and whether it is in the money or otherwise; or

(4)  he is party to any derivative:

    (a)  whose value is determined by reference to their price; and

    (b)  which results, or may result, in his having a long position in them; and

(5)  in the case of Rule 5 only, he has received an irrevocable commitment in respect of them.

## NOTES ON INTERESTS IN SECURITIES

### 1.  Gross interests

*The number of securities in which a person is treated as having an interest is normally the gross number, aggregating the number of securities falling under each of paragraphs (1) to (4) (and, for the purposes of Rule 5 only, also paragraph (5)) above. If an interest in securities falls within more than one paragraph, the person shall be treated as interested in the highest number determined under the relevant paragraphs. Short positions should not be deducted.*

*If each of the following conditions is met, the Panel will normally allow offsetting positions to be netted off against each other:*

30.3.09

**DEFINITIONS *CONTINUED***

*NOTES ON INTERESTS IN SECURITIES continued*

*(a)  the offsetting positions are in respect of the same class of relevant security;*

*(b)  the offsetting positions are in respect of the same investment product;*

*(c)  save for the number of securities in question, the terms of the offsetting positions are the same, eg as to strike price and, if appropriate, exercise period; and*

*(d)  the counterparty to the offsetting positions is the same in each case.*

2.    Interests of two or more persons

*As a result of the way in which interests in securities are categorised, two or more persons may be treated as interested in the same securities. For example, where a shareholder grants a call option to another person, the shareholder will be interested in the shares the subject of the option as a result of paragraph (1) of the definition of interests in securities, and the option holder will be interested in those shares as a result of paragraph (3) of the definition.*

3.    Number of securities concerned

*(a)  Where the number of securities the subject of an agreement to purchase, option or derivative is not fixed, a person will normally be treated as interested in the maximum possible number of securities.*

*(b)  Where the value of any derivative is determined by reference to the price of a number of securities multiplied by a particular factor, a person will be treated as interested in the number of reference securities multiplied by the relevant factor.*

*(c)  Where a derivative is not referenced to any stated number (or maximum number) of securities, a person will normally be treated as interested in the gross number of securities to changes in the price of which he has, or may have, economic exposure.*

4.    Securities borrowing and lending

*If a person has borrowed or lent securities, he will normally be treated as interested in any securities which he has lent but (except in the circumstances set out in Note 17 on Rule 9.1) will not normally be treated as interested in any securities which he has borrowed. If a person has on-lent securities which he has borrowed, he will not normally be treated as interested in those securities.*

**C**₁₂

**DEFINITIONS *CONTINUED***

*NOTES ON INTERESTS IN SECURITIES continued*

5.   New shares

*Where a person holds securities convertible into, or warrants or options in respect of, new shares, he will be treated as interested in those securities, warrants or options but will not be treated as interested in the new shares which may be issued upon conversion or exercise. However, the acquisition of new shares on conversion or exercise of any convertible securities, warrants or options will be treated as an acquisition of an interest in the new shares which are then issued.*

6.   Proxies and corporate representatives

*A person will not be treated as having an interest in securities by reason only that he has been appointed as a proxy to vote at a specified general or class meeting of the company concerned, or has been authorised by a corporation to act as its representative at any general or class meeting or meetings.*

7.   Security interests

*A bank taking security over shares or other securities in the normal course of its business will not normally be considered to be interested in those shares or securities.*

8.   Other statutory or regulatory provisions

*This definition applies only in respect of the relevant provisions of the Code. Any Panel view expressed in relation to interests in securities can only relate to the Code and should not be taken as guidance on the interpretation of any other statutory or regulatory provisions.*

9.   Acquisitions of interests in securities

*(a)  References to a person acquiring an interest in securities include any transaction or dealing (including the variation of the terms of an option in respect of, or derivative referenced to, securities) which results in an increase in the number of securities (including, where relevant, securities which have been assented to an offer) in which the person is treated as interested.*

*(b)  A person will not be treated as acquiring an interest in securities which are the subject of an irrevocable commitment received by him as a result only of paragraph (3) of the definition of interests in securities.*

*(c)  The Panel should be consulted if an offeror or any person acting in concert with it proposes to enter into a conditional share sale and purchase agreement or option in the context of the offer.*

**C**13

## DEFINITIONS *CONTINUED*

### Irrevocable commitments and letters of intent

Irrevocable commitments and letters of intent include irrevocable commitments and letters of intent:

(a)  to accept or not to accept (or to procure that any other person accept or not accept) an offer; or

(b)  to vote (or to procure that any other person vote) in favour of or against a resolution of an offeror or the offeree company (or of its shareholders) in the context of an offer, including a resolution to approve or to give effect to a scheme of arrangement.

### Offer

Any reference to an offer includes any transaction subject to the Code as referred to in section 3(b) of the Introduction.

### Offeree company

Any reference to an offeree company includes a potential offeree company.

In the case of a scheme of arrangement, a reference to the offeree company should normally be construed as a reference to the company whose shares are proposed to be acquired under the scheme.

### Offeror

Offeror includes companies wherever incorporated and individuals wherever resident. Any reference to an offeror includes a potential offeror.

In the case of a scheme of arrangement, a reference to an offeror should normally be construed as a reference to the person who it is proposed will acquire shares of the offeree company under the scheme.

### Offer period

Offer period means the period from the time when an announcement is made of a proposed or possible offer (with or without terms) until the first closing date or, if this is later, the date when the offer becomes or is declared unconditional as to acceptances or lapses. An announcement that an interest, or interests, in shares carrying in aggregate 30% or more of the voting rights of a company is for sale or that the board of a company is seeking potential offerors will be treated as the announcement of a possible offer. (See also Rule 12.2 regarding competition reference periods.)

**C**14

**DEFINITIONS** *CONTINUED*

In the case of a scheme of arrangement, the offer period will continue until it is announced in accordance with Section 5(c) of Appendix 7 that the scheme has become effective or that the scheme has lapsed or been withdrawn. Provisions of the Code that apply during the course of the offer, or before the offer closes for acceptance, will apply until the same time.

**Official List**

The list maintained by the FSA in accordance with section 74(1) of the FSMA for the purposes of Part VI of the FSMA.

**Person with information rights**

A person in respect of whom a nomination pursuant to the provisions of the Companies Act 2006 has been made (and has not been suspended, revoked or ceased to have effect) by a registered shareholder in an offeree company which has its registered office in the United Kingdom for that person to receive a copy of all communications that the offeree company sends to its shareholders generally or to any class of its shareholders that includes the registered shareholder making the nomination.

**PLUS**

The PLUS primary markets operated by PLUS Markets plc. References to PLUS have been included in some Rules for clarity but, in cases of doubt, the Panel should be consulted.

**Principal trader**

A principal trader is a person who:

(1)  is registered as a market-maker with the Stock Exchange, or is accepted by the Panel as a market-maker; or

(2)  is a Stock Exchange member firm dealing as principal in order book securities.

**Recognised intermediary**

A recognised intermediary is that part of the trading operations of a bank or securities house which is accepted by the Panel as a recognised intermediary for the purposes of the Code.

**DEFINITIONS** *CONTINUED*

*NOTES ON RECOGNISED INTERMEDIARY*

*1.   If any part of the trading operations of a bank or securities house wishes to be accepted by the Panel as a recognised intermediary, it must apply to the Panel to be granted such status and it will have to comply with any requirements imposed by the Panel as a condition of its granting such status.*

*2.   Recognised intermediary status is relevant only for the purposes of Note 16 on Rule 9.1, Note 1(c) on Rule 7.2 and Rule 8.3(d), in each case to the extent only that the recognised intermediary is acting in a client-serving capacity. As a result, subject to Note 3 below, a recognised intermediary will not be treated, for the purposes of Rule 9.1, as interested in (or as having acquired an interest in) any securities by virtue only of paragraph (3) or paragraph (4) of the definition of interests in securities, nor will any dealings by it in relevant securities during an offer period be required to be publicly disclosed under Rules 8.3(a) to (c), in each case to the extent only that the recognised intermediary is acting in a client-serving capacity.*

*3.   Where a recognised intermediary is, or forms part of, a principal trader connected either with an offeror or potential offeror or with the offeree company, the recognised intermediary will not benefit from the dispensations afforded by Note 16 on Rule 9.1 and Note 1(c) on Rule 7.2 after the time at which the principal trader is presumed to be acting in concert with either the offeror or potential offeror or with the directors of the offeree company (as the case may be) in accordance with Rule 7.2(a) and Rule 7.2(b) respectively. However, in accordance with Rule 7.2(c), where a recognised intermediary is, or forms part of, an exempt principal trader which is connected with either an offeror or potential offeror or with the offeree company for the sole reason that it is controlled# by, controls or is under the same control as a connected adviser to that party, the recognised intermediary will not be presumed to be acting in concert with that party and will therefore continue to benefit from the dispensations afforded by Note 16 on Rule 9.1 and Note 1(c) on Rule 7.2.*

*Where a recognised intermediary is, or forms part of, an associate of the offeree company, it will not benefit from the exception from disclosure afforded by Rule 8.3(d) after the commencement of the offer period. Where a recognised intermediary is an associate of an offeror or potential offeror, it will not benefit from the exception from disclosure afforded by Rule 8.3(d) after the identity of the offeror or potential offeror of which it is an associate is publicly announced. After such time, dealings should be disclosed under Rule 8.1(a) or, if the recognised intermediary is, or forms part of, an exempt principal trader whose exempt status has not fallen away, Rule 38.5(a) or (b).*

*For the avoidance of doubt, where a recognised intermediary is, or forms part of, an exempt principal trader, its recognised intermediary status will fall away only if its exempt status falls away.*

*#See Note at end of Definitions Section.*

30.3.09

**C₁₆**

**DEFINITIONS *CONTINUED***

*NOTES ON RECOGNISED INTERMEDIARY continued*

*4.   Any dealings by a recognised intermediary which is not acting in a client-serving capacity will not benefit from the dispensations afforded by Note 16 on Rule 9.1, Note 1(c) on Rule 7.2 and Rule 8.3(d) with the result that all such dealings by it will be subject to the provisions of the Code as if those dispensations did not apply.*

*5.   Any dealings carried out by a recognised intermediary for the purpose of avoiding the usual application of the Code to such dealings will constitute a serious breach of the Code. If the Panel determines that a recognised intermediary has carried out such dealings, it will be prepared to rule, inter alia, that recognised intermediary status should be withdrawn for such period of time as the Panel may consider appropriate in the circumstances.*

**Regulated market**

Regulated market has the same meaning as in Directive 2004/39/EC of the European Parliament and of the Council on markets in financial instruments (see Article 4.1(14)).

In relation to an EEA State that has not implemented Directive 2004/39/EC, regulated market has the same meaning as it has in Council Directive 93/22/EEC on investment services in the securities field (see Article 1(13)).

A list of regulated markets within the EEA is maintained on the website of the EU Commission: europa.eu.int/comm/index_en.htm. UK regulated markets are listed on the Panel's website: www.thetakeoverpanel.org.uk.

**Regulatory Information Service**

A Regulatory Information Service ("RIS") is any of the services set out in Appendix 3 to the Listing Rules.

**Relevant securities**

Relevant securities include:—

(a)  securities of the offeree company which are being offered for or which carry voting rights;

(b)  equity share capital of the offeree company and an offeror;

(c)  securities of an offeror which carry substantially the same rights as any to be issued as consideration for the offer; and

(d)  securities of the offeree company and an offeror carrying conversion or subscription rights into any of the foregoing.

30.3.09

DEFINITIONS *CONTINUED*

### Scheme of arrangement or scheme

A transaction effected by means of a scheme of arrangement under the Companies Act 2006 or similar statutory provisions in the Channel Islands or the Isle of Man.

### Securities exchange offer

Securities exchange offer means an offer in which the consideration includes securities of the offeror, other than loan stock or loan notes (unless such stock or notes carry substantially the same rights as any other securities of the offeror in issue or conversion or subscription rights into any such securities or into equity share capital of the offeror).

### Shares or securities

(1)   Except as set out below or as the context otherwise requires, references to shares, including when used in other expressions such as shareholders (but excluding equity share capital), include securities, and vice versa.

(2)   In paragraph 3(a)(iii) and in the second paragraph of section 3(b) of the Introduction, the securities referred to are only transferable securities carrying voting rights.

(3)   In paragraphs 3(a)(i) and (ii) and in the first paragraph of section 3(b) of the Introduction, the shares/securities referred to are only those shares/securities comprised in the company's equity share capital (whether voting or non-voting) and other transferable securities carrying voting rights.

### Stock Exchange

London Stock Exchange plc

### Treasury shares

All percentages of voting rights, share capital and relevant securities are to be calculated by reference to the relevant percentage held and in issue outside treasury. A transfer or sale of shares by a company from treasury will normally be treated in the same way as an issue of new shares.

### UKLA

The FSA acting in its capacity as the competent authority for the purposes of Part VI of the FSMA

**C**18

**DEFINITIONS** *CONTINUED*

**UKLA Rules**

UKLA Rules include the Listing Rules, the Disclosure Rules and Transparency Rules and the Prospectus Rules of the FSA (or any of them as the context may require).

**Voting rights**

Except for the purpose of Rule 11, voting rights means all the voting rights attributable to the capital of a company which are currently exercisable at a general meeting.

**Website notification**

A website notification is a document sent in either hard copy form or electronic form to a person to whom a document, an announcement or any information is required to be sent, giving such person notice of the publication of the document, announcement or information on a website and providing details of the relevant website.

*NOTE ON WEBSITE NOTIFICATION*

*A website notification must be prepared with the highest standards of care and accuracy in accordance with Rule 19.1 and must contain a directors' responsibility statement in accordance with Rule 19.2. A website notification must contain a summary of the provisions of Rule 8 (see the Panel's website at www.thetakeoverpanel.org.uk) and must also comply with the other relevant requirements of the Code in relation to the publication of documents, announcements and information.*

*The information in a website notification must be confined to non-controversial information about an offer and should not be used for argument or invective. A website notification should not include a recommendation to take or not to take any action in relation to, or contain any view on the merits of, an offer except for a factual statement as to whether or not the offer is proceeding with the recommendation of the offeree company board. A party to an offer should not include anything other than acceptance forms, withdrawal forms, proxy cards and other forms connected with an offer in the same envelope as a website notification without the consent of the Panel.*

*In addition, a website notification must include the following information in relation to the document, announcement or information to which it relates:*

*(a) details of the website on which the document, announcement or information is published;*

30.3.09

**C19**

**DEFINITIONS *CONTINUED***

*NOTE ON WEBSITE NOTIFICATION continued*

*(b)  a statement setting out the right of persons to whom the document, announcement or information is sent to receive a copy of the document, announcement or information (and any information incorporated into it by reference to another source) in hard copy form and drawing attention to the fact that such persons will not receive a hard copy unless they so request;*

*(c)  details of how a hard copy may be obtained (including an address in the United Kingdom and a telephone number to which requests for hard copies may be made); and*

*(d)  a statement that the website notification is not a summary of the document, announcement or other information to which it relates and should not be regarded as a substitute for reading the document, announcement or information in full.*

*NOTE ON DEFINITIONS*

*The normal test for whether a person is controlled by, controls or is under the same control as another person will be by reference to the definition of control. There may be other circumstances which the Panel will regard as giving rise to such a relationship (eg where a majority of the equity share capital is owned by another person who does not have a majority of the voting rights); in cases of doubt, the Panel should be consulted.*

30.3.09

**D₁**

## RULES

## SECTION D. THE APPROACH, ANNOUNCEMENTS AND INDEPENDENT ADVICE

### RULE 1. THE APPROACH

(a)  The offer must be put forward in the first instance to the board of the offeree company or to its advisers.

(b)  If the offer, or an approach with a view to an offer being made, is not made by the ultimate offeror or potential offeror, the identity of that person must be disclosed at the outset.

(c)  A board so approached is entitled to be satisfied that the offeror is, or will be, in a position to implement the offer in full.

30.3.09

**D₂**

## RULE 2. SECRECY BEFORE ANNOUNCEMENTS; THE TIMING AND CONTENTS OF ANNOUNCEMENTS

### 2.1 SECRECY

The vital importance of absolute secrecy before an announcement must be emphasised. All persons privy to confidential information, and particularly price-sensitive information, concerning an offer or contemplated offer must treat that information as secret and may only pass it to another person if it is necessary to do so and if that person is made aware of the need for secrecy. All such persons must conduct themselves so as to minimise the chances of an accidental leak of information.

*NOTES ON RULE 2.1*

*1. Warning clients*

*It should be an invariable routine for advisers at the very beginning of discussions to warn clients of the importance of secrecy and security. Attention should be drawn to the Code, in particular to this Rule and to restrictions on dealings.*

*2. Proof printing*

*Proof printing documents before a public announcement has been made carries a particular risk of leaks of price-sensitive information; in cases where it is regarded as appropriate to undertake such printing, every possible precaution must be taken to ensure confidentiality.*

### 2.2 WHEN AN ANNOUNCEMENT IS REQUIRED

An announcement is required:—

(a) when a firm intention to make an offer (the making of which is not, or has ceased to be, subject to any pre-condition) is notified to the board of the offeree company from a serious source, irrespective of the attitude of the board to the offer;

(b) immediately upon an acquisition of any interest in shares which gives rise to an obligation to make an offer under Rule 9. The announcement that an obligation has been incurred should not be delayed while full information is being obtained; additional information can be the subject of a later supplementary announcement;

(c) when, following an approach to the offeree company, the offeree company is the subject of rumour and speculation or there is an untoward movement in its share price;

(d) when, before an approach has been made, the offeree company is the subject of rumour and speculation or there is an untoward

**RULE 2** *CONTINUED*

movement in its share price and there are reasonable grounds for concluding that it is the potential offeror's actions (whether through inadequate security or otherwise) which have led to the situation;

**(e)** when negotiations or discussions relating to a possible offer are about to be extended to include more than a very restricted number of people (outside those who need to know in the parties concerned and their immediate advisers); or

**(f)** when a purchaser is being sought for an interest, or interests, in shares carrying in aggregate 30% or more of the voting rights of a company or when the board of a company is seeking one or more potential offerors, and:

    **(i)** the company is the subject of rumour and speculation or there is an untoward movement in its share price; or

    **(ii)** the number of potential purchasers or offerors approached is about to be increased to include more than a very restricted number of people.

*NOTES ON RULE 2.2*

*1.   Panel to be consulted*

*Whether or not a movement in the share price of a potential offeree company is untoward for the purposes of Rule 2.2(c), (d) and (f)(i) is a matter for the Panel to determine. The question will be considered in the light of all relevant facts and not solely by reference to the absolute percentage movement in the price. Facts which may be considered to be relevant in determining whether a price movement is untoward for the purposes of Rule 2.2(c), (d) and (f)(i) include general market and sector movements, publicly available information relating to the company, trading activity in the company's securities and the time period over which the price movement has occurred. This list is purely illustrative and the Panel will take account of such other factors as it considers appropriate. The percentage thresholds specified below in respect of price movements relate solely to the latest point at which consultation with the Panel is required; consultation will not necessarily lead to a requirement to make an announcement.*

*In the case of Rule 2.2(c), unless an immediate announcement is to be made, the Panel should be consulted at the latest when the offeree company becomes the subject of any rumour and speculation or where there is a price movement of 10% or more above the lowest share price since the time of the approach. An abrupt price rise of a smaller percentage (for example, a rise of*

**D**4

**RULE 2** *CONTINUED*

*NOTES ON RULE 2.2 continued*

*5% in the course of a single day) could also be regarded as untoward and accordingly the Panel should be consulted in such circumstances.*

*Similarly, in the case of Rules 2.2(d) and (f)(i), the Panel should be consulted at the latest when the potential offeree company becomes the subject of any rumour and speculation or where there is a material or abrupt movement in its share price after the time when, in the case of Rule 2.2(d), an offer is first actively considered or, in the case of Rule 2.2(f)(i), either the potential seller or the board starts to seek one or more potential purchasers or offerors.*

*In the case of Rule 2.2(e), the Panel should be consulted if the offeror and/or the offeree company wish to approach a wider group than the very restricted number of people referred to in the Rule without making an announcement. In the case of Rule 2.2(f)(ii), the Panel should be consulted prior to more than one potential purchaser or offeror being sought.*

*2.   Clear statements*

*The Panel will not normally require an announcement under Rule 2.2(d) if it is satisfied that the price movement, rumour or speculation results only from a clear and unequivocal public statement, eg (a) a disclosure under the UKLA Rules; (b) an announcement of a dawn raid or an intention to purchase; or (c) an announcement of a tender offer.*

## 2.3 RESPONSIBILITIES OF OFFERORS AND THE OFFEREE COMPANY

**Before the board of the offeree company is approached, the responsibility for making an announcement can lie only with the offeror. The offeror should, therefore, keep a close watch on the offeree company's share price for any signs of untoward movement. The offeror is also responsible for making an announcement once a Rule 9 obligation has been incurred.**

**Following an approach to the board of the offeree company which may or may not lead to an offer, the primary responsibility for making an announcement will normally rest with the board of the offeree company which must, therefore, keep a close watch on its share price.**

**A potential offeror must not attempt to prevent the board of an offeree company from making an announcement at any time the board thinks appropriate.**

**D5**

### 2.4 THE ANNOUNCEMENT OF A POSSIBLE OFFER

(a)  Except in the case of a mandatory offer under Rule 9, until a firm intention to make an offer has been notified, a brief announcement that talks are taking place (there is no requirement to name the potential offeror in such an announcement) or that a potential offeror is considering making an offer will normally satisfy the obligations under this Rule. Except with the consent of the Panel, such an announcement should also include a summary of the provisions of Rule 8 (see the Panel's website at www.thetakeoverpanel.org.uk).

(b)  At any time during an offer period following the announcement of a possible offer (provided the potential offeror has been publicly named), and before the notification of a firm intention to make an offer, the offeree company may request that the Panel impose a time limit for the potential offeror to clarify its intentions with regard to the offeree company. If a time limit for clarification is imposed by the Panel, the potential offeror must, before the expiry of the time limit, announce either a firm intention to make an offer for the offeree company in accordance with Rule 2.5 or that it does not intend to make an offer for the offeree company, in which case the announcement will be treated as a statement to which Rule 2.8 applies.

(c)  Until a firm intention to make an offer has been notified, the Panel must be consulted in advance if any person proposes to make a statement in relation to the terms on which an offer might be made for the offeree company. Except with the consent of the Panel, if any such statement is included in an announcement by a potential offeror or is made by or on behalf of a potential offeror, its directors, officials or advisers and not immediately withdrawn if incorrect, the potential offeror will be bound by the statement if an offer for the offeree company is subsequently made, unless it reserved the right not to be so bound at the time the statement was made. In particular:

(i)  where the statement concerned relates to the price of a possible offer (or a particular exchange ratio in the case of a proposed securities exchange offer), any offer made by the potential offeror for the offeree company will be required to be made on the same or better terms. Where all or part of the consideration is expressed in terms of a monetary value, the offer or that element of the offer must be made at the same or a higher monetary value. Where all or part of the consideration has been expressed in terms of a securities exchange ratio, the offer or that element of the offer must be made on the same (or an improved) securities exchange ratio; and

**D₆**

**RULE 2** *CONTINUED*

> **(ii)  where the statement concerned includes reference to the fact that the terms of the possible offer "will not be increased" or are "final" or uses a similar expression, the potential offeror will not be allowed subsequently to make an offer on better terms.**

**See also Note 5.**

**(d)  Except with the consent of the Panel, the consequences of a statement to which Rule 2.4(c) applies will normally apply also to any person acting in concert with the potential offeror and to any person who is subsequently acting in concert with the potential offeror or such person.**

*NOTES ON RULE 2.4*

*1.   Pre-conditions*

*The Panel must be consulted in advance if a person proposes to include in an announcement any pre-condition to the making of an offer. Any such pre-conditional possible offer announcement must:*

*(a)  clearly state whether or not the pre-conditions must be satisfied before an offer can be made or whether they are waivable; and*

*(b)  include a prominent warning to the effect that the announcement does not amount to a firm intention to make an offer and that, accordingly, there can be no certainty that any offer will be made even if the pre-conditions are satisfied or waived.*

*2.   Announcement of a potential competing offer*

*The provisions of Rule 2.4(b) will not apply where an offer has already been announced by a third party and the potential offeror makes a statement that it is considering making a competing offer.*

*See Note 1 on Rule 19.3.*

*3.   Period for clarification*

*The precise time limit imposed in any particular case under Rule 2.4(b) will be determined by reference to all the circumstances of the case and the Panel will endeavour to balance the potential damage to the business of the offeree company arising from the uncertainty caused by the potential offeror's interest against the disadvantage to its shareholders of losing the prospect of an offer.*

*4.   Extension of time limit*

*A time limit for a potential offeror to clarify its intentions imposed under Rule 2.4(b) may be extended only with the consent of the Panel. The Panel's consent will normally be granted if the board of the offeree company consents to the extension.*

**D7**

**RULE 2** *CONTINUED*

*NOTES ON RULE 2.4 continued*

*5.   Reservation of right to set statements aside*

*The first announcement in which a statement subject to Rule 2.4(c) is made must also contain prominent reference to any reservation (precise details of which must also be included in the announcement). Any subsequent mention by the offeror of the statement must be accompanied by a reference to the reservation.*

*Except with the consent of the Panel, where a potential offeror has referred in a statement subject to Rule 2.4(c) to the level of consideration to be paid if an offer is made, that potential offeror will not be allowed subsequently to make an offer for the offeree company at a lower level of consideration unless there has occurred an event which the potential offeror specified in the statement as an event which would enable it to set aside the level of consideration referred to.*

*Where a potential offeror has reserved the right to vary the form and/or mix of the consideration referred to in a statement subject to Rule 2.4(c) (but remains bound to a specified minimum level of consideration) and exercises that right, the value of any offer that is made subsequently must be the same as or better than the value of the consideration referred to in that statement, calculated as at the time of the announcement of the firm intention to make an offer. If, during the period ending when the market closes on the first business day after the announcement of the firm intention to make an offer, the value is not maintained, the Panel will be concerned to ensure that the offeror acted with all reasonable care in determining the consideration. If there is a restricted market in the securities offered, or if the amount of securities to be issued of a class already admitted to trading is large in relation to the amount already issued, the Panel may require justification of prices used to determine the value of the offer.*

*Where a potential offeror has made a statement of the kind referred to in Rule 2.4(c)(ii) it will not be permitted to make an offer at a higher level of consideration unless there has occurred an event which the potential offeror specified in the possible offer statement as an event that would enable it to do so.*

*6.   Duration of restriction*

*The restrictions imposed by Rule 2.4(c) will normally apply throughout the period during which the offeree company is in an offer period and for a further three months thereafter.*

*However, where a potential offeror has made a statement to which Rule 2.8 applies but the offeree company remains in an offer period, the restrictions imposed by Rule 2.4(c) will normally apply for three months following the making of the statement to which Rule 2.8 applies.*

**D8**

**RULE 2** *CONTINUED*

*NOTES ON RULE 2.4 continued*

*7.   Statements by the offeree company*

*Any statement made by the offeree company in relation to the terms on which an offer might be made must also make clear whether or not it is being made with the agreement or approval of the potential offeror. Where the statement is made with the agreement or approval of the potential offeror, the statement will be treated as one to which Rule 2.4(c) applies in the same way as if it had been made by the potential offeror itself. Where it is not so made, the statement must also include a prominent warning to the effect that there can be no certainty that an offer will be made nor as to the terms on which any offer might be made.*

*8.   Consequences of subsequent acquisitions of interests in shares*

*The acquisition of an interest in offeree company shares by a publicly announced potential offeror (whether named or not) or any person acting in concert with it may require immediate announcement by the potential offeror pursuant to the Note on Rule 7.1.*

## 2.5 THE ANNOUNCEMENT OF A FIRM INTENTION TO MAKE AN OFFER

**(a)   An offeror should only announce a firm intention to make an offer after the most careful and responsible consideration. Such an announcement should be made only when an offeror has every reason to believe that it can and will continue to be able to implement the offer. Responsibility in this connection also rests on the financial adviser to the offeror.**

**(b)   When a firm intention to make an offer is announced, the announcement must state:—**

**(i)      the terms of the offer;**

**(ii)     the identity of the offeror;**

**(iii)    details of any relevant securities of the offeree company in which the offeror or any person acting in concert with it has an interest or in respect of which he has a right to subscribe, in each case specifying the nature of the interests or rights concerned (see Note 2 below and Note 5(a) on Rule 8). Similar details of any short positions (whether conditional or absolute and whether in the money or otherwise), including any short position under a derivative, any agreement to sell or any delivery obligation or right to require another person to purchase or take delivery, must also be stated;**

**(iv)    details of any relevant securities of the offeree company in respect of which the offeror or any of its associates has procured**

30.3.09

**RULE 2** *CONTINUED*

an irrevocable commitment or a letter of intent (see Note 14 on Rule 8);

(v)   details of any relevant securities of the offeree company which the offeror or any person acting in concert with it has borrowed or lent, save for any borrowed shares which have been either on-lent or sold;

(vi)   all conditions (including normal conditions relating to acceptances, admission to listing, admission to trading and increase of capital) to which the offer or the making of an offer is subject;

(vii)   details of any agreements or arrangements to which the offeror is party which relate to the circumstances in which it may or may not invoke or seek to invoke a pre-condition or a condition to its offer and the consequences of its doing so, including details of any break fees payable as a result;

(viii)   details of any arrangement of the kind referred to in Note 6(b) on Rule 8;

(ix)   a summary of the provisions of Rule 8 (see the Panel's website at www.thetakeoverpanel.org.uk); and

(x)   details of any arrangement for the payment of an inducement fee or similar arrangement referred to in Rule 21.2.

(c) Where the offer is for cash, or includes an element of cash, the announcement must include confirmation by the financial adviser or by another appropriate third party that resources are available to the offeror sufficient to satisfy full acceptance of the offer. (The party confirming that resources are available will not be expected to produce the cash itself if, in giving the confirmation, it acted responsibly and took all reasonable steps to assure itself that the cash was available.)

*NOTES ON RULE 2.5*

*1.   Unambiguous language*

*The language used in announcements should clearly and concisely reflect the position being described. In particular, the word "agreement" should be used with the greatest care. Statements should be avoided which may give the impression that persons have committed themselves to certain courses of action (eg accepting in respect of their own shares) when they have not in fact done so.*

**D**10

**RULE 2** *CONTINUED*

*NOTES ON RULE 2.5 continued*

*2.   Interests of a group of which an adviser is a member*

*It is accepted that, for reasons of secrecy, it would not be prudent to make enquiries so as to include in an announcement details of any relevant securities of the offeree company in which other parts of an adviser's group are interested or have short positions or borrowings (see (5) of "acting in concert" in Definitions Section). In such circumstances, details should be obtained as soon as possible after the announcement has been made and the Panel consulted. If the interests, short positions or borrowings are significant, a further announcement may be required.*

*3.   Subjective conditions*

*Companies and their advisers should consult the Panel prior to the publication of any announcement containing conditions which are not entirely objective (see Rule 13).*

*4.   New conditions for increased or improved offers*

*See Rule 32.4.*

*5.   Pre-conditions*

*The Panel must be consulted in advance if a person proposes to include in an announcement any pre-condition to which the making of an offer will be subject. (See also Rule 13.)*

*6.   Financing conditions and pre-conditions*

*See the Note on Rules 13.1 and 13.3.*

## 2.6 OBLIGATION ON THE OFFEROR AND THE OFFEREE COMPANY TO PUBLISH ANNOUNCEMENTS

**(a)  Promptly after the commencement of an offer period (except where an offer period begins with an announcement under Rule 2.5), a copy of the relevant announcement must be sent by the offeree company to its shareholders, persons with information rights and the Panel.**

**(b)  Promptly after the publication of an announcement made under Rule 2.5:**

**(i)   the offeree company must send a copy of that announcement, or a circular summarising the terms and conditions of the offer, to its shareholders, persons with information rights and the Panel; and**

**(ii)  both the offeror and the offeree company must make that announcement, or a circular summarising the terms and conditions of the offer, readily available to their employee representatives or,**

**RULE 2** *CONTINUED*

where there are no such representatives, to the employees themselves.

**(c)** Where necessary, the offeror or the offeree company, as the case may be, should explain the implications of the announcement and, in the case of the offeree company, the fact that addresses, electronic addresses and certain other information provided by offeree company shareholders, persons with information rights and other relevant persons for the receipt of communications from the offeree company may be provided to an offeror during the offer period as required under Section 4 of Appendix 4. Any circular published under this Rule should also include a summary of the provisions of Rule 8 (see the Panel's website at www.thetakeoverpanel.org.uk).

*NOTES ON RULE 2.6*

*1.   Full text of announcement under Rule 2.5 to be made available*

*Where, following an announcement made under Rule 2.5, a circular summarising the terms and conditions of the offer is sent to shareholders, persons with information rights, employee representatives or employees, the full text of the announcement must be made readily and promptly available to them, for example, by publishing it on the website of the offeror or the offeree company (as the case may be).*

*2.   Shareholders, persons with information rights, employee representatives and employees outside the EEA*

*See the Note on Rule 30.3.*

*3.   Holders of convertible securities, options or subscription rights*

*Copies of announcements sent to offeree company shareholders and persons with information rights under Rule 2.6 must also, where practicable, be sent simultaneously to the holders of securities convertible into, rights to subscribe for and options over, shares of the same class as those to which the offer relates. An explanation must also be provided that addresses, electronic addresses and certain other information provided for the receipt of communications from the offeree company may be provided to an offeror during the offer period as required under Section 4 of Appendix 4.*

## 2.7 CONSEQUENCES OF A "FIRM ANNOUNCEMENT"

When there has been an announcement of a firm intention to make an offer, the offeror must normally make an offer unless, in accordance with the provisions of Rule 13, the offeror is permitted to invoke a pre-

**D**12

**RULE 2** *CONTINUED*

condition to the making of an offer or would be permitted to invoke a condition to the offer if the offer were made.

*NOTE ON RULE 2.7*

*When there is no need to make an offer*

*An announced offeror need not make an offer if a competitor has already made a higher offer or, with the consent of the Panel, in the circumstances set out in Note 5 on Rule 21.1.*

## 2.8 STATEMENTS OF INTENTION NOT TO MAKE AN OFFER

A person making a statement that he does not intend to make an offer for a company should make the statement as clear and unambiguous as possible. Except with the consent of the Panel, unless there is a material change of circumstances or there has occurred an event which the person specified in his statement as an event which would enable it to be set aside, neither the person making the statement, nor any person who acted in concert with him, nor any person who is subsequently acting in concert with either of them, may within six months from the date of the statement:

(a) announce an offer or possible offer for the offeree company (including a partial offer which would result in the offeror and persons acting in concert with it being interested in shares carrying 30% or more of the voting rights of the offeree company);

(b) acquire any interest in shares of the offeree company if any such person would thereby become obliged under Rule 9 to make an offer;

(c) acquire any interest in, or procure an irrevocable commitment in respect of, shares of the offeree company if the shares in which such person, together with any persons acting in concert with him, would be interested and the shares in respect of which he, or they, had acquired irrevocable commitments would in aggregate carry 30% or more of the voting rights of the offeree company;

(d) make any statement which raises or confirms the possibility that an offer might be made for the offeree company; or

(e) take any steps in connection with a possible offer for the offeree company where knowledge of the possible offer might be extended outside those who need to know in the potential offeror and its immediate advisers.

**D13**

**RULE 2** *CONTINUED*

**Failure to comply with this Rule may lead to the period of six months referred to above being extended.**

*NOTES ON RULE 2.8*

*1. Prior consultation*

*Any person considering making such a statement should consult the Panel in advance, particularly if it is intended to include specific reservations to set aside the statement.*

*2. Rules 2.4(b) and 12.2(b)*

*Where a statement to which Rule 2.8 applies is made following a time limit being imposed under Rule 2.4(b) or pursuant to Rule 12.2(b)(ii)(A), the only matters that a person will normally be permitted to specify in the statement as matters which would enable it to be set aside are:*

*(a) the agreement or recommendation of the board of the offeree company;*

*(b) the announcement of an offer by a third party for the offeree company; and*

*(c) the announcement by the offeree company of a "whitewash" proposal (see Note 1 of the Notes on Dispensations from Rule 9) or of a reverse takeover (see Note 2 on Rule 3.2).*

*3. Concert parties*

*The restrictions imposed by Rule 2.8 will not apply to a person acting in concert with the person making the statement to which the Rule applies provided it is made clear in the statement, or at the time the statement is made, that such person acting in concert is continuing to consider making an offer for the offeree company.*

*The restrictions imposed by Rule 2.8 will, however, normally apply to any person acting in concert with the person making the statement to which the Rule applies if the statement is made following a time limit being imposed under Rule 2.4(b).*

*4. Media reports*

*When considering the application of this Rule, the Panel will take into account not only the statement itself but the manner of any subsequent public reporting of it.*

*Advisers must therefore ensure that directors and officials of companies are warned that they must consider carefully the implications of Rule 2.8,*

30.3.09

**D**14

**RULE 2** *CONTINUED*

*NOTES ON RULE 2.8 continued*

*particularly when giving interviews to, or taking part in discussions with, the media. It is very difficult after publication to alter an impression given or remark attributed to a particular person. Control of any possible abuse lies largely with the person being interviewed. In appropriate circumstances, the Panel will require a statement of retraction or clarification.*

## 2.9 PUBLICATION OF AN ANNOUNCEMENT ABOUT AN OFFER OR POSSIBLE OFFER

**(a)  When an offer or possible offer is announced, the announcement must be published in typed format and sent to a RIS by fax or electronic delivery.**

**(b)  If the announcement is published outside normal business hours, it must be submitted as required, for release as soon as the relevant service re-opens; it must also be distributed to not less than two national newspapers and two newswire services in the UK.**

**(c)  The requirements under (a) and (b) above are in addition to any other announcement obligation to which the offeror may be subject.**

*NOTES ON RULE 2.9*

*1.   Distribution of announcements*

*See Rule 19.10.*

*2.   Rules 6, 7, 9, 11, 12, 17, 30, 31, 32, Appendix 1.6, Appendix 5 and Appendix 7*

*Announcements made under Rules 6.2(b), 7.1, 9.1(Note 9), 11.1(Note 6), 12.2(b)(ii)(A), 17.1, 30.1(a), 30.2(a), 31.2, 31.6(a)(Note 1(b)), 31.6(c), 31.7(Note 2), 31.8(Note), 31.9, 32.1, 32.6(a), Appendix 1.6, Appendix 5.5, Appendix 7.6 and Appendix 7.8 must also be published in accordance with the requirements of this Rule.*

## 2.10 ANNOUNCEMENT OF NUMBERS OF RELEVANT SECURITIES IN ISSUE

**When an offer period begins, the offeree company must announce, as soon as possible and in any case by 9.00 am on the next business day, details of all classes of relevant securities issued by the company, together with the numbers of such securities in issue. An offeror or potential named offeror must also announce the same details relating to its relevant securities by 9.00 am on the business day following any**

**D**15

**RULE 2** *CONTINUED*

announcement identifying it as an offeror or potential offeror, unless it has stated that its offer is likely to be solely in cash.

Any such announcement should include, where relevant, the International Securities Identification Number ("ISIN") for each relevant security.

If the information included in an announcement made under this Rule changes during the offer period, a revised announcement must be made as soon as possible.

*NOTES ON RULE 2.10*

*1.   Options to subscribe*

*For the purposes of this Rule, options to subscribe for new securities in the offeree company or an offeror are not treated as a class of relevant securities.*

*2.   Treasury shares*

*Only relevant securities which are held and in issue outside treasury should be included in the announcement.*

**D**16

## RULE 3. INDEPENDENT ADVICE

### 3.1 BOARD OF THE OFFEREE COMPANY

**The board of the offeree company must obtain competent independent advice on any offer and the substance of such advice must be made known to its shareholders.**

*NOTES ON RULE 3.1*

*1.   Management buy-outs and offers by controllers*

*The requirement for competent independent advice is of particular importance in cases where the offer is a management buy-out or similar transaction or is being made by the existing controller or group of controllers. In such cases, it is particularly important that the independence of the adviser is beyond question. Furthermore, the responsibility borne by the adviser is considerable and, for this reason, the board of the offeree company or potential offeree company should appoint an independent adviser as soon as possible after it becomes aware of the possibility that an offer may be made.*

*2.   When there is uncertainty about financial information*

*When there is a significant area of uncertainty in the most recently published accounts or interim figures of the offeree company (eg a qualified audit report, a material provision or contingent liability or doubt over the real value of a substantial asset, including a subsidiary company), the board and the independent adviser should highlight the factors which they consider important.*

*3.   When no recommendation is given or there is a divergence of views*

*When it is considered impossible to express a view on the merits of an offer, or to give a firm recommendation, or when there is a divergence of views amongst board members or between the board and the independent adviser as to either the merits of an offer or the recommendation being made, this must be stated and an explanation given, including the arguments for acceptance or rejection, emphasising the important factors.*

*The Panel should be consulted in advance about the explanation which is to be given.*

### 3.2 BOARD OF AN OFFEROR COMPANY

**The board of an offeror must obtain competent independent advice on any offer when the offer being made is a reverse takeover or when the directors are faced with a conflict of interest. The substance of such advice must be made known to its shareholders.**

30.3.09

**RULE 3** *CONTINUED*

*NOTES ON RULE 3.2*

*1. General*

*When the board of an offeror is required to obtain competent independent advice, it should do so before announcing an offer or any revised offer: such advice should be as to whether or not the making of the offer is in the interests of the company's shareholders. Shareholders must have sufficient time to consider advice given to them prior to any general meeting held to implement the proposed offer. Any documents or advertisements published by the board in such cases must include a responsibility statement by the directors as set out in Rule 19.2.*

*2. Reverse takeovers*

*A transaction will be a reverse takeover if an offeror might as a result need to increase its existing issued voting equity share capital by more than 100%.*

*3. Conflicts of interest*

*A conflict of interest will exist, for instance, when there are significant cross-shareholdings between an offeror and the offeree company, when there are a number of directors common to both companies or when a person has a substantial interest in both companies.*

## 3.3 DISQUALIFIED ADVISERS

**The Panel will not regard as an appropriate person to give independent advice a person who is in the same group as the financial or other professional adviser (including a corporate broker) to an offeror or who has a significant interest in or financial connection with either an offeror or the offeree company of such a kind as to create a conflict of interest (see also Appendix 3).**

*NOTES ON RULE 3.3*

*1. Independence of adviser*

*The Rule requires the offeree company's adviser to have a sufficient degree of independence from the offeror to ensure that the advice given is properly objective. Accordingly, in certain circumstances it may not be appropriate for a person who has had a recent advisory relationship with an offeror to give advice to the offeree company. In such cases the Panel should be consulted. The views of the board of the offeree company will be an important factor.*

*2. Investment trusts*

*A person who manages or is part of the same group as the investment manager of an investment trust company will not normally be regarded as an appropriate person to give independent advice in relation to that company.*

**D18**

**RULE 3 *CONTINUED***

*NOTES ON RULE 3.3 continued*

*3.   Success fees*

*Certain fee arrangements between an adviser and an offeree company may create a conflict of interest which would disqualify the adviser from being regarded as an appropriate person to give independent advice to the offeree company. For example, a fee which becomes payable to an offeree company adviser only in the event of failure of an offer will normally create such a conflict of interest. In cases of doubt the Panel should be consulted.*

**E₁**

## SECTION E. RESTRICTIONS ON DEALINGS

### RULE 4

*NB Notwithstanding the provisions of Rule 4, a person may be precluded from dealing or procuring others to deal by virtue of restrictions contained in the Criminal Justice Act 1993 regarding insider dealing and in the FSMA regarding market abuse. Where the Panel becomes aware of instances to which such restrictions may be relevant, it will inform the FSA.*

### 4.1 PROHIBITED DEALINGS BY PERSONS OTHER THAN THE OFFEROR

(a) No dealings of any kind in securities of the offeree company by any person, not being the offeror, who is privy to confidential price-sensitive information concerning an offer or contemplated offer may take place between the time when there is reason to suppose that an approach or an offer is contemplated and the announcement of the approach or offer or of the termination of the discussions.

(b) No person who is privy to such information may make any recommendation to any other person as to dealing in the relevant securities.

(c) No such dealings may take place in securities of the offeror except where the proposed offer is not price-sensitive in relation to such securities.

### 4.2 RESTRICTION ON DEALINGS BY THE OFFEROR AND CONCERT PARTIES

(a) During an offer period, the offeror and persons acting in concert with it must not sell any securities in the offeree company except with the prior consent of the Panel and following 24 hours public notice that such sales might be made. The Panel will not give consent for sales where a mandatory offer under Rule 9 is being made. Sales below the value of the offer will not be permitted. After there has been an announcement that sales may be made, neither the offeror nor persons acting in concert with it may acquire an interest in any securities of the offeree company and only in exceptional circumstances will the Panel permit the offer to be revised. The Panel should be consulted whenever the offeror or a person acting in concert with it proposes to enter into or close out any type of transaction which may result in securities in the offeree company being sold during the offer period either by that party or by the counterparty to the transaction.

(b) During an offer period, the offeror and persons acting in concert with it must not acquire an interest in any securities of the offeree company through any anonymous order book system, or through any other means, unless, in either case, it can be established that the seller, or other party to the transaction in question, is not an exempt principal trader connected with the offeror.

**E2**

**RULE 4** *CONTINUED*

**In the case of dealings through an inter-dealer broker or other similar intermediary, "seller" includes the person who has transferred the securities to the intermediary as well as the intermediary itself. (See also Rule 38.2.)**

*NOTES ON RULES 4.1 and 4.2*

*1.   Other circumstances in which dealings may not take place*

*An offeror or other persons may also be restricted from dealing or procuring others to deal in certain other circumstances, eg before the announcement of an offer, if the offeror has been supplied by the offeree company with confidential price-sensitive information in the course of offer discussions.*

*2.   Consortium offers and joint offerors*

*If an offer is to be made by more than one offeror or by a company formed by a group of persons to make an offer or by any other consortium offer vehicle, the offerors or group involved will normally be considered to be in a consortium for the purpose of this Note.*

*The Panel must be consulted before any acquisitions of interests in offeree company securities are made by members or potential members of a consortium. If there are existing interests in such securities, it will be necessary to satisfy the Panel that they were acquired before the consortium was formed or contemplated.*

*It will not normally be acceptable for members of a consortium to acquire interests in offeree company securities unless there are, for example, when a consortium company is to be the offeror, appropriate arrangements to ensure that such acquisitions are made proportionate to members' interests in the consortium company or under arrangements which give no profit to the party making the acquisition. The Panel will also be concerned to ensure that the purposes of the Code are not avoided through characterising persons acting in concert as joint offerors.*

*3.   No-profit arrangements*

*Arrangements made by a potential offeror with a person acting in concert with it, whereby interests in offeree company securities are acquired by the person acting in concert, on the basis that the offeror will bear all the risks and receive all the benefits, are not prohibited by this Rule. Arrangements which contain a benefit or potential benefit to the person acting in concert (beyond normal expenses and carrying costs) are, however, normally prohibited. In cases of doubt, the Panel must be consulted.*

**RULE 4** *CONTINUED*

*NOTES ON RULES 4.1 and 4.2 continued*

4.   *When an offer will not be made*

*If, after an announcement has been made that offer discussions are taking place or that an approach or offer is contemplated, the discussions are terminated or the offeror decides not to make an offer, no dealings in securities of the offeree company or, where relevant, the offeror, by the offeror or by any person privy to this information may take place prior to an announcement of the position.*

5.   *No dealing contrary to published advice*

*Directors and financial advisers to a company who have interests in securities in that company must not deal in such securities contrary to any advice they have published, or to any advice with which it can reasonably be assumed that they were associated, without giving sufficient public notice of their intentions together with an appropriate explanation.*

6.   *Discretionary fund managers and principal traders*

*Dealings in securities of the offeree company by non-exempt discretionary fund managers and principal traders which are connected with the offeror will be treated in accordance with Rule 7.2.*

## 4.3 GATHERING OF IRREVOCABLE COMMITMENTS

**Any person proposing to contact a private individual or small corporate shareholder with a view to seeking an irrevocable commitment must consult the Panel in advance.**

*NOTE ON RULE 4.3*

*Irrevocable commitments*

*Where irrevocable commitments are to be sought, the Panel will wish to be satisfied that the proposed arrangements will provide adequate information as to the nature of the commitment sought; and a realistic opportunity to consider whether or not that commitment should be given and to obtain independent advice if required. The financial adviser concerned will be responsible for ensuring compliance with all relevant legislation and other regulatory requirements.*

## 4.4 DEALINGS IN OFFEREE SECURITIES BY CERTAIN OFFEREE COMPANY ASSOCIATES

**During the offer period, except for exempt principal traders and exempt fund managers, no financial adviser or corporate broker (or any person controlling, controlled by or under the same control# as any such adviser or corporate broker) to an offeree company (or any of its parents,**

*#See Note at end of Definitions Section.*

**E**4

**RULE 4** *CONTINUED*

subsidiaries or fellow subsidiaries, or their associated companies or companies of which such companies are associated companies) shall, except with the consent of the Panel:—

(i)  either for its own account or on behalf of discretionary clients acquire any interest in offeree company shares; or

(ii)  make any loan to a person to assist him in acquiring any such interest save for lending in the ordinary course of business and on normal commercial terms to persons with which they have an established customer relationship; or

(iii) enter into any indemnity or option arrangement or any arrangement, agreement or understanding, formal or informal, of whatever nature, which may be an inducement for a person to retain, deal or refrain from dealing in relevant securities of the offeree company.

*NOTE ON RULE 4.4*

*Irrevocable commitments and letters of intent*

*Rule 4.4(iii) does not prevent an adviser to an offeree company from procuring irrevocable commitments or letters of intent not to accept an offer.*

## 4.5 RESTRICTION ON THE OFFEREE COMPANY ACCEPTING AN OFFER IN RESPECT OF TREASURY SHARES*

An offeree company may not accept an offer in respect of treasury shares until after the offer is unconditional as to acceptances.

## 4.6 RESTRICTION ON SECURITIES BORROWING AND LENDING TRANSACTIONS BY OFFERORS, THE OFFEREE COMPANY AND CERTAIN OTHER PARTIES

During the offer period, none of the following persons may, except with the consent of the Panel, enter into or take action to unwind a securities borrowing or lending transaction in respect of relevant securities:

(a)  the offeror;

(b)  the offeree company;

(c)  a company which is an associate of the offeror or the offeree company by virtue of paragraph (1) of the definition of associate;

*\*This Rule is disapplied in a scheme.*

30.3.09

**RULE 4** *CONTINUED*

**(d)  a connected adviser and persons controlling#, controlled by or under the same control as any such adviser (except for an exempt principal trader or an exempt fund manager);**

**(e)  a pension fund of the offeror or the offeree company or of a company which is an associate of the offeror or the offeree company by virtue of paragraph (1) of the definition of associate; and**

**(f)  any other person acting in concert with the offeror or with the offeree company.**

*NOTES ON RULE 4.6*

*1.  Return of borrowed relevant securities*

*The redelivery by a borrower of relevant securities (or equivalent securities) which have been recalled, or the accepting by a lender of the redelivery of relevant securities (or equivalent securities) which have not been recalled, in each case in accordance with an existing securities borrowing or lending agreement, will not normally be treated as taking action to unwind a securities borrowing or lending transaction. However, the Panel will normally require the redelivery or the accepting of the redelivery of such relevant securities to be disclosed.*

*2.  Pension funds*

*Rule 4.6(e) does not apply in respect of any pension funds which are managed under an agreement or arrangement with an independent third party in the terms set out in Note 7 on the definition of acting in concert.*

*3.  Disclosure or notice where consent is given*

*Where the Panel consents to a person to whom Rule 4.6 applies entering into or taking action to unwind a securities borrowing or lending transaction in respect of relevant securities, the Panel will normally require the transaction to be disclosed by that person as if it were a dealing in the relevant securities. Where a person wishes to enter into or take action to unwind more than one lending transaction in respect of relevant securities, the Panel may instead require that person to give public notice that he might do so.*

*4.  Discretionary fund managers and principal traders*

*Securities borrowing or lending transactions by non-exempt discretionary fund managers and principal traders which are subject to Rule 4.6(d) will be treated in accordance with Rule 7.2.*

*#See Note at end of Definitions Section.*

**E**₆

## RULE 5. TIMING RESTRICTIONS ON ACQUISITIONS

*NB For the purposes of this Rule 5 only, the number of shares in which a person will be treated as having an interest includes any shares in respect of which he has received an irrevocable commitment (see paragraph (5) of the definition of interests in securities).*

### 5.1 RESTRICTIONS

Except as permitted by Rule 5.2:—

(a) when a person (which for the purpose of Rule 5 includes any persons acting in concert with him) is interested in shares which in the aggregate carry less than 30% of the voting rights of a company, he may not acquire an interest in any other shares carrying voting rights in that company which, when aggregated with the shares in which he is already interested, would carry 30% or more of the voting rights; and

(b) when a person is interested in shares which in the aggregate carry 30% or more of the voting rights of a company but does not hold shares which carry more than 50% of the voting rights, he may not acquire an interest in any other shares carrying voting rights in that company. See Note 5.

*NOTES ON RULE 5.1*

*1.   When more than 50% is held*

*This Rule is not relevant to a person who holds shares carrying more than 50% of the voting rights of a company or to a person who obtains such a position by a permitted acquisition.*

*2.   New shares, subscription rights, convertibles and options*

*Neither the acquisition of new shares, securities convertible into new shares or rights to subscribe for new shares (other than the purchase of rights arising pursuant to a rights issue) nor the acquisition of new or existing shares, or rights in relation to such shares, under a share option scheme is restricted by this Rule. However, the acquisition of new shares as a result of the exercise of conversion or subscription rights or options must be treated for the purpose of this Rule as if it were an acquisition from a single shareholder (see Rule 5.2(a)). The effective date of the acquisition should normally be taken as the date of exercise of conversion or subscription rights or of options.*

*(See also Note 3 on this Rule.)*

*3.   Allotted but unissued shares*

*When shares of a company carrying voting rights have been allotted (even if provisionally) but have not yet been issued, for example, under a rights issue when the shares are represented by renounceable letters of allotment, the Panel should be consulted. This Rule may apply to the acquisition of an interest in such shares as it would in the case of an acquisition of an interest in registered shares.*

**E**7

**E**7

**RULE 5** *CONTINUED*

*NOTES ON RULE 5.1 continued*

4. *"Whitewashes"*

*This Rule does not prohibit a person from obtaining an interest in shares carrying 30% or more of the voting rights in accordance with Note 1 of the Notes on Dispensations from Rule 9.*

5. *Maintenance of the percentage of the shares in which a person is interested*

*The restrictions in this Rule do not apply to an acquisition of an interest in shares which would not increase the percentage of the shares carrying voting rights in which that person is interested, e.g. if a shareholder takes up his entitlement under a fully underwritten rights issue or if a person acquires shares on exercise of a call option.*

6. *Discretionary fund managers and principal traders*

*Dealings by non-exempt discretionary fund managers and principal traders which are connected with an offeror will be treated in accordance with Rule 7.2.*

7. *Gifts*

*If a person receives a gift of shares or an interest in shares which takes the aggregate number of shares carrying voting rights in which he is interested to 30% or more, he must consult the Panel. (See also Note 3 on Rule 9.5.)*

## 5.2 EXCEPTIONS TO RESTRICTIONS

The restrictions in Rule 5.1 do not apply to an acquisition of an interest in shares carrying voting rights in a company by a person:—

(a) at any time from a single shareholder if it is the only such acquisition within any period of 7 days (see also Rules 5.3 and 5.4). This exception will not apply when the person has announced a firm intention to make an offer and there is no pre-condition to which the making of an offer is subject; or

(b) immediately before the person announces a firm intention to make an offer (whether or not there is any pre-condition to which the making of an offer is subject), provided that the offer will be publicly recommended by, or the acquisition is made with the agreement of, the board of the offeree company and the acquisition is conditional upon the announcement of the offer; or

(c) after the person has announced a firm intention to make an offer provided that, at the time of the acquisition, there is no pre-condition to which the making of an offer is subject and:

(i) the acquisition is made with the agreement of the board of the offeree company; or

**E8**

**RULE 5** *CONTINUED*

(ii) that offer or any competing offer has been publicly recommended by the board of the offeree company, even if such recommendation is subsequently withdrawn; or

(iii) either:

(1) the first closing date of that offer has passed and it has been announced that such offer is not to be referred to the Competition Commission (or such offer does not come within the statutory provisions for possible reference) and it has been established that no action by the European Commission will any longer be taken in respect of such offer pursuant to Council Regulation 139/2004/EC (or such offer does not come within the scope of such Regulation); or

(2) the first closing date of any competing offer has passed and it has been announced that such competing offer is not to be referred to the Competition Commission (or such competing offer does not come within the statutory provisions for possible reference) and it has been established that no action by the European Commission will any longer be taken in respect of such offer pursuant to Council Regulation 139/2004/EC (or such offer does not come within the scope of such Regulation); or

(iv) that offer is unconditional in all respects; or

(d) if the acquisition is by way of acceptance of the offer; or

(e) if the acquisition is permitted by Note 11 on Rule 9.1 or Note 5 on the Dispensations from Rule 9.

*NOTES ON RULE 5.2*

*1. Single shareholder*

*(a)  For the purpose of Rule 5.2(a), a number of shareholders will be regarded as a single shareholder only if they are all members of the same family or of a group of companies which is regarded as one for disclosure purposes under Section 823 of the Companies Act 2006. A principal trader or a fund manager managing investment accounts on behalf of a number of underlying clients (whether or not on a discretionary basis) will not normally be considered to be a single shareholder for the purpose of this Rule. The Panel should be consulted in cases of doubt.*

*(b)  An acquisition of an interest in shares will only be permitted by Rule 5.2(a) if the acquisition relates to a pre-existing holding of shares of the single shareholder concerned.*

30.3.09

**RULE 5 *CONTINUED***

*NOTES ON RULE 5.2 continued*

*2.   Rule 9*

*An acquisition permitted by Rule 5.2 may result in an obligation to make an offer under Rule 9, in which case an immediate announcement of such an offer must be made.*

*3.   Revision*

*If an offeror revises its offer, the exceptions allowed by this Rule will apply on the basis of the time periods applicable to the original offer.*

*4.   After an offer lapses*

*After an offer has lapsed, the restrictions in Rule 5.1 will once again apply to the former offeror.*

## 5.3 ACQUISITIONS FROM A SINGLE SHAREHOLDER – CONSEQUENCES

**A person who acquires an interest in shares from a single shareholder permitted by Rule 5.2(a) may not acquire an interest in any other shares carrying voting rights in a company, except in the circumstances set out in Rule 5.2(b), (c), (d) and (e). If that person makes an offer for the company which subsequently lapses, this restriction will cease to apply.**

*NOTES ON RULE 5.3*

*1.   If a person's interests are reduced*

*A person who is restricted by this Rule from making further acquisitions will cease to be so restricted if the aggregate number of shares carrying voting rights in which he is interested falls below 30% (in which case he will become subject to Rule 5.1(a)).*

*2.   Rights or scrip issues and "whitewashes"*

*The restrictions imposed by this Rule do not prevent a person from receiving his entitlement of shares through a rights or scrip issue as long as he does not increase the percentage of shares carrying voting rights in which he is interested. Nor do they prevent a person from acquiring further interests in shares in accordance with the Notes on Dispensations from Rule 9.*

## 5.4 ACQUISITIONS FROM A SINGLE SHAREHOLDER – DISCLOSURE

**A person who acquires an interest in shares carrying voting rights in a company from a single shareholder permitted by Rule 5.2(a) must notify the company, a RIS and the Panel, not later than 12 noon on the business day following the date of the acquisition, of details of:**

**E10**

**RULE 5 *CONTINUED***

(a)  that acquisition; and

(b)  any shares of the company in which he has an interest or in respect of which he has a right to subscribe, in each case specifying the nature of the interests or rights concerned (see Note 5(a) on Rule 8). Similar details of any short position (whether conditional or absolute and whether in the money or otherwise), including any short position under a derivative, any agreement to sell or any delivery obligation or right to require another person to purchase or take delivery, must also be disclosed.

*NOTE ON RULE 5.4*

*Disclosure of the identity of the person dealing*

*Any announcement must comply with the requirements of Note 5(a) on Rule 8 regarding the disclosure of the identity of the person dealing and, if different, the owner or controller.*

## RULE 6. ACQUISITIONS RESULTING IN AN OBLIGATION TO OFFER A MINIMUM LEVEL OF CONSIDERATION

### 6.1 ACQUISITIONS BEFORE A RULE 2.5 ANNOUNCEMENT

Except with the consent of the Panel in cases falling under (a) or (b), when an offeror or any person acting in concert with it has acquired an interest in shares in the offeree company:—

(a)  within the three month period prior to the commencement of the offer period; or

(b)  during the period, if any, between the commencement of the offer period and an announcement made by the offeror in accordance with Rule 2.5; or

(c)  prior to the three month period referred to in (a), if in the view of the Panel there are circumstances which render such a course necessary in order to give effect to General Principle 1,

the offer to the holders of shares of the same class shall not be on less favourable terms.

If an acquisition of an interest in shares in the offeree company has given rise to an obligation under Rule 11, compliance with that Rule will normally be regarded as satisfying any obligation under this Rule in respect of that acquisition.

In the case of paragraph (b), an immediate announcement may be required in accordance with the Note on Rule 7.1.

### 6.2 ACQUISITIONS AFTER A RULE 2.5 ANNOUNCEMENT

(a)  If, after an announcement made in accordance with Rule 2.5 and before the offer closes for acceptance, an offeror or any person acting in concert with it acquires any interest in shares at above the offer price (being the then current value of the offer), it shall increase its offer to not less than the highest price paid for the interest in shares so acquired.

(b)  Immediately after the acquisition, the offeror must announce that a revised offer will be made in accordance with this Rule (see also Rule 32). Whenever practicable, the announcement should also state the nature of the interest, the number of shares concerned and the price paid.

(c)  Acquisitions of interests in shares in the offeree company may also give rise to an obligation under Rule 11. Where an obligation is incurred under Rule 11 by reason of any such acquisition, compliance with that Rule will normally be regarded as satisfying any obligation under this Rule in respect of that acquisition.

**E**₁₂

**RULE 6 *CONTINUED***

*NOTES ON RULE 6*

*1.   Adjusted terms*

*The Panel's discretion to agree adjusted terms pursuant to Rule 6.1(a) or (b) will only be exercised in exceptional circumstances. Factors which the Panel might take into account when considering an application for adjusted terms include:—*

*(a)  whether the relevant acquisition was made on terms then prevailing in the market;*

*(b)  changes in the market price of the shares since the relevant acquisition;*

*(c)  the size and timing of the relevant acquisition;*

*(d)  the attitude of the offeree board;*

*(e)  whether interests in shares have been acquired at high prices from directors or other persons closely connected with the offeror or the offeree company; and*

*(f)  whether a competing offer has been announced for the offeree company.*

*2.   Acquisitions prior to the three month period*

*The discretion given to the Panel in Rule 6.1(c) will not normally be exercised unless the vendors, or other parties to the transactions giving rise to the interests, are directors of, or other persons closely connected with, the offeror or the offeree company.*

*3.   No less favourable terms*

*For the purpose of Rule 6.1, except where Rule 9 (mandatory offer) or Rule 11.1 (requirement for cash offer) applies, it will not be necessary to make a cash offer available even if interests in shares have been acquired for cash. However, any securities offered as consideration must, at the date of the announcement of the firm intention to make the offer, have a value at least equal to the highest relevant price paid. If, during the period ending when the market closes on the first business day after the announcement, the value is not maintained, the Panel will be concerned to ensure that the offeror acted with all reasonable care in determining the consideration.*

*If there is a restricted market in the securities of an offeror, or if the amount of securities to be issued of a class already admitted to trading is large in relation to the amount already issued, the Panel may require justification of prices used to determine the value of the offer.*

30.3.09