**J**13

**RULE 24** *CONTINUED*

The Panel would only grant consent in exceptional circumstances and where all shareholders were to be treated similarly.

## 24.12  ARRANGEMENTS IN RELATION TO DEALINGS

The offer document must disclose any arrangements of the kind referred to in Note 6(b) on Rule 8 which exist between the offeror, or any person acting in concert with the offeror, and any other person; if there are no such arrangements, this should be stated. If the directors or their financial advisers are aware of any such arrangements between any other associate of the offeror and any other person, such arrangements must also be disclosed.

## 24.13  CASH UNDERWRITTEN ALTERNATIVES WHICH MAY BE SHUT OFF*

The procedure for acceptance of a cash underwritten alternative which is capable of being shut off must be prominently stated in relevant documents and acceptance forms. In particular, it must be made clear (in the offer document, the acceptance form and any subsequent documents) whether shareholders must lodge their certificates by the closing date of the cash underwritten alternative, in addition to their completed acceptance forms, in order to receive cash.

## 24.14  INCORPORATION OF INFORMATION BY REFERENCE

(a) The information required to be included in documents under the following Rules may be incorporated into the relevant documents by reference to another source:

> (i)   Rules 24.2(a)(i) to (iii) and (v) to (viii);

> (ii)   Rules 24.2(b)(i) and (ii); and

> (iii)   Rules 24.2(c) and (e), in so far as they refer to Rules 24.2(a)(i) to (iii) and (v) to (viii).

Information that is required to be included in a document under other Rules may be incorporated by reference to another source with the Panel's consent.

(b) Information that is incorporated into a document by reference to another source must be published on a website by no later than the date on which the document is published. The information published on a website must be published:

*This Rule is disapplied in a scheme.*
30.3.09

**J**14

**RULE 24** *CONTINUED*

(i)    in a form that may be printed, read and retained by the person to whom the document must be sent; and

(ii)    in a "read-only" format so that it may not be amended or altered in any way.

(c) If a person is sent a document which incorporates information by reference to another source, that person may request a copy of the information so incorporated in hard copy form. If such a request is made, the party which published the document must ensure that a copy of the requested information is sent to the relevant person in hard copy form as soon as possible and in any event within two business days of the request being received by the relevant party.

(d) Any document which incorporates information by reference to another source (and any related website notification) must contain a statement that a shareholder, person with information rights or other person to whom it is sent may request a copy of any such information in hard copy form. Attention should be drawn to the fact that a hard copy of the information will not be sent to that person unless requested and details must be provided of how a hard copy may be obtained (including an address in the United Kingdom and a telephone number to which requests may be submitted).

*NOTE ON RULE 24.14*

*Source of information incorporated by reference*

*Where a document incorporates information by reference to other sources, a consolidated list of all such information and sources must be provided including, in each case, details of where the information may be located (for example, providing details of the address of the website on which the information is published and details of the relevant document, page and, where relevant, paragraph numbers). A general reference to where information may be found, for example, "in the company's annual report and accounts" or "on the company's website" will not be sufficient.*

## RULE 25. OFFEREE BOARD CIRCULARS

### 25.1 VIEWS OF THE BOARD ON THE OFFER, INCLUDING THE OFFEROR'S PLANS FOR THE COMPANY AND ITS EMPLOYEES

(a)  The board of the offeree company must send its opinion on the offer (including any alternative offers) to the offeree company's shareholders and persons with information rights. It must, at the same time, make known to its shareholders the substance of the advice given to it by the independent advisers appointed pursuant to Rule 3.1.

(b)  The opinion referred to in (a) above must include the views of the board of the offeree company on:

(i)   the effects of implementation of the offer on all the company's interests, including, specifically, employment; and

(ii)  the offeror's strategic plans for the offeree company and their likely repercussions on employment and the locations of the offeree company's places of business, as set out in the offer document pursuant to Rule 24.1,

and must state the board's reasons for forming its opinion.

(c)  If any document published in connection with an offer includes a recommendation or an opinion of a financial adviser for or against acceptance of the offer, the document must, unless published by the financial adviser in question, include a statement that the financial adviser has given and not withdrawn its consent to the publication of the document with the inclusion of its recommendation or opinion in the form and context in which it is included.

*NOTES ON RULE 25.1*

*1.   When a board has effective control*

*A board whose shareholdings confer control over a company which is the subject of an offer must carefully examine the reasons behind the advice it gives to shareholders and must be prepared to explain its decisions publicly. Shareholders in companies which are effectively controlled by the directors must accept that in respect of any offer the attitude of their board will be decisive.*

*2.   Split boards*

*If the board of the offeree company is split in its views on an offer, the directors who are in a minority should also publish their views. The Panel will normally require the offeree company to send those views to the offeree company's shareholders and persons with information rights.*

**J**16

**RULE 25** *CONTINUED*

*NOTES ON RULE 25.1 continued*

*3.   Conflicts of interest*

*Where a director has a conflict of interest, he should not normally be joined with the remainder of the board in the expression of its views on the offer and the nature of the conflict should be clearly explained. Depending on the circumstances, such a director may have to make the responsibility statement required by Rule 19.2, appropriately amended to make it clear that he does not accept responsibility for the views of the board on the offer. Where the statement relates to a prospectus or an equivalent document, the provisions of the UKLA Rules may affect the position.*

*4.   Management buy-outs*

*If the offer is a management buy-out or similar transaction, a director will normally be regarded as having a conflict of interest where it is intended that he should have any continuing role (whether in an executive or non-executive capacity) in either the offeror or offeree company in the event of the offer being successful.*

## 25.2 FINANCIAL AND OTHER INFORMATION

**The first major circular published by the offeree board in connection with an offer (whether recommending acceptance or rejection of the offer) must contain all known material changes in the financial or trading position of the offeree company subsequent to the last published audited accounts or a statement that there are no known material changes.**

*NOTES ON RULE 25.2*

*1.   Offeree board circular combined with offer document*

*Where the first major circular published by the offeree board is combined with the offer document, it will be the responsibility of the offeree board to include the information required by this Rule. Accordingly, the offeror will not be required to comply with Rule 24.2(e) insofar as it applies to Rule 24.2(a)(iv).*

*2.   Offeree board circular published after offer document*

*Where the offeror has included in the offer document information on the offeree company as required by Rule 24.2(e) insofar as it applies to Rules 24.2(a)(iv) and (v), such information does not need to be repeated in the first major circular published by the offeree board provided that the statement made in accordance with this Rule makes specific reference to the relevant information disclosed by the offeror in the offer document.*

**RULE 25** *CONTINUED*

## 25.3 INTERESTS AND DEALINGS

(a)  The first major circular published by the offeree board in connection with the offer (whether recommending acceptance or rejection of the offer) must state:—

(i) details of any relevant securities of the offeror in which the offeree company or any of the directors of the offeree company has an interest or in respect of which it or he has a right to subscribe, in each case specifying the nature of the interests or rights concerned (see Note 5(a) on Rule 8). Similar details of any short positions (whether conditional or absolute and whether in the money or otherwise), including any short position under a derivative, any agreement to sell or any delivery obligation or right to require another person to purchase or take delivery, must also be stated;

(ii) the same details as in (i) above in respect of any relevant securities of the offeree company in relation to each of:

*(a)* the directors of the offeree company;

*(b)* any company which is an associate of the offeree company by virtue of paragraph (1) of the definition of associate;

*(c)* any pension fund of the offeree company or of a company which is an associate of the offeree company by virtue of paragraph (1) of the definition of associate;

*(d)* any employee benefit trust of the offeree company or of a company which is an associate of the offeree company by virtue of paragraph (1) of the definition of associate;

*(e)* any connected adviser to the offeree company, to a company which is an associate of the offeree company by virtue of paragraph (1) of the definition of associate or to a person acting in concert with the offeree company;

*(f)* any person controlling#, controlled by or under the same control as any connected adviser falling within *(e)* above (except for an exempt principal trader or an exempt fund manager); and

*(g)* any person who has an arrangement of the kind referred to in Note 6 on Rule 8 with the offeree company or with any person who is an associate of the offeree company by virtue of paragraphs (1), (2), (3) or (4) of the definition of associate;

*#See Note at end of Definitions Section.*
30.3.09

**J**18

**RULE 25** *CONTINUED*

(iii) in the case of a securities exchange offer, the same details as in (i) above in respect of any relevant securities of the offeror in relation to each of the persons listed in (ii)*(b)* to *(g)* above;

(iv) details of any relevant securities of the offeree company and (in the case of a securities exchange offer only) the offeror which the offeree company or any person acting in concert with the offeree company has borrowed or lent, save for any borrowed shares which have been either on-lent or sold; and

(v) whether the directors of the offeree company intend, in respect of their own beneficial shareholdings, to accept or reject the offer.

**(b)** If, in the case of any of the persons referred to in Rule 25.3(a), there are no interests or short positions to be disclosed, this fact should be stated. This will not apply to category (a)(ii)*(g)* if there are no such arrangements.

**(c)** If any person referred to in Rule 25.3(a)(i) has dealt in any relevant securities of the offeree company or the offeror between the start of the offer period and the latest practicable date prior to the publication of the circular, the details, including dates, must be stated (see Note 5(a) on Rule 8). If any person referred to in Rule 25.3(a)(ii)*(b)* to *(g)* has dealt in relevant securities of the offeree company (or, in the case of a securities exchange offer only, the offeror) during the same period, similar details must be stated. In all cases, if no such dealings have taken place this fact should be stated.

**(d)** See also Rule 37.3(c).

*NOTES ON RULE 25.3*

*(See also Notes on Rule 24.3 which apply equally to this Rule.)*

*1.   When directors resign*

*When, as part of the transaction leading to an offer being made, some or all of the directors of the offeree company resign, this Rule applies to them in the usual way.*

*2.   Pension funds*

*Rule 25.3(a)(ii)(c) does not apply in respect of any pension funds which are managed under an agreement or arrangement with an independent third party in the terms set out in Note 7 on the definition of acting in concert.*

30.3.09

**RULE 25** *CONTINUED*

## 25.4 DIRECTORS' SERVICE CONTRACTS

**(a)  The first major circular published by the offeree board in connection with the offer (whether recommending acceptance or rejection of the offer) must contain particulars of all service contracts of any director or proposed director of the offeree company with the company or any of its subsidiaries. If there are none, this should be stated.**

**(b)  If any such contracts have been entered into or amended within 6 months of the date of the document, particulars must be given in respect of the earlier contracts (if any) which have been replaced or amended as well as in respect of the current contracts. If there have been none, this should be stated.**

*NOTES ON RULE 25.4*

*1.    Particulars to be disclosed*

*Particulars in respect of existing service contracts and, where appropriate under Rule 25.4(b), earlier contracts or an appropriate negative statement must be provided as follows:—*

*(a)   the name of the director under contract;*

*(b)   the date of the contract, the unexpired term and details of any notice periods;*

*(c)   full particulars of the director's remuneration including salary and other benefits;*

*(d)   any commission or profit sharing arrangements;*

*(e)   any provision for compensation payable upon early termination of the contract; and*

*(f)    details of any other arrangements which are necessary to enable investors to estimate the possible liability of the company on early termination of the contract.*

*It is not acceptable to refer to the latest annual report, indicating that information regarding service contracts may be found there, or to state that the contracts are open for inspection at a specified place.*

*2.    Recent increases in remuneration*

*The Panel will regard as the amendment of a service contract under this Rule any case where the remuneration of an offeree company director is increased within 6 months of the date of the document. Therefore, any such*

**J**20

**RULE 25** *CONTINUED*

*NOTES ON RULE 25.4 continued*

increase must be disclosed in the document and the current and previous levels of remuneration stated.

## 25.5 ARRANGEMENTS IN RELATION TO DEALINGS

The first major circular published by the offeree board in connection with the offer (whether recommending acceptance or rejection of the offer) must disclose any arrangements of the kind referred to in Note 6(b) on Rule 8 which exist between the offeree company, or any person who is an associate of the offeree company by virtue of paragraphs (1), (2), (3) or (4) of the definition of associate, and any other person; if there are no such arrangements, this should be stated. If the directors or their financial advisers are aware of any such arrangements between any other associate of the offeree company and any other person, such arrangements must also be disclosed.

## 25.6 MATERIAL CONTRACTS, IRREVOCABLE COMMITMENTS AND LETTERS OF INTENT

The first major circular published by the offeree board in connection with an offer must contain:—

(a) a summary of the principal contents of each material contract (not being a contract entered into in the ordinary course of business) entered into by the offeree company or any of its subsidiaries during the period beginning two years before the commencement of the offer period, including particulars of dates, parties, terms and conditions and any consideration passing to or from the offeree company or any of its subsidiaries; and

(b) details of any irrevocable commitment or letter of intent which the offeree company or any of its associates has procured in relation to relevant securities of the offeree company (or, if appropriate, the offeror) (see Note 14 on Rule 8).

**J**21

## RULE 26. DOCUMENTS TO BE ON DISPLAY

Except with the consent of the Panel, copies of the following documents must be made available for inspection from the time the offer document or offeree board circular, as appropriate, is published until the end of the offer period. The offer document or offeree board circular must state which documents are so available and the place (being a place in the City of London or such other place as the Panel may agree) where inspection can be made:—

(a) memorandum and articles of association of the offeror or the offeree company or equivalent documents;

(b) audited consolidated accounts of the offeror or the offeree company for the last two financial years for which these have been published;

(c) all service contracts of offeree company directors;

(d) any report, letter, valuation or other document any part of which is exhibited or referred to in any document published by or on behalf of the offeror or the offeree company;

(e) written consents of the financial advisers (Rules 24.2(h) and 25.1(c));

(f) any material contract described in the offer document or offeree board circular (as appropriate) in compliance with Rule 24.2(a), Rule 24.2(c) or Rule 25.6(a);

(g) where a profit forecast has been made:

   (i) the reports of the auditors or consultant accountants and of the financial advisers (Rule 28.3);

   (ii) the letters giving the consent of the auditors or consultant accountants and of the financial advisers to the publication of the relevant document with the report in the form and context in which it is included or, if appropriate, to the continued use of the report in a subsequent document (Rules 28.4 and 28.5);

(h) where an asset valuation has been made:

   (i) the valuation certificate and associated report or schedule containing details of the aggregate valuation (Rule 29.5);

   (ii) a letter stating that the valuer has given and not withdrawn his consent to the publication of his name in the relevant document (Rule 29.5);

30.3.09

**J**22

**RULE 26** *CONTINUED*

(i)   any document evidencing an irrevocable commitment or a letter of intent which has been procured by the offeror or offeree company (as appropriate) or any of their respective associates;

(j)   where the Panel has given consent to aggregation of dealings, a full list of all dealings (Note 2 on Rule 24.3);

(k)  documents relating to the financing arrangements for the offer where such arrangements are described in the offer document in compliance with the third sentence of Rule 24.2(f);

(l)   all derivative contracts which in whole or in part have been disclosed under Rules 24.3(a) and (c) and 25.3(a) and (c) or in accordance with Rule 8.1. Documents in respect of the last mentioned must be made available for inspection from the time the offer document or the offeree board circular is published or from the time of disclosure, whichever is the later;

(m)  documents relating to the payment of an inducement fee or similar arrangement (Rule 21.2);

(n)  any agreements or arrangements, or, if not reduced to writing, a memorandum of all the terms of such agreements or arrangements, disclosed in the offer document pursuant to Rule 24.2(d)(ix);

(o)  any agreements or arrangements, or, if not reduced to writing, a memorandum of the terms of such agreements or arrangements, of the kind referred to in Note 6 on Rule 8;

(p)  in the case of an offeror, the offer document and any revised offer document (Rules 30.1(a) and 32.1(a)); and

(q)  in the case of the offeree company, the offeree board circular and any offeree board opinion on any revised offer document (Rules 30.2(a) and 32.6(a)).

*NOTE ON RULE 26*

*Copies of documents*

*A copy of each document on display must, on request, promptly be made available by an offeror or the offeree company to the other party and to any competing offeror or potential offeror.*

30.3.09

**J**23

## RULE 27. DOCUMENTS SUBSEQUENTLY PUBLISHED

### 27.1 MATERIAL CHANGES

Documents subsequently sent to shareholders of the offeree and persons with information rights by either party must contain details of any material changes in information previously published by or on behalf of the relevant party during the offer period; if there have been no such changes, this must be stated. In particular, the following matters must be updated:—

(a) changes or additions to material contracts, irrevocable commitments or letters of intent (Rules 24.2(a), (c) and (d)(x) and 25.6);

(b) interests and dealings (Rules 24.3 and 25.3);

(c) directors' emoluments (Rule 24.4);

(d) special arrangements (Rule 24.5);

(e) ultimate owner of securities acquired under the offer (Rule 24.8);

(f) arrangements in relation to dealings (Rules 24.12 and 25.5); and

(g) changes to directors' service contracts (Rule 25.4).

### 27.2 CONTINUING VALIDITY OF PROFIT FORECASTS

When a profit forecast has been made, documents subsequently published by the party making the forecast must comply with the requirements of Rule 28.5.

30.3.09

**K₁**

## SECTION K. PROFIT FORECASTS

### RULE 28

### 28.1 STANDARDS OF CARE

There are obvious hazards attached to the forecasting of profits; this should in no way detract from the necessity of maintaining the highest standards of accuracy and fair presentation in all communications published in connection with an offer. A profit forecast must be compiled with due care and consideration by the directors, whose sole responsibility it is; the financial advisers must satisfy themselves that the forecast has been prepared in this manner by the directors.

*NOTE ON RULE 28.1*

*Existing forecasts*

*At the outset, an adviser should invariably check whether or not his client has a forecast on the record so that the procedures required by Rule 28.3(d) can be set in train with a minimum of delay.*

### 28.2 THE ASSUMPTIONS

(a) When a profit forecast appears in any document published in connection with an offer, the assumptions, including the commercial assumptions, upon which the directors have based their profit forecast, must be stated in the document.

(b) When a profit forecast is given in a press announcement commencing or made during an offer period, any assumptions on which the forecast is based should be included in the announcement.

*NOTES ON RULE 28.2*

*1. Requirement to state the assumptions*

*(a) It is important that by listing the assumptions on which the forecast is based useful information should be provided to help relevant persons to form a view as to the reasonableness and reliability of the forecast. This should draw attention to, and where possible quantify, those uncertain factors which could materially disturb the ultimate achievement of the forecast.*

*(b) There are inevitable limitations on the accuracy of some forecasts and these should be indicated. A description of the general nature of the business or businesses with an indication of any major hazards in forecasting in these particular businesses should normally be included.*

**K₂**

**RULE 28** *CONTINUED*

*NOTES ON RULE 28.2 continued*

*(c) The forecast and the assumptions on which it is based are the sole responsibility of the directors. However, a duty is placed on the financial advisers to discuss the assumptions with their client and to satisfy themselves that the forecast has been made with due care and consideration. Auditors or consultant accountants must satisfy themselves that the forecast, so far as the accounting policies and calculations are concerned, has been properly compiled on the basis of the assumptions made.*

*Although the accountants have no responsibility for the assumptions, they will as a result of their review be in a position to advise the company on what assumptions should be listed in the circular and the way in which they should be described. The financial advisers and accountants obviously have substantial influence on the information about assumptions to be given in a circular; neither should allow an assumption to be published which appears to be unrealistic, or one to be omitted which appears to be important, without commenting appropriately in its report.*

*2.   General rules*

*(a) The following general rules apply to the selection and drafting of assumptions.*

*(i)   The implications of the assumptions should be capable of being understood with a view to helping relevant persons to form a judgement as to the reasonableness of the forecast and the main uncertainties attaching to it.*

*(ii)  The assumptions should be specific rather than general, definite rather than vague.*

*(iii) Assumptions about factors which the directors can influence may be included, provided that they are clearly identified as such. However, assumptions relating to the general accuracy of estimates should be avoided. The following would not be acceptable:—*

*"Sales and profits for the year will not differ materially from those budgeted for."*

*"There will be no increases in costs other than those anticipated and provided for."*

*Every forecast involves estimates of income and of costs and must obviously be dependent on these estimates. Assumptions of the type illustrated above would not help a person in considering the forecast.*

**K₃**

**RULE 28** *CONTINUED*

*NOTES ON RULE 28.2 continued*

*(iv) The assumptions should not relate to the accuracy of the accounting systems. If the systems of accounting and forecasting are such that full reliance cannot be placed on them, this should be the subject of some qualification, in the forecast itself. It is not satisfactory for this type of deficiency to be covered by the assumptions. The following would not be acceptable:—*

*"The book record of stock and work-in-progress will be confirmed at the end of the financial year."*

*(v) The assumptions should relate only to matters which may have a material bearing on the forecast.*

*(b) Even the more specific type of assumption may still leave doubt as to its implications, for instance:—*

*"No abnormal liabilities will arise under guarantees."*

*"Provisions for outstanding legal claims will prove adequate."*

*Such phrases might be dismissed on the grounds that the first relates to the unforeseen and the second to the adequacy of the estimating system. In both these examples information would be necessary about the extent or basis of the provision already made and/or about the circumstances in which unprovided for liabilities might arise.*

*(c) There may be occasions, particularly when the estimate relates to a period already ended, when no assumptions are required.*

## 28.3 REPORTS REQUIRED IN CONNECTION WITH PROFIT FORECASTS

**(a) A forecast made by an offeror offering solely cash need not be reported on. With the consent of the Panel, this exemption may be extended to an offeror offering a non-convertible debt instrument.**

**(b) In all other cases, the accounting policies and calculations for the forecasts must be examined and reported on by the auditors or consultant accountants. Any financial adviser mentioned in the document must also report on the forecasts.**

**(c) When income from land and buildings is a material element in a forecast, that part of the forecast should normally be examined and reported on by an independent valuer: this requirement does not apply where the income is virtually certain, eg known rents receivable under existing leases.**

**K**4

RULE 28 *CONTINUED*

(d)  Except with the consent of the Panel, any profit forecast which has been made before the commencement of the offer period must be examined, repeated and reported on in the document sent to shareholders and persons with information rights.

(e)  Exceptionally, the Panel may accept that, because of the uncertainties involved, it is not possible for a forecast previously made to be reported on in accordance with the Code nor for a revised forecast to be made. In these circumstances, the Panel would insist on a full explanation being given as to why the requirements of the Code were not capable of being met.

## 28.4 PUBLICATION OF REPORTS AND CONSENT LETTERS

Whenever a profit forecast is made during an offer period, the reports must be included in the document containing the forecast or, when the forecast is made in an announcement (including one commencing the offer period), in that announcement. The reports must be accompanied by a statement that those making them have given and not withdrawn their consent to publication. If a company's forecast is published first in an announcement, it must be repeated in full, together with the reports, in the next document published in connection with the offer by that company.

## 28.5 SUBSEQUENT DOCUMENTS — CONTINUING VALIDITY OF FORECAST

When a company includes a forecast in a document, any document subsequently published by that company in connection with that offer must, except with the consent of the Panel, contain a statement by the directors that the forecast remains valid for the purpose of the offer and that the financial advisers and accountants who reported on the forecast have indicated that they have no objection to their reports continuing to apply.

## 28.6 STATEMENTS WHICH WILL BE TREATED AS PROFIT FORECASTS

(a)  When no figure is mentioned

Even when no particular figure is mentioned or even if the word "profit" is not used, certain forms of words may constitute a profit forecast, particularly when considered in context. Examples are "profits will be somewhat higher than last year" and "performance in the second half-year is expected to be similar to our performance and results in the first half-year" (when interim figures have already been published). Whenever a form of words puts a floor under, or a ceiling on, the likely profits of a particular period or contains the data necessary to calculate an approximate figure for

**RULE 28** *CONTINUED*

future profits, it will be treated by the Panel as a profit forecast which must be reported on. In cases of doubt, professional advisers should consult the Panel in advance.

**(b)   Estimates of profit for a completed period**

An estimate of profit for a period which has already expired should be treated as a profit forecast.

**(c)   Interim and preliminary figures**

Except with the consent of the Panel, any unaudited profit figures published during an offer period must be reported on. This provision does not, however, apply to:—

> (i)    unaudited statements of annual or interim results which have already been published;

> (ii)    unaudited statements of annual results which comply with the requirements for preliminary statements of annual results as set out in the UKLA Rules;

> (iii)    unaudited statements of interim results which comply with the requirements for half-yearly reports as set out in the UKLA Rules in cases where the offer has been publicly recommended by the board of the offeree company; or

> (iv)    unaudited statements of interim results by offerors which comply with the requirements for half-yearly reports as set out in the UKLA Rules, whether or not the offer has been publicly recommended by the board of the offeree company but provided the offer could not result in the issue of securities which would represent 10% or more of the enlarged voting share capital of the offeror.

The Panel should be consulted in advance if the company is not admitted to the Official List but wishes to take advantage of the exemptions under (ii), (iii) or (iv) above.

**(d)   Forecasts for a limited period**

A profit forecast for a limited period (eg the following quarter) is subject to this Rule.

**(e)   Dividend forecasts**

A dividend forecast is not normally considered to be a profit forecast unless, for example, it is accompanied by an estimate as to dividend cover.

**K6**

**RULE 28** *CONTINUED*

**(f)  Profit warranties**

The Panel must be consulted in advance if a profit warranty is to be published in connection with an offer as it may be regarded as a profit forecast.

**(g)  Earnings enhancement and merger benefits statements**

Parties wishing to make earnings enhancement statements which are not intended to be profit forecasts must include an explicit and prominent disclaimer to the effect that such statements should not be interpreted to mean that earnings per share will necessarily be greater than those for the relevant preceding financial period.

Parties should also be aware that the inclusion of earnings enhancement statements, if combined with merger benefits statements and/or other published financial information, may result in the market being provided with information from which the prospective profits for the offeror or the enlarged offeror group or at least a floor or ceiling for such profits can be inferred. Such statements would then be subject to this Rule. If parties are in any doubt as to the implications of the inclusion of such statements, they should consult the Panel in advance.

See also Note 8 on Rule 19.1.

## 28.7 TAXATION, EXTRAORDINARY ITEMS AND MINORITY INTERESTS

When a forecast of profit before taxation appears in a document published in connection with an offer, there must be included forecasts of taxation (where the figure is expected to be significantly abnormal), extraordinary items and minority interests (where either of these amounts is expected to be material).

## 28.8 WHEN A FORECAST RELATES TO A PERIOD WHICH HAS COMMENCED

Whenever a profit forecast is made in relation to a period in which trading has already commenced, any previously published profit figures in respect of any expired part of that trading period, together with comparable figures for the same part of the preceding year, must be stated.

**L₁**

**SECTION L. ASSET VALUATIONS**

**RULE 29**

*NB All references in the Rule to "The Standards" are to the Royal Institution of Chartered Surveyors Valuation Standards.*

## 29.1 VALUATIONS TO BE REPORTED ON IF GIVEN IN CONNECTION WITH AN OFFER

When a valuation of assets is given in connection with an offer, it should be supported by the opinion of a named independent valuer. (For the purposes of this Rule, "an independent valuer" means a valuer who meets the requirements of an "external valuer" as defined in The Standards and, in addition, has no connection with other parties to the transaction.)

**(a)   Type of asset**

This Rule applies not only to land, buildings, plant and equipment but also to other assets, eg contracts, stocks, intangible assets and individual parts of a business. Where such other assets are involved, the Panel should be consulted in advance.

**(b)   The valuer**

In relation to land, buildings, plant and equipment, a valuer should be a corporate member of The Royal Institution of Chartered Surveyors or The Institute of Revenues Rating and Valuation or some other person approved by the Panel. In respect of other types of asset, the valuer should be an appropriately qualified person approved by the Panel. The valuer must be able to demonstrate that he meets any legal or regulatory requirements which apply in the circumstances in which the particular valuation is required and either:

> (i)   that he has, in respect of the particular type of property or asset, sufficient current local, national and international (as appropriate) knowledge of the particular market and the skills and understanding necessary to undertake the valuation competently;
> or

> (ii)   where he satisfies (i) above, except that he has insufficient current knowledge, that he will be or has been assisted by a person(s) who has/have such knowledge and the skills and understanding necessary to provide the assistance required by the valuer.

**(c)   In connection with an offer**

In certain cases offer documents or defence circulars will include statements of assets reproducing directors' estimates of asset values published with the company's accounts in accordance with Schedule 7 Part 1 of the Large and Medium-sized Companies and Groups

30.3.09

**L2**

**RULE 29** *CONTINUED*

(Accounts and Reports) Regulations 2008. The Panel will not regard such estimates as "given in connection with an offer" unless asset values are a particularly significant factor in assessing the offer and the estimates are, accordingly, given considerably more prominence in the offer documents or circulars than merely being referred to in a note to a statement of assets in an appendix. In these circumstances, such estimates must be supported, subject to Rule 29.2(e), by an independent valuer in accordance with this Rule.

(d)   Another party's assets

A party to a takeover situation will not normally be permitted to publish a valuation, appraisal or calculation of worth of the assets owned by another party unless it is supported by the unqualified opinion of a named independent valuer and that valuer has had access to sufficient information to carry out a property valuation, appraisal or calculation of worth either in accordance with The Standards or, in respect of assets other than land, buildings, plant and equipment, to appropriate standards approved by the Panel. Comments by one party about another party's valuation, appraisal or calculation of worth of its own assets may be permitted in exceptional circumstances. In all cases, the Panel must be consulted in advance.

## 29.2 BASIS OF VALUATION

(a)   The basis of valuation must be clearly stated. Only in exceptional circumstances should it be qualified and in that event the valuer must explain the meaning of the words used. Similarly, special assumptions (see PS 2.2 of The Standards) should not normally be made in a valuation but, if assumptions are permitted by the Panel, they should be fully explained. (See PS 6 of The Standards.)

(b)   In relation to valuations of land, buildings, plant and equipment, attention is drawn to The Standards.

(c)   The basis of valuation will normally be Market Value as defined in The Standards. If the company's accounts are prepared under UK Generally Accepted Accounting Principles, with the consent of the Panel, the bases of valuation set out in UK PS 1.1 of The Standards may be used.

(d)   In the case of land currently being developed or with immediate development potential, in addition to giving the Market Value in the state existing at the date of valuation, the valuation should include:—

    (i)      the value after the development has been completed;

    (ii)     the value after the development has been completed and let;

**L**3

**RULE 29** *CONTINUED*

> (iii)   the estimated total cost, including carrying charges, of completing the development and the anticipated dates of completion and of letting or occupation; and

> (iv)   a statement whether planning consent has been obtained and, if so, the date thereof and the nature of any conditions attaching to the consent which affect the value.

(e)   In some exceptional cases, it will not be possible for a valuer to complete a full valuation of every property. The Panel may be prepared to regard the requirements of this Rule as met if the valuer carries out a valuation of a representative sample of properties and reports those valuations, with the directors taking sole responsibility for an estimate, based on the sample, to cover the remaining properties. This procedure will be available only where the portfolio as a whole is within the knowledge of the valuer, who must also certify the representative nature of the sample. Where this is done, the document sent to shareholders and persons with information rights should distinguish between properties valued professionally and those where the directors have made estimates on the basis of the sample valuation and should also compare such estimates with book values.

*NOTE ON RULE 29.2*

*Provision of adjusted net asset value information*

*If it is proposed to include adjusted net asset value information, the Panel must be consulted.*

## 29.3   POTENTIAL TAX LIABILITY

When a valuation is given in connection with an offer, there should normally be a statement regarding any potential tax liability which would arise if the assets were to be sold at the amount of the valuation, accompanied by an appropriate comment as to the likelihood of any such liability crystallizing.

## 29.4   CURRENT VALUATION

A valuation must state the effective date as at which the assets were valued and the professional qualifications and address of the valuer. If a valuation is not current, the valuer must state that a current valuation would not be materially different. If this statement cannot be made, the valuation must be updated.

**L4**

**RULE 29** *CONTINUED*

## 29.5 OPINION AND CONSENT LETTERS

(a)   Publication of opinion

The opinion of value must be contained in the document containing the asset valuation.

(b)   Consent

The document must also state that the valuer has given and not withdrawn his consent to the publication of his valuation report.

(c)   Valuation certificate to be on display

Where a valuation of assets is given in any document published in connection with an offer, the valuation report must be put on display in accordance with Rule 26, together with an associated report or schedule containing details of the aggregate valuation. Where the Panel is satisfied that such disclosure may be commercially disadvantageous to the company concerned, it will allow the report or schedule to appear in a summarised form. In certain cases, the Panel may require any of these documents to be reproduced in full in a document sent to shareholders and persons with information rights.

## 29.6 WAIVER IN CERTAIN CIRCUMSTANCES

In exceptional cases, certain companies, in particular property companies, which are the subject of an unexpected offer may find difficulty in obtaining, within the time available, the opinion of an independent valuer to support an asset valuation, as required by this Rule, before the board's circular has to be published. In such cases, the Panel may be prepared exceptionally to waive strict compliance with this requirement. The Panel will only do this where the interests of shareholders seem on balance to be best served by permitting informal valuations to appear coupled with such substantiation as is available. Advisers to offeree companies who wish to make use of this procedure should consult the Panel at the earliest opportunity.

**M₁**

## SECTION M. TIMING AND REVISION

### RULE 30. PUBLISHING THE OFFER DOCUMENT AND THE OFFEREE BOARD CIRCULAR

### 30.1 THE OFFER DOCUMENT

(a) The offer document should normally be sent to shareholders of the offeree company and persons with information rights within 28 days of the announcement of a firm intention to make an offer. The Panel must be consulted if the offer document is not to be published within this period. On the day of publication, the offeror must put the offer document on display in accordance with Rule 26 and announce in accordance with Rule 2.9 that the offer document has been published and where the document can be inspected.

(b) At the same time, both the offeror and the offeree company must make the offer document readily available to their employee representatives or, where there are no such representatives, to the employees themselves.

### 30.2 THE OFFEREE BOARD CIRCULAR

(a) The board of the offeree company must publish a circular containing its opinion, as required by Rule 25.1(a), as soon as practicable after publication of the offer document and normally within 14 days and must:

> (i)  send it to its shareholders and to persons with information rights; and

> (ii) make it readily and promptly available to its employee representatives or, where there are no such representatives, the employees themselves.

On the day of publication, the board of the offeree company must put the circular on display in accordance with Rule 26 and announce in accordance with Rule 2.9 that the circular has been published and where it can be inspected.

(b) The board of the offeree company must append to the circular containing its opinion a separate opinion from the representatives of its employees on the effects of the offer on employment, provided such opinion is received in good time before publication of that circular.

*NOTE ON RULE 30.2*

*Where there is no separate offeree board circular*

*Where the offeree board's circular is combined with the offer document the references to the offeree board's circular being sent to shareholders of the offeree company and persons with information rights and being made readily and promptly available after publication of the offer document will be inapplicable. Other than this, the requirements of Rule 30.2 will apply as usual to the single document.*

30.3.09

**M₂**

**RULE 30** *CONTINUED*

## 30.3 MAKING DOCUMENTS, ANNOUNCEMENTS AND INFORMATION AVAILABLE TO SHAREHOLDERS, PERSONS WITH INFORMATION RIGHTS, EMPLOYEE REPRESENTATIVES AND EMPLOYEES

**If a document, an announcement or any information is required to be sent, published or made available to:**

**(a)  shareholders in the offeree company;**

**(b)  persons with information rights; or**

**(c)  employee representatives or employees of the offeror or the offeree company,**

**pursuant to Rules 2.6, 19.9, 19.11, 20.1, 23, 24.14, 30.1, 32.1 and 32.6(a), it must be sent, published or made available (as the case may be) to all such persons, including those who are located outside the EEA, unless there is sufficient objective justification for not doing so.**

*NOTE ON RULE 30.3*

*Shareholders, persons with information rights, employee representatives and employees outside the EEA*

*Where local laws or regulations of a particular non-EEA jurisdiction may result in a significant risk of civil, regulatory or, particularly, criminal exposure for the offeror or the offeree company if the information or documentation is sent, published or made available to shareholders in that jurisdiction without any amendment, and unless they can avoid such exposure by making minor amendments to the information being provided or documents being sent, published or made available either:*

*(a)  the offeror or the offeree company need not provide such information or send, publish or make such information or documents available to registered shareholders of the offeree company or persons with information rights who are located in that jurisdiction if less than 3% of the shares of the offeree company are held by registered shareholders located there at the date on which the information is to be provided or the information or documents are to be sent, published or made available (and there is no need to consult the Panel in these circumstances); or*

*(b)  in all other cases, the Panel may grant a dispensation where it would be proportionate in the circumstances to do so having regard, notably, to the cost involved, any resulting delay to the transaction timetable, the number of registered shareholders in the relevant jurisdiction, the number of shares involved and any other factors invoked by the offeror or the offeree company.*

*Similar dispensations will apply in respect of information or documents which are sent, published, provided or required to be made available to employee representatives or employees of the offeror or the offeree company.*

**M₃**

**RULE 30** *CONTINUED*

*NOTE ON RULE 30.3 continued*

*The Panel will not normally grant any dispensation in relation to shareholders, persons with information rights, employee representatives or employees of the offeree company who are located within the EEA.*

30.3.09

**M**4

## RULE 31. TIMING OF THE OFFER*

### 31.1 FIRST CLOSING DATE

An offer must initially be open for at least 21 days following the date on which the offer document is published.

### 31.2 FURTHER CLOSING DATES TO BE SPECIFIED

In any announcement of an extension of an offer, either the next closing date must be stated or, if the offer is unconditional as to acceptances, a statement may be made that the offer will remain open until further notice. In the latter case, or if the offer will remain open for acceptances beyond the 70th day following the publication of the offer document, at least 14 days' notice must be given, before the offer is closed, to those shareholders who have not accepted by sending a notification to offeree company shareholders and persons with information rights.

### 31.3 NO OBLIGATION TO EXTEND

There is no obligation to extend an offer the conditions of which are not met by the first or any subsequent closing date.

### 31.4 OFFER TO REMAIN OPEN FOR 14 DAYS AFTER UNCONDITIONAL AS TO ACCEPTANCES

After an offer has become or is declared unconditional as to acceptances, the offer must remain open for acceptance for not less than 14 days after the date on which it would otherwise have expired (see Rules 33.1 and 33.2). When, however, an offer is unconditional as to acceptances from the outset, a 14 day extension is not required but the position should be set out clearly and prominently in the offer document.

### 31.5 NO EXTENSION STATEMENTS

If statements in relation to the duration of an offer such as "the offer will not be extended beyond a specified date unless it is unconditional as to acceptances" ("no extension statements") are included in documents or announcements published in connection with an offer, or are made by or on behalf of an offeror, its directors, officials or advisers, and not withdrawn immediately if incorrect, only in wholly exceptional circumstances will the offeror be allowed subsequently to extend its offer beyond the stated date except where the right to do so has been specifically reserved. The provisions of Rule 31.4 will apply in any event.

*This Rule is disapplied in a scheme. See Appendix 7.*

30.3.09

**M5**

**RULE 31** *CONTINUED*

*NOTES ON RULE 31.5*

*(See also Rule 31.6)*

*1.   Firm statements*

*In general, an offeror will be bound by any firm statement as to the duration of its offer. Any statement of intention will be regarded for this purpose as a firm statement; the expression "present intention" should not be used as it may be misleading.*

*2.   Reservation of right to set statements aside*

*A no extension statement may be set aside only if the offeror specifically reserved the right at the time the statement was made to set it aside in the circumstances which subsequently arise; this applies whether or not the offer was recommended at the outset. The first document published in connection with an offer in which mention is made of the no extension statement must contain prominent reference to this reservation (precise details of which must also be included in the document). Any subsequent mention by the offeror of the no extension statement must be accompanied by a reference to the reservation or, at the least, to the relevant sections in the document containing the details. If the right to set aside the no extension statement has not been specifically reserved as set out above, only in wholly exceptional circumstances will the offeror be allowed to extend its offer (except as required by Rule 31.4), even if a recommendation from the board of the offeree company is forthcoming.*

*3.   Competitive situations*

*Subject to Note 2 above, if a competitive situation arises after a no extension statement has been made, the offeror can choose not to be bound by it and to be free to extend its offer provided that:—*

*(a)  notice to this effect is published as soon as possible (and in any event within 4 business days after the day of the firm announcement of the competing offer) and a notification is sent to offeree company shareholders and persons with information rights at the earliest opportunity; and*

*(b)  any offeree shareholders who accepted the offer after the date of the no extension statement are given a right of withdrawal for a period of 8 days following the date on which the notice is published.*

*(For the purpose of this Note a competitive situation will normally arise following a public announcement of the existence of a new offeror or potential offeror whether named or not. Other circumstances, however, may also constitute a competitive situation.)*

**M**6

**RULE 31** *CONTINUED*

*NOTES ON RULE 31.5 continued*

*4.   Recommendations*

*Subject to Note 2 above, the offeror can choose not to be bound by a no extension statement which would otherwise prevent the offeror from making an increased or improved offer that would be recommended for acceptance by the board of the offeree company.*

*5.   Rule 31.9 announcements*

*Subject to Note 2 above, if the offeree company makes an announcement of the kind referred to in Rule 31.9 after the 39th day and after a no extension statement has been made, the offeror can choose not to be bound by that statement and to be free to extend its offer if permitted by the Panel under Rule 31.9, provided that notice to this effect is published as soon as possible (and in any event within 4 business days after the date of the offeree company announcement) and a notification is sent to offeree company shareholders and persons with information rights at the earliest opportunity.*

## 31.6 FINAL DAY RULE (FULFILMENT OF ACCEPTANCE CONDITION, TIMING AND ANNOUNCEMENT)

**(a)  Except with the consent of the Panel, an offer (whether revised or not) may not become or be declared unconditional as to acceptances after midnight on the 60th day after the day the initial offer document was published. The Panel's consent will normally only be granted:—**

**(i)   in a competitive situation (see Note 4 below); or**

**(ii)   if the board of the offeree company consents to an extension; or**

**(iii)   as provided for in Rule 31.9; or**

**(iv)   if the offeror's receiving agent requests an extension for the purpose of complying with Note 7 on Rule 10; or**

**(v)   when withdrawal rights are introduced under Rule 13.5.**

**(b)  For the purpose of the acceptance condition, the offeror may only take into account acceptances or purchases of shares in respect of which all relevant electronic instructions or documents (as required by Notes 4 and 5 on Rule 10) are received by its receiving agent before the last time for acceptance set out in the offeror's relevant document or announcement. This time must be no later than 1.00 pm on the 60th day (or any other date beyond which the offeror has stated that its offer will not be extended). In the event of an extension with the consent of the Panel in circumstances other than those set out in paragraphs (a) (i) to (iii) above, acceptances or purchases in respect of which relevant**

**M7**

**RULE 31 *CONTINUED***

electronic instructions or documents are received after 1.00 pm on the relevant date may only be taken into account with the agreement of the Panel, which will only be given in exceptional circumstances.

**(c)**  Except with the consent of the Panel, on the 60th day (or any other date beyond which the offeror has stated that its offer will not be extended) an announcement should be made by 5.00 pm as to whether the offer is unconditional as to acceptances or has lapsed. Such announcement should include, if possible, the details required by Rule 17.1 but in any event must include a statement as to the current position in the count. (See Note 2.)

*NOTES ON RULE 31.6*

*1.   Extension of offer under Rule 31.6(a)*

*(a)  It should be noted that the effect of Rule 31.6(a) is that, unless the offer is unconditional as to acceptances by midnight on the final closing date (or the Panel gives permission for the offer to be extended), the offer will lapse. When, however, there is a Code matter outstanding on the final closing date, it may be inappropriate for the offer to become or be declared unconditional as to acceptances or to lapse at that time. In such a case, the Panel may, in addition to the circumstances set out in Rule 31.6(a), give permission for the offer to be extended, but with no extension of the time by which all relevant electronic instructions or documents in respect of acceptances, withdrawals and purchases must be received for the purpose of the acceptance condition, as referred to in Rule 31.6(b) and Rule 34.*

*(b)  Any extension to which the Panel consents must be announced by the offeror in accordance with Rule 2.9. The Panel should be consulted as to whether a notification in respect of the extension should also be sent to offeree company shareholders and persons with information rights.*

*2.   Rule 31.6(c) announcement*

*Under Rule 31.6(c), an announcement as to whether the offer is unconditional as to acceptances or has lapsed should normally be made by 5.00 pm on the final closing date. This requirement should not be reflected in the terms of the offer pursuant to Rule 24.6, but, if there is any question of a delay in the announcement required by Rule 31.6, the Panel should be consulted as soon as practicable. Only in exceptional circumstances will the Panel agree to an offeror's request that this announcement may be made after 5.00 pm.*

*3.   The Competition Commission and the European Commission*

*If there is a significant delay in the decision on whether or not there is to be a reference or initiation of proceedings, the Panel will normally extend "Day 39" (see Rule 31.9) to the second day following the announcement of such*

30.3.09

**M8**

**RULE 31** *CONTINUED*

*NOTES ON RULE 31.6 continued*

*decision with consequent changes to "Day 46" (see Rule 32.1(b)) and "Day 60".*

*4. Competitive situations*

*If a competing offer has been announced, both offerors will normally be bound by the timetable established by the publication of the competing offer document. In addition, the Panel will extend "Day 60" in accordance with any procedure established by the Panel in accordance with Rule 32.5.*

*The Panel will not normally grant its consent under Rule 31.6(a)(ii) in a competitive situation unless its consent is sought before the 46th day following the publication of the competing offer document.*

## 31.7 TIME FOR FULFILMENT OF ALL OTHER CONDITIONS

**Except with the consent of the Panel, all conditions must be fulfilled or the offer must lapse within 21 days of the first closing date or of the date the offer becomes or is declared unconditional as to acceptances, whichever is the later. The Panel's consent will normally only be granted if the outstanding condition involves a material official authorisation or regulatory clearance relating to the offer and it had not been possible to obtain an extension under Rule 31.6.**

*NOTES ON RULE 31.7*

*1. The effect of lapsing*

*The Note on Rule 12.1 also applies to this Rule.*

*2. Extensions*

*Any extension to which the Panel consents must be announced by the offeror in accordance with Rule 2.9. The Panel should be consulted as to whether a notification in respect of the extension should also be sent to offeree company shareholders and persons with information rights.*

## 31.8 SETTLEMENT OF CONSIDERATION

**Except with the consent of the Panel, the consideration must be sent to accepting shareholders within 14 days of the later of: the first closing date of the offer, the date the offer becomes or is declared wholly unconditional or the date of receipt of an acceptance complete in all respects.**

**M9**

**RULE 31** *CONTINUED*

*NOTE ON RULE 31.8*

*Extensions*

*Any extension to which the Panel consents must be announced by the offeror in accordance with Rule 2.9. The Panel should be consulted as to whether a notification in respect of the extension should also be sent to offeree company shareholders.*

## 31.9 OFFEREE COMPANY ANNOUNCEMENTS AFTER DAY 39

The board of the offeree company should not, except with the consent of the Panel (which should be consulted in good time), announce any material new information (including trading results, profit or dividend forecasts, asset valuations and proposals for dividend payments or for any material acquisition or disposal) after the 39th day following the publication of the initial offer document. Where a matter which might give rise to such an announcement being made after the 39th day is known to the offeree company, every effort should be made to bring forward the date of the announcement, but, where this is not practicable or where the matter arises after that date, the Panel will normally give its consent to a later announcement. If an announcement of the kind referred to in this Rule is made after the 39th day, the Panel will normally be prepared to grant an extension to "Day 46" (see Rule 32.1(b)) and/or "Day 60" (see Rule 31.6) as appropriate.

(See also Note 3 on Rule 31.6.)

## 31.10 RETURN OF DOCUMENTS OF TITLE

If an offer lapses, all documents of title and other documents lodged with forms of acceptance must be returned as soon as practicable (and in any event within 14 days of the lapsing of the offer) and the receiving agent should immediately give instructions for the release of securities held in escrow.

**M10**

## RULE 32. REVISION

### 32.1 OFFER OPEN FOR 14 DAYS AFTER PUBLICATION OF REVISED OFFER DOCUMENT

(a) If an offer is revised, a revised offer document, drawn up in accordance with Rules 24 and 27, must be sent to shareholders of the offeree company and persons with information rights. On the day of publication, the offeror must put the revised offer document on display in accordance with Rule 26 and announce in accordance with Rule 2.9 that the document has been published and where the document can be inspected.

(b)  The offer must be kept open for at least 14 days following the date on which the revised offer document is published. Therefore, no revised offer document may be published in the 14 days ending on the last day the offer is able to become unconditional as to acceptances.*

*NOTES ON RULE 32.1*

*1.   Announcements which may increase the value of an offer*

*Where an offer involves an exchange of equity or potential equity, the announcement by an offeror of any material new information (including trading results, profit or dividend forecasts, asset valuations, merger benefits statements and proposals for dividend payments or for any material acquisition or disposal) may have the effect of increasing the value of the offer. An offeror will not, therefore, normally be permitted to make such announcements after it is precluded from revising its offer. If an announcement of a kind referred to in this Note might fall to be made during the offer period, the Panel must be consulted at the earliest opportunity and an offeror will not be permitted to make a no increase statement as defined in Rule 32.2 prior to the publication of the announcement.*

*2.   When revision is required*

*An offeror will normally be required to revise its offer if it, or any person acting in concert with it, acquires an interest in shares at above the offer price (see Rule 6) or it becomes obliged to make an offer in accordance with Rule 11 or to make a cash offer, or to increase an existing cash offer, under Rule 9.*

*3.   When revision is not permissible**

*Since an offer must remain open for acceptance for 14 days following the date on which the revised offer document is published, an offeror will generally not be able to revise its offer, and must not place itself in a position where it would be required to revise its offer, in the 14 days ending on the last day its offer is able to become unconditional as to acceptances. Nor must an*

*Rule 32.1(b) and the first sentence of Note 3 on Rule 32.1 are disapplied in a scheme. See Section 7 of Appendix 7.*

**RULE 32 *CONTINUED***

*NOTES ON RULE 32.1 continued*

*offeror place itself in a position where it would be required to revise its offer if it has made a no increase statement as defined in Rule 32.2.*

*4.   Triggering Rule 9\**

*When an offeror, which is making a voluntary offer either in cash or with a cash alternative, acquires an interest in shares which causes it to have to extend a mandatory offer under Rule 9 at no higher price than the existing cash offer, the change in the nature of the offer will not be viewed as a revision (and will thus not be precluded by an earlier no increase statement), even if the offeror is obliged to waive any outstanding condition, but such an acquisition can only be made if the offer can remain open for acceptance for a further 14 days following the date on which the amended offer document is published.*

## 32.2  NO INCREASE STATEMENTS

**If statements in relation to the value or type of consideration such as "the offer will not be further increased" or "our offer remains at xp per share and it will not be raised" ("no increase statements") are included in documents or announcements published in connection with an offer, or are made by or on behalf of an offeror, its directors, officials or advisers, and not withdrawn immediately if incorrect, only in wholly exceptional circumstances will the offeror be allowed subsequently to amend the terms of its offer in any way even if the amendment would not result in an increase of the value of the offer (eg the introduction of a lower paper alternative) except where the right to do so has been specifically reserved.**

*NOTES ON RULE 32.2*

*1.   Firm statements*

*In general, an offeror will be bound by any firm statement as to the finality of its offer. In this respect, the Panel will treat any indication of finality as absolute, unless the offeror clearly states the circumstances in which the statement will not apply, and will not distinguish between the precise words chosen, ie the offer is "final" or will not be "increased", "amended", "revised", "improved", "changed", and similar expressions will all be treated in the same way. Any statement of intention will be regarded for this purpose as a firm statement; the expression "present intention" should not be used as it may be misleading.*

*\*This Note is disapplied in a scheme. See Section 2 of Appendix 7.*

**M**12

**RULE 32** *CONTINUED*

*NOTES ON RULE 32.2 continued*

2.   *Reservation of right to set statements aside*

*A no increase statement may be set aside only if the offeror has specifically reserved the right at the time the statement was made to set it aside in the circumstances which subsequently arise; this applies whether or not the offer was recommended at the outset. The first document published in connection with an offer in which mention is made of the no increase statement must contain prominent reference to this reservation (precise details of which must also be included in the document). Any subsequent mention by the offeror of the no increase statement must be accompanied by a reference to the reservation or, at the least, to the relevant sections in the document containing the details. If the right to set aside the no increase statement has not been specifically reserved as set out above, only in wholly exceptional circumstances will the offeror be allowed to increase its offer after a no increase statement, even if a recommendation from the board of the offeree company is forthcoming or if the offer is unconditional in all respects.*

3.   *Competitive situations*

*Subject to Note 2 above, if a competitive situation arises after a no increase statement has been made, the offeror can choose not to be bound by it and to be free to revise its offer provided that:—*

*(a)  notice to this effect is published as soon as possible (and in any event within 4 business days after the day of the firm announcement of the competing offer) and a notification is sent to offeree company shareholders and persons with information rights at the earliest opportunity; and*

*(b)  any shareholders who accepted the offer after the date of the no increase statement are given a right of withdrawal for a period of 8 days following the date on which the notice is published.\**

*(For the purpose of this Note a competitive situation will normally arise following a public announcement of the existence of a new offeror or potential offeror whether named or not. Other circumstances, however, may also constitute a competitive situation.)*

4.   *Recommendations*

*Subject to Note 2 above, the offeror can choose not to be bound by a no increase statement which would otherwise prevent the offeror from making an increased or improved offer that would be recommended by the board of the offeree company.*

*\*Paragraph (b) of Note 3 is disapplied in a scheme.*
30.3.09

**RULE 32** *CONTINUED*

*NOTES ON RULE 32.2 continued*

*5.   Rule 31.9 announcements\**

*Subject to Note 2 above, if the offeree company makes an announcement of the kind referred to in Rule 31.9 after the 39th day and after a no increase statement has been made, the offeror can choose not to be bound by that statement and to be free to revise its offer if permitted by the Panel under Rule 31.9, provided that notice to this effect is published as soon as possible (and in any event within 4 business days after the date of the offeree company announcement) and a notification is sent to offeree company shareholders and persons with information rights at the earliest opportunity.*

*6.   Schemes of arrangement*

*A switch to or from a scheme of arrangement will not normally, of itself, be regarded as an amendment which would be precluded by an earlier no increase statement in relation to the value or type of consideration offered. Therefore, it is not necessary for an offeror making such a statement specifically to reserve the right to switch its offer structure.*

## 32.3 ENTITLEMENT TO REVISED CONSIDERATION

**If an offer is revised, all shareholders who accepted the original offer must be entitled to the revised consideration.**

## 32.4 NEW CONDITIONS FOR INCREASED OR IMPROVED OFFERS OR FOLLOWING A SWITCH

**Subject to the prior consent of the Panel, and only to the extent necessary to implement an increased or improved offer, or a switch to or from a scheme of arrangement, the offeror may introduce new conditions (eg obtaining shareholders' approval or the admission to listing or admission to trading of new securities).**

## 32.5 COMPETITIVE SITUATIONS

**If a competitive situation continues to exist in the later stages of the offer period, the Panel will normally require revised offers to be announced in accordance with an auction procedure, the terms of which will be determined by the Panel. That procedure will normally require final revisions to competing offers to be announced by the 46th day following the publication of the competing offer document but enable an offeror to revise its offer within a set period in response to any revision announced by a competing offeror on or after the 46th day. The procedure will not normally require any revised offer document to be sent to offeree company shareholders and persons with information**

*\*This Note is disapplied in a scheme.*

30.3.09

**M**14

**RULE 32** *CONTINUED*

**rights before the expiry of a set period after the last revision to either offer is announced. The Panel will consider applying any alternative procedure which is agreed between competing offerors and the board of the offeree company.**

*NOTES ON RULE 32.5*

*1.   Dispensation from obligation to make an offer*

*The Panel will normally grant a dispensation from the obligation to make a revised offer, which is lower than the final revised offer announced by a competing offeror, when the board of the offeree company consents.*

*2.   Guillotine*

*The Panel may impose a final time limit for announcing revisions to competing offers for the purpose of any procedure established in accordance with this Rule taking into account representations by the board of the offeree company, the revisions previously announced and the duration of the procedure.*

*3.   Schemes of arrangement*

*Where one or more of the competing offers is being implemented by way of a scheme of arrangement, the parties must consult the Panel as to the applicable timetable. The Panel will then determine the date or dates on which final revisions to the competing offers must be announced and on which any auction procedure will commence, taking into account all the relevant circumstances.*

## 32.6  THE OFFEREE BOARD'S OPINION

**(a) The board of the offeree company must send to the company's shareholders and persons with information rights a circular containing its opinion on the revised offer under Rule 25.1(a), drawn up in accordance with Rules 25 and 27. On the day of publication, the offeree company must put the circular on display in accordance with Rule 26 and announce in accordance with Rule 2.9 that the document has been published and where the document can be inspected.**

**(b) The board of the offeree company must append to the circular containing its opinion on a revised offer a separate opinion from the representatives of its employees on the effects of the revised offer on employment, provided such opinion is received in good time before publication of that circular.**

**M**15

RULE 32 *CONTINUED*

## 32.7 INFORMING EMPLOYEES

(a)  When any revised offer document is published, both the offeror and the offeree company must make that document readily and promptly available to the representatives of their employees or, where there are no such representatives, to the employees themselves.

(b) When the board of the offeree company publishes a circular containing its opinion under Rule 25.1(a) on a revised offer, it must make that circular readily and promptly available to its employee representatives or, where there are no such representatives, to the employees themselves.

30.3.09

**M**16

## RULE 33. ALTERNATIVE OFFERS*

### 33.1 TIMING AND REVISION

**In general, the provisions of Rules 31 and 32 apply equally to alternative offers, including cash alternatives.**

*NOTES ON RULE 33.1*

1. *Elections*

*For the purpose of this Rule, an arrangement under which shareholders elect, subject to the election of other shareholders, to vary the proportion in which they are to receive different forms of consideration is not regarded as an alternative offer and may be closed without notice on any closing date; this must be clearly stated in the offer document.*

2. *Shutting off*

*Normally, except as permitted by Rule 33.2, if an offer has become or is declared unconditional as to acceptances, all alternative offers must remain open in accordance with Rule 31.4.*

*In accordance with Rule 31.3, if on a closing date an offer is not unconditional as to acceptances, an alternative offer (except a cash alternative provided to satisfy the requirements of Rule 9) may be closed without prior notice. However, if, on the first closing date on which an offer is capable of being declared unconditional as to acceptances, the offer is not so declared and is extended, all alternative offers must, except as permitted by Rule 33.2, remain open for 14 days thereafter but may then be closed without prior notice.*

### 33.2 SHUTTING OFF CASH UNDERWRITTEN ALTERNATIVES

**Where the value of a cash underwritten alternative provided by third parties is, at the time of announcement, more than half the maximum value of the offer, an offeror will not be obliged to keep that alternative open in accordance with Rules 31.4 or 33.1 if it has sent a notification to offeree company shareholders and persons with information rights that it reserves the right to close it on a stated date, being not less than 14 days after the date on which the notification is published, or to extend it on that stated date. Notice under this Rule may not be given between the time when a competing offer has been announced and the end of the resulting competitive situation. (See also Rule 24.13.)**

*\*This Rule is disapplied in a scheme. See Appendix 7.*
30.3.09

**RULE 33** *CONTINUED*

*NOTES ON RULE 33.2*

*1.   Further notifications*

*Where a notification has been published pursuant to this Rule and the alternative is not closed on the stated date but extended, the offeror must send a further notification to shareholders and persons with information rights if it wishes to take advantage of this Rule.*

*2.   Rule 9 offers*

*This Rule will not apply to a cash alternative provided to satisfy the requirements of Rule 9.*

## 33.3 REINTRODUCTION OF ALTERNATIVE OFFERS

**Where a firm statement has been made that an alternative offer will not be extended or reintroduced and that alternative has ceased to be open for acceptance, neither that alternative, nor any substantially similar alternative, may be reintroduced. Where, however, such a statement has not been made and an alternative offer has closed for acceptance, an offeror will not be precluded from reintroducing that alternative at a later date. Reintroduction would constitute a revision of the offer and would, therefore, be subject to the requirements of, and only be permitted as provided in, Rule 32.**

30.3.09

**M18**

## RULE 34. RIGHT OF WITHDRAWAL*

(a)  An acceptor must be entitled to withdraw his acceptance from the date which is 21 days after the first closing date of the initial offer, if the offer has not by such date become or been declared unconditional as to acceptances. This entitlement to withdraw must be exercisable until the earlier of:

(i)  the time that the offer becomes or is declared unconditional as to acceptances; and

(ii)  the final time for lodgement of acceptances which can be taken into account in accordance with Rule 31.6.

(b)  An acceptor must be entitled to withdraw his acceptance if so determined by the Panel in accordance with Rule 13.5.

(c)  If a shareholder withdraws his acceptance, all documents of title and other documents lodged with the form of acceptance must be returned as soon as practicable following the receipt of the withdrawal (and in any event within 14 days) and the receiving agent should immediately give instructions for the release of securities held in escrow.

*This Rule is disapplied in a scheme.

30.3.09

## SECTION N. RESTRICTIONS FOLLOWING OFFERS

### RULE 35

### 35.1 DELAY OF 12 MONTHS

Except with the consent of the Panel, where an offer has been announced or made but has not become or been declared wholly unconditional and has been withdrawn or has lapsed otherwise than pursuant to Rule 12.1, neither the offeror, nor any person who acted in concert with the offeror in the course of the original offer, nor any person who is subsequently acting in concert with any of them, may within 12 months from the date on which such offer is withdrawn or lapses either:—

(a) announce an offer or possible offer for the offeree company (including a partial offer which could result in the offeror and persons acting in concert with it being interested in shares carrying 30% or more of the voting rights of the offeree company);

(b) acquire any interest in shares of the offeree company if the offeror or any such person would thereby become obliged under Rule 9 to make an offer;

(c) acquire any interest in, or procure an irrevocable commitment in respect of, shares of the offeree company if the shares in which such person, together with any persons acting in concert with him, would be interested and the shares in respect of which he, or they, had acquired irrevocable commitments would in aggregate carry 30% or more of the voting rights of the offeree company;

(d) make any statement which raises or confirms the possibility that an offer might be made for the offeree company; or

(e) take any steps in connection with a possible offer for the offeree company where knowledge of the possible offer might be extended outside those who need to know in the offeror and its immediate advisers.

### 35.2 PARTIAL OFFERS

The restrictions in Rule 35.1 will also apply following a partial offer:—

(a) which could result in the offeror and persons acting in concert with it being interested in shares carrying not less than 30% but not holding shares carrying more than 50% of the voting rights of the offeree company whether or not the offer has become or been declared wholly unconditional. When such an offer has become or been declared wholly unconditional, the period of 12 months runs from that date; and

(b) for more than 50% of the voting rights of the offeree company which has not become or been declared wholly unconditional.

**N₂**

**RULE 35** *CONTINUED*

**The restrictions in Rule 35.1 will not normally apply following a partial offer which could only result in the offeror and persons acting in concert with it being interested in shares carrying less than 30% of the voting rights of the offeree company.**

*NOTE ON RULES 35.1 and 35.2*

*When dispensations may be granted*

*(a)  The Panel will normally grant consent under this Rule when:—*

> *(i)  the new offer is recommended by the board of the offeree company. Such consent will not normally be granted within 3 months of the lapsing of an earlier offer in circumstances where the offeror was prevented from revising or extending its previous offer as a result of a no increase statement or a no extension statement; or*

> *(ii)  the new offer follows the announcement of an offer by a third party for the offeree company; or*

> *(iii)  the new offer follows the announcement by the offeree company of a "whitewash" proposal (see Note 1 of the Notes on Dispensations from Rule 9) or of a reverse takeover (see Note 2 on Rule 3.2) which has not failed or lapsed or been withdrawn.*

*(b)  The Panel may also grant consent in circumstances in which it is likely to prove, or has proved, impossible to obtain material official authorisations or regulatory clearances relating to an offer within the Code timetable. The Panel should be consulted by an offeror or potential offeror as soon as it has reason to believe that this may become the position.*

*(c)  The restrictions in Rules 35.1(d) and (e) will not normally apply to the extent that the offer lapsed as a result of the offeror failing to obtain a material official authorisation or regulatory clearance relating to the offer within the usual Code timetable, but the offeror is continuing to seek clearance or a decision from the relevant official or regulatory authorities with a view subsequently to making a new offer with the consent of the Panel in accordance with Note (b) on Rule 35.1.*

*NB Rule 2.2(e) will continue to apply in these circumstances.*

## 35.3 DELAY OF 6 MONTHS BEFORE ACQUISITIONS ABOVE THE OFFER VALUE

Except with the consent of the Panel, if a person, together with any person acting in concert with him, holds shares carrying more than 50% of the voting rights of a company, neither that person nor any person acting in concert with him may, within 6 months of the closure of any previous offer made by him to the shareholders of that company which became or was declared wholly unconditional, make a second offer to any shareholder in that company, or acquire any interest in shares in that company, on more favourable terms than those made available under the previous offer (see also Rule 6.2(a)). For this purpose the value of a securities exchange offer shall be calculated as at the date the offer closed. In addition, special deals with favourable conditions attached may not be entered into during this 6 months period (see also Rule 16).

## 35.4 RESTRICTIONS ON DEALINGS BY A COMPETING OFFEROR WHOSE OFFER HAS LAPSED

Except with the consent of the Panel, where an offer has been one of two or more competing offers and has lapsed, neither that offeror, nor any person acting in concert with that offeror, may acquire any interest in shares in the offeree company on more favourable terms than those made available under its lapsed offer until each of the competing offers has either been declared unconditional in all respects or has itself lapsed. For these purposes, the value of the lapsed offer shall be calculated as at the day the offer lapsed.

*NOTE ON RULES 35.3 and 35.4*

*Determination of price*

*The price paid for any acquisition of an interest in shares will be determined in the manner set out in Note 4 on Rule 6 (other than the final paragraph of that Note).*

*However, where:*

*(a) a call option was entered into during any period that was relevant for the purposes of Rule 6 (or Rule 9.5, where relevant) in relation to the previous or lapsed offer; and*

*(b) that call option is exercised:*

*(i)   during the six month period referred to in Rule 35.3 (in the case of Rule 35.3); or*

*(ii)  before any competing offer has either been declared unconditional in all respects or has itself lapsed (in the case of Rule 35.4),*

**N4**

**RULE 35 *CONTINUED***

*NOTE ON RULES 35.3 and 35.4 continued*

*then the person will be treated as having acquired an interest in shares at the time of such exercise and, for the purposes of Rule 35.3 or Rule 35.4 (as the case may be), the price paid will normally be treated as the amount paid on exercise of the option together with any amount paid by the option-holder on entering into the option.*

*Where a person acquired an interest in shares before the period referred to in paragraph (a) above as a result of any option, derivative or agreement to purchase and, during the relevant period referred to in paragraph (b) above, the person acquires any of the relevant shares, no obligation under this Rule will normally arise as a result of the acquisition of those shares. However, if the terms of the instrument have been varied in any way, or if the shares are acquired other than on the terms of the original instrument, the Panel should be consulted.*

# SECTION O. PARTIAL OFFERS

## RULE 36

### 36.1 PANEL'S CONSENT REQUIRED

The Panel's consent is required for any partial offer. In the case of an offer which could not result in the offeror and persons acting in concert with it being interested in shares carrying 30% or more of the voting rights of a company, consent will normally be granted.

### 36.2 ACQUISITIONS BEFORE THE OFFER

In the case of an offer which could result in the offeror and persons acting in concert with it being interested in shares carrying 30% or more but holding less than 100% of the voting rights of a company, such consent will not normally be granted if the offeror or persons acting in concert with it have acquired, selectively or in significant numbers, interests in shares in the offeree company during the 12 months preceding the application for consent or if interests in shares have been acquired at any time after the partial offer was reasonably in contemplation.

### 36.3 ACQUISITIONS DURING AND AFTER THE OFFER

The offeror and persons acting in concert with it may not acquire any interest in shares in the offeree company during the offer period. In addition, in the case of a successful partial offer, neither the offeror, nor any person who acted in concert with the offeror in the course of the partial offer, nor any person who is subsequently acting in concert with any of them, may, except with the consent of the Panel, acquire any interest in such shares during a period of 12 months after the end of the offer period.

*NOTES ON RULE 36.3*

*1.   Discretionary fund managers and principal traders*

*Dealings by non-exempt discretionary fund managers and principal traders which are connected with an offeror will be treated in accordance with Rule 7.2.*

*2.   Partial offer resulting in an interest of less than 30%*

*The consent of the Panel will normally be granted for acquisitions of interests in shares within 12 months of the end of the offer period when a partial offer has resulted in the offeror and persons acting in concert with it being interested in shares carrying less than 30% of the voting rights of a company.*

**O₂**

RULE 36 *CONTINUED*

### 36.4 OFFER FOR BETWEEN 30% AND 50%*

When an offer is made which could result in the offeror and persons acting in concert with it being interested in shares carrying not less than 30% but not holding shares carrying more than 50% of the voting rights of a company, the precise number of shares offered for must be stated and the offer may not be declared unconditional as to acceptances unless acceptances are received for not less than that number.

### 36.5  OFFER FOR 30% OR MORE REQUIRES 50% APPROVAL*

Any offer which could result in the offeror and persons acting in concert with it being interested in shares carrying 30% or more of the voting rights of a company must be conditional, not only on the specified number of acceptances being received, but also on approval of the offer, normally signified by means of a separate box on the form of acceptance, being given in respect of over 50% of the voting rights held by shareholders who are independent of the offeror and persons acting in concert with it. This requirement may on occasion be waived if over 50% of the voting rights of the offeree company are held by one shareholder.

### 36.6 WARNING ABOUT CONTROL POSITION

In the case of a partial offer which could result in the offeror, either alone or with persons acting in concert with it, holding shares carrying over 50% of the voting rights of the offeree company, the offer document must contain specific and prominent reference to this and to the fact that, if the offer succeeds, the offeror or, where appropriate, the offeror and persons acting in concert with it, will be free, subject to Rule 36.3 and, where relevant, to Note 4 on Rule 9.1, to acquire further interests in shares without incurring any obligation under Rule 9 to make a general offer.

### 36.7 SCALING DOWN*

Partial offers must be made to all shareholders of the class and arrangements must be made for those shareholders who wish to do so to accept in full for the relevant percentage of their holdings. Shares tendered in excess of this percentage must be accepted by the offeror from each shareholder in the same proportion to the number tendered to the extent necessary to enable it to obtain the total number of shares for which it has offered.

*This Rule is disapplied in a scheme.*
30.3.09

**O3**

**RULE 36** *CONTINUED*

### 36.8 COMPARABLE OFFER

**When an offer is made for a company with more than one class of equity share capital which could result in the offeror and persons acting in concert with it being interested in shares carrying 30% or more of the voting rights, a comparable offer must be made for each class.**

*NOTES ON RULE 36*

*1.   Allotted but unissued shares*

*When shares of a company carrying voting rights have been allotted (even if provisionally) but have not yet been issued, for example, under a rights issue when the shares are represented by renounceable letters of allotment, the Panel should be consulted. It is likely that such shares, and the acquisition of an interest in such shares, will be taken into account for the purpose of this Rule.*

*2.   Dual consideration offers for 100%*

*If a certain consideration is offered for part of each shareholder's holding and a lower consideration for the balance, such an offer may be treated as a form of partial offer in spite of the fact that the offer is being made for all voting equity share capital not already held. Rule 36.5 may apply and the Panel's consent must be sought if any such offer is contemplated.*

*3.   Use of tender offers*

*In certain circumstances, with the consent of the Panel, a tender offer may be used instead of a partial offer in which case the Rules set out in Appendix 5 will apply.*

30.3.09

## SECTION P. REDEMPTION OR PURCHASE BY A COMPANY OF ITS OWN SECURITIES

### RULE 37

### 37.1 POSSIBLE REQUIREMENT TO MAKE A MANDATORY OFFER

When a company redeems or purchases its own voting shares, any resulting increase in the percentage of shares carrying voting rights in which a person or group of persons acting in concert is interested will be treated as an acquisition for the purpose of Rule 9. Subject to prior consultation, the Panel will normally waive any resulting obligation to make a general offer if there is a vote of independent shareholders and a procedure on the lines of that set out in Appendix 1 is followed.

*NOTES ON RULE 37.1*

1.  *Persons who will not be required to make a mandatory offer*

*A person who comes to exceed the limits in Rule 9.1 in consequence of a company's redemption or purchase of its own shares will not normally incur an obligation to make a mandatory offer unless that person is a director, or the relationship of the person with any one or more of the directors is such that the person is, or is presumed to be, acting in concert with any of the directors. A person who has appointed a representative to the board of the company, and investment managers of investment trusts, will be treated for these purposes as a director. However, there is no presumption that all the directors (or any two or more directors) are acting in concert solely by reason of a proposed redemption or purchase by the company of its own shares, or the decision to seek shareholders' authority for any such redemption or purchase.*

2.  *Acquisitions of interests in shares preceding a redemption or purchase*

*The exception in Note 1 will not apply, and an obligation to make a mandatory offer may therefore be imposed, if a person (or any relevant member of a group of persons acting in concert) has acquired an interest in shares at a time when he had reason to believe that such a redemption or purchase of its own shares by the company would take place. This Note will not normally be relevant unless the relevant person has knowledge that a redemption or purchase for which requisite shareholder authority exists is being, or is likely to be, implemented (whether in whole or in part).*

3.  *Situations where a mandatory obligation may arise*

*Where the directors are aware that a company's redemption or purchase of its own shares would otherwise give rise to an obligation for a person (or group of persons acting in concert) to make a mandatory offer, the board of*

**P2**

**RULE 37** *CONTINUED*

*NOTES ON RULE 37.1 continued*

*directors should ensure that an appropriate resolution to approve a waiver of this obligation is put to independent shareholders prior to implementation of the relevant redemption or purchase and as a pre-condition to its implementation. Additionally, each individual director should draw the attention of the board at the time any redemption or purchase of the company's own shares is proposed, and whenever shareholders' authority for any such redemption or purchase is to be sought, to interests in shares of parties acting in concert, or presumed to be acting in concert, with that director.*

*4.   Prior consultation*

*The Panel must be consulted in advance in any case where Rule 9 might be relevant. This will include any case where a person or group of persons acting in concert is interested in shares carrying 30% or more but does not hold shares carrying more than 50% of the voting rights of a company, or may become interested in 30% or more on full implementation of the proposed redemption or purchase of own shares. In addition, the Panel should always be consulted if the aggregate interests in shares of the directors and any other persons acting in concert, or presumed to be acting in concert, with any of the directors amount to 30% or more, or may be increased to 30% or more on full implementation of the proposed redemption or purchase of own shares.*

*5.   Disqualifying transactions*

*Notwithstanding that the redemption or purchase of voting shares is made conditional upon the prior approval of a majority of the shareholders independent of the transaction at a general meeting of the company:*

*(a) the Panel will not normally waive an obligation under Rule 9 if the relevant person, or any member of the relevant group of persons acting in concert, has acquired an interest in shares in the knowledge that the company intended to seek permission from its shareholders to redeem or purchase its own shares; and*

*(b) a waiver will be invalidated if any acquisitions are made by the relevant person, or by any member of the relevant group of persons acting in concert, in the period between the publication of the circular and the shareholders' meeting.*

*6.   Renewals*

*Any waiver previously obtained under this Rule will expire at the same time as the relevant shareholders' authority under Chapter 4 of Part 18 of the Companies Act 2006 (whether or not voting shares have in fact been*

**RULE 37** *CONTINUED*

*NOTES ON RULE 37.1 continued*

*redeemed or purchased). Accordingly, waivers will normally need to be renewed at the same time as the relevant shareholders' authority is renewed.*

*7.   Responsibility for making an offer*

*If an obligation arises under this Rule for a general offer to be made and a dispensation is not granted, the prime responsibility for making an offer will normally attach to the person who obtains or consolidates control as a result of the redemption or purchase of its own shares by the company. Where control is obtained or consolidated by a group of persons acting in concert, the prime responsibility will normally attach to the principal member or members of the group acting in concert. In exceptional cases, responsibility for making an offer may attach to one or more directors if, in the view of the Panel, there has been a failure by the board as a whole, or by any one or more individual directors, to address satisfactorily the implications of a redemption or purchase by the company of its own shares in relation to interests in shares of directors or parties acting in concert with one or more of the directors.*

*8.   Inadvertent mistake*

*Note 4 on the dispensations from Rule 9 may be relevant in appropriate circumstances.*

## 37.2  LIMITATION ON SUBSEQUENT ACQUISITIONS

**Subsequent to the redemption or purchase by a company of its own voting shares, all persons will be subject, in acquiring further interests in shares in the company, to the provisions of Rule 9.1.**

*NOTE ON RULE 37.2*

*Calculation of percentage thresholds*

*The percentage thresholds referred to in Rule 9.1 will be calculated by reference to the outstanding voting capital subsequent to the redemption or purchase by the company of its own shares.*

## 37.3  REDEMPTION OR PURCHASE OF SECURITIES BY THE OFFEREE COMPANY

**(a)  Shareholders' approval**

**During the course of an offer, or even before the date of the offer if the board of the offeree company has reason to believe that a bona fide offer might be imminent, no redemption or purchase by the offeree company of its own shares may be effected without the approval of the shareholders at a general meeting. The notice convening the meeting must include information about the offer or anticipated offer. Where it is felt that the redemption or purchase is in pursuance of a contract**

30.3.09

**P4**

**RULE 37** *CONTINUED*

entered into earlier or another pre-existing obligation, the Panel must be consulted and its consent to proceed without a shareholders' meeting obtained (Notes 1, 5 and 10 on Rule 21.1 may be relevant).

**(b)  Public disclosure**

For the purpose of Rule 8, dealings in relevant securities include the redemption or purchase of, or taking or exercising an option over, any of its own relevant securities by the offeree company.

**(c)  Disclosure in the offeree board circular**

Any offeree board circular published in connection with an offer must state the amount of relevant securities of the offeree company which the offeree company has redeemed or purchased during the period commencing 12 months prior to the offer period and ending with the latest practicable date prior to the publication of the document, and the details of any such redemptions and purchases, including dates and prices and the extent to which the shares redeemed or purchased were cancelled or held in treasury.

## 37.4  REDEMPTION OR PURCHASE OF SECURITIES BY THE OFFEROR COMPANY

**(a)  Public disclosure**

For the purpose of Rule 8, dealings in relevant securities include the redemption or purchase of, or taking or exercising an option over, any of its own relevant securities by an offeror.

**(b)  Disclosure in the offer document**

The offer document must state (in the case of a securities exchange offer only) the number of relevant securities of the offeror which the offeror has redeemed or purchased between the start of the offer period and the latest practicable date prior to the publication of the offer document and the details of any such redemptions and purchases, including dates and prices and the extent to which the shares redeemed or purchased were cancelled or held in treasury.