# EXHIBIT 4

# THE TAKEOVER PANEL

REPORT AND ACCOUNTS FOR THE YEAR ENDED
31 MARCH 2009

THE TAKEOVER PANEL
2008-2009 REPORT

# CONTENTS

PANEL MEMBERS ..................................... 4

THE PANEL EXECUTIVE ............................... 7

INTRODUCTION TO THE TAKEOVER PANEL ............... 8

CHAIRMAN'S STATEMENT ............................. 10

CODE COMMITTEE CHAIRMAN'S REPORT ................. 12

DIRECTOR GENERAL'S REPORT ........................ 14

THE TAKEOVER APPEAL BOARD ........................ 16

STATISTICS ....................................... 17

ACCOUNTS FOR THE YEAR ENDED 31 MARCH 2009 ........ 18

STATEMENTS ISSUED BY THE PANEL ................... 25

STATEMENTS ISSUED BY THE CODE COMMITTEE .......... 27

# PANEL MEMBERS
### AS AT 8 JULY 2009

## CHAIRMAN AND DEPUTY CHAIRMEN

PETER DJ SCOTT QC   CHAIRMAN
Appointed by
the Panel

ANTONY R BEEVOR
FORMER SENIOR ADVISER,
INVESTMENT BANKING,
SOCIETE GENERALE

DEPUTY CHAIRMAN
Appointed by
the Panel

DAVID J CHALLEN
VICE CHAIRMAN,
EUROPEAN INVESTMENT
BANKING, CITI

DEPUTY CHAIRMAN
Appointed by
the Panel

All members of the Panel are designated to act as a member of either the Hearings Committee or the Code Committee.

## THE HEARINGS COMMITTEE

In addition to the Chairman and the Deputy Chairmen, the membership of the Hearings Committee is as follows:

ANTONY P HICHENS
DIRECTOR,
CANDOVER INVESTMENTS
Appointed by the Panel

ALAN F PORTER
GROUP GENERAL COUNSEL, TESCO
Appointed by the Confederation of British Industry

SIR DAVID LEES
CHAIRMAN, TATE & LYLE
Appointed by the Panel

MARTIN J HAGEN
CONSULTANT, DELOITTE
Appointed by the Institute of Chartered Accountants in England and Wales

LORD MORRIS OF HANDSWORTH
FORMER GENERAL SECRETARY, THE TRANSPORT AND GENERAL WORKERS UNION
Appointed by the Panel

ROBERT W JENKINS
CHAIRMAN, INVESTMENT MANAGEMENT ASSOCIATION
Appointed by the Investment Management Association

SIR IAN ROBINSON
NON EXECUTIVE DIRECTOR, COMPASS GROUP
Appointed by the Panel

ALAN CD YARROW
VICE CHAIRMAN, DRESDNER KLEINWORT
Appointed by the London Investment Banking Association

ARCHIE G KANE
GROUP EXECUTIVE DIRECTOR, INSURANCE AND INVESTMENTS LLOYDS BANKING GROUP
Appointed by the Association of British Insurers

CHARLES G WILKINSON
HEAD OF CORPORATE BROKING, DEUTSCHE BANK
Appointed by the London Investment Banking Association representing its Corporate Finance Committee

CAROL C FERGUSON
NON EXECUTIVE DIRECTOR, MONKS INVESTMENT TRUST
Appointed by the Association of Investment Companies

JIM HAMILTON
INVESTEC BANK
Appointed by the London Investment Banking Association representing its Securities Trading Committee

JOHN P HALL
CHIEF EXECUTIVE OFFICER, BREWIN DOLPHIN HOLDINGS
Appointed by the Association of Private Client Investment Managers and Stockbrokers

STEPHEN K GREEN
CHAIRMAN, HSBC HOLDINGS
Appointed by the British Bankers' Association

ARNO KITTS
DIRECTOR OF INSTITUTIONAL BUSINESS, HENDERSON GLOBAL INVESTORS
Appointed by the National Association of Pension Funds

Sir Brian Stewart, former Chairman of Scottish & Newcastle, and Baroness Hogg, Chairman of 3i Group, have been appointed by the Panel to serve as alternates for Antony P Hichens, Sir David Lees and Sir Ian Robinson. Dr Campbell Christie has been appointed by the Panel to serve as an alternate for Lord Morris of Handsworth. Alternates for those members appointed by the major financial and business institutions are listed on the Panel's website.

## THE CODE COMMITTEE

The membership of the Code Committee is as follows:

| | | | |
|---|---|---|---|
| **LINDSAY P TOMLINSON** VICE CHAIRMAN, EUROPE, BARCLAYS GLOBAL INVESTORS | Chairman, Appointed by the Panel | **DAVID P HAGER** PRINCIPAL, GLOBAL INVESTMENT PRACTICE, HEWITT | Appointed by the Panel |
| **JAMES D AGNEW** MANAGING DIRECTOR, CHAIRMAN OF UK CORPORATE BROKING, DEUTSCHE BANK | Appointed by the Panel | **ALAN D PAUL** PARTNER, ALLEN & OVERY | Appointed by the Panel |
| **PHILIP AJ BROADLEY** GROUP FINANCE DIRECTOR, OLD MUTUAL | Appointed by the Panel | **JOY SEPPALA** CHIEF EXECUTIVE OFFICER, SISU CAPITAL | Appointed by the Panel |
| **ALISTAIR NC DEFRIEZ** FORMER MANAGING DIRECTOR, UBS | Appointed by the Panel | **CHRISTOPHER SMITH** FORMER MANAGING DIRECTOR, CORPORATE FINANCE, JP MORGAN CAZENOVE | Appointed by the Panel |

## THE FINANCE AND AUDIT COMMITTEE

The membership of the Finance and Audit Committee is as follows:

| | | | |
|---|---|---|---|
| **ANTONY R BEEVOR** FORMER SENIOR ADVISER, INVESTMENT BANKING, SOCIETE GENERAL | Chairman, Appointed by the Panel | **HUW M JONES** DIRECTOR, CORPORATE FINANCE, M&G INVESTMENT MANAGEMENT | Appointed by the Panel |
| **DAVID J CHALLEN** VICE CHAIRMAN, EUROPEAN INVESTMENT BANKING, CITI | Appointed by the Panel | **IAN G SALTER** CONSULTANT, DEUTSCHE BANK PRIVATE WEALTH MANAGEMENT | Appointed by the Panel |

THE TAKEOVER PANEL
2008-2009 REPORT

## THE NOMINATION COMMITTEE

The membership of the Nomination Committee is as follows:

PETER D J SCOTT QC — Chairman, Appointed by the Panel

ALAN D PAUL
PARTNER,
ALLEN & OVERY — Appointed by the Panel

ANTONY R BEEVOR
FORMER SENIOR ADVISER,
INVESTMENT BANKING,
SOCIETE GENERAL — Appointed by the Panel

PAUL M W TUCKER
DEPUTY GOVERNOR,
FINANCIAL STABILITY,
BANK OF ENGLAND — Appointed by the Panel

DAVID J CHALLEN
VICE CHAIRMAN,
EUROPEAN INVESTMENT BANKING,
CITI — Appointed by the Panel

ALAN C D YARROW
VICE CHAIRMAN,
DRESDNER KLEINWORT — Appointed by the Panel

SIR DAVID LEES
CHAIRMAN,
TATE & LYLE — Appointed by the Panel

## THE REMUNERATION COMMITTEE

The membership of the Remuneration Committee is as follows:

G MARK POWELL
CHAIRMAN,
RATHBONE INVESTMENT
MANAGEMENT — Chairman, Appointed by the Panel

HUW M JONES
DIRECTOR,
CORPORATE FINANCE,
M&G INVESTMENT MANAGEMENT — Appointed by the Panel

ANTONY R BEEVOR
FORMER SENIOR ADVISER,
INVESTMENT BANKING,
SOCIETE GENERAL — Appointed by the Panel

IAN G SALTER
CONSULTANT,
DEUTSCHE BANK
PRIVATE WEALTH MANAGEMENT — Appointed by the Panel

# THE PANEL EXECUTIVE

### AS AT 8 JULY 2009

*Robert C A Hingley    DIRECTOR GENERAL
LEXICON PARTNERS

Anthony G B Pullinger    DEPUTY DIRECTOR GENERAL

Christopher H Jillings    DEPUTY DIRECTOR GENERAL

Charles M Crawshay    DEPUTY DIRECTOR GENERAL

## CASE OFFICERS

*Nick J Rumsby    SECRETARY
LINKLATERS

Dipika Shah    SENIOR ASSISTANT
SECRETARY

*Britta Bähr    ASSISTANT SECRETARY
HSBC

*Geoff R Iles    ASSISTANT SECRETARY
BANK OF AMERICA

*Scott C Hopkins    ASSISTANT SECRETARY
SKADDEN ARPS SLATE
MEAGHER & FLOM

*Michael S Bird    ASSISTANT SECRETARY
PRICEWATERHOUSECOOPERS

*Jonathan R Slaughter    ASSISTANT SECRETARY
NM ROTHSCHILD & SONS

## POLICY AND REVISION

Barbara A Muston    SECRETARY

Antonia F Stewart    SECRETARY

John A Dovey    SECRETARY

Jeremy D Evans    SECRETARY

## MARKET SURVEILLANCE

Martin C Harrison    MANAGER

Craig G Andrews    DEPUTY MANAGER

Saber Doha

Clive W Davidson

Iain P Summers

David J Weinberg

Samuel G Hart

## ADMINISTRATION AND SUPPORT

Jack W Knight    OFFICE MANAGER

Jane M Taylor    MANAGER, SUPPORT GROUP

## EXEMPT GROUPS

Susan Powell    MANAGER

Nadir M Doctor

* SECONDED

# INTRODUCTION TO
# THE TAKEOVER PANEL

The Panel is an independent body whose main functions are to issue and administer the Takeover Code (the "Code") and to supervise and regulate takeovers and other matters to which the Code applies in accordance with the rules set out in the Code.

The Code is designed principally to ensure that shareholders are treated fairly and are not denied an opportunity to decide on the merits of a takeover and that shareholders of the same class are afforded equivalent treatment by an offeror. The Code also provides an orderly framework within which takeovers are conducted. In addition, it is designed to promote, in conjunction with other regulatory regimes, the integrity of the financial markets.

The Code is not concerned with the financial or commercial advantages or disadvantages of a takeover. These are matters for the company and its shareholders. Nor is the Code concerned with those issues, such as competition policy, which are the responsibility of government and other bodies.

The Panel was set up as a non-statutory body in 1968, since when its composition and powers have evolved as circumstances have changed. On 20 May 2006, the Panel was designated by the Secretary of State for Trade and Industry as the supervisory authority to carry out certain regulatory functions in relation to takeovers pursuant to the Directive on Takeover Bids (2004/25/EC). Its statutory functions are set out in and under Chapter 1 of Part 28 of the Companies Act 2006 (the "Act"). The rules set out in the Code also have a statutory basis in the Isle of Man, Jersey and Guernsey by virtue of legislation applying in those jurisdictions.

The essential characteristics of the Panel system are flexibility, certainty and speed, enabling parties to know where they stand under the Code in a timely fashion. These characteristics are important in order to avoid over-rigid rules and the risk of takeovers becoming delayed by litigation of a tactical nature, which may frustrate the ability of shareholders to decide the outcome of an offer.

If the Panel finds there has been a breach of the Code, its initial focus is to ensure an appropriate remedy is put in place. Once this has been achieved, it will consider exercising its disciplinary sanctions, namely private or public censure, the suspension or withdrawal of any exemption, approval or other special status granted by the Panel (or the imposition of conditions in relation to the grant) or reporting the offender's conduct to another regulatory authority (for example, the Department for Business, Innovation and Skills or the Financial Services Authority) or professional body, as it thinks fit. The Panel can also implement cold-shouldering procedures such that, in certain circumstances, persons authorised by the Financial Services Authority or certain other professional bodies will not be permitted to act for the individual in question in connection with a transaction subject to the Code.

The Panel also has powers to require documents and information, to make compensation rulings in certain circumstances, and to seek enforcement of its rulings through the courts.

## THE PANEL

The Chairman, the Deputy Chairmen and up to 20 independent members are appointed by the Panel. In addition, 11 members are nominated by major financial and business institutions thus ensuring a spread of expertise in takeovers, securities markets, industry and commerce.

Each member of the Panel is designated on appointment to act as a member of either the Panel's Hearings Committee or its Code Committee. Of the possible 20 independent members appointed by the Panel, up to eight may be designated as members of the Hearings Committee and up to 12 as members of the Code Committee. All of the members nominated by the major financial and business institutions are members of the Hearings Committee.

No person who is or has been a member of the Code Committee may be a member of the Hearings Committee.

## THE HEARINGS COMMITTEE

The principal function of the Hearings Committee is to review rulings of the Executive. It also hears disputed disciplinary cases. The Hearings Committee can be convened at short notice, where appropriate.

## THE CODE COMMITTEE

The Code Committee carries out the rule-making functions of the Panel and is solely responsible for keeping under review and, where appropriate, proposing, consulting upon and making and issuing amendments to the substantive provisions (in the Introduction, the General Principles and Rules) of the Code and the Rules of Procedure of the Hearings Committee.

## THE EXECUTIVE

The day-to-day work of takeover supervision and regulation is carried out by the Executive. In carrying out these functions, the Executive operates independently of the Panel. This includes, either on its own initiative or at the instigation of third parties, the conduct of investigations, the monitoring of relevant dealings in connection with the Code and the giving of rulings on the interpretation, application or effect of the Code. The Executive is available both for consultation and also the giving of rulings on the interpretation, application or effect of the Code before, during and, where appropriate, after takeovers or other relevant transactions. The Panel encourages, and in some cases requires, early consultation so that problems can be avoided; a major part of the Executive's role is to provide guidance.

The Executive is headed by the Director General, usually an investment banker on secondment. Some of the Executive's staff are permanent, providing an essential element of continuity. They are joined by lawyers, accountants, stockbrokers, investment bankers and others on two-year secondments.

Further information on the Panel is available on its website at www.thetakeoverpanel.org.uk.

# CHAIRMAN'S STATEMENT

The year to 31 March 2009 was characterised above all by the global financial crisis catalysed by the collapse of Lehman Brothers in September 2008. Public merger and acquisition activity was materially affected by the crisis and by the collapse in valuations and confidence in the equity markets. These events produced a rather different set of issues for the operation of the Code to those experienced in more normal times. It has been necessary to be responsive during offer periods to fast moving events and dramatically changing circumstances, and to find the right balance between flexibility and certainty. I believe that the Panel's principles-based regime has stood up well to the challenges posed in these conditions and has been able to safeguard shareholders' interests without compromising the principles and rules of the Code.

The global financial crisis has prompted more attention to be given internationally to the regulation of capital adequacy and liquidity and to the supervision of financial institutions, with the expectation that the regulatory regimes should become more prescriptive and more standardised across borders. There have been no immediate repercussions in the sphere of UK takeover regulation, which has operated effectively through the financial turmoil and which, under the broad requirements of the Takeovers Directive, has to be responsive to the laws and market conventions of individual EU countries. The Executive continues to develop good, practical working relationships with other European regulators who seek to draw on the experience of the Panel as the implementation of the Takeovers Directive becomes bedded down across the European Union.

External events had a significant impact on merger activity, with virtually no large scale bids being initiated in the second half of the year. However, the number of smaller scale offers, distress situations and other enquiries remained high, and in fact the number of companies in an offer period at any one time only reduced by around one quarter from the peak levels before the financial crisis. I would like to thank all the members of the Executive for their continuing professionalism and commitment throughout the year.

The composition of the Panel has remained broadly stable during the year and its members bring together a formidable range of experience. Chris Cheetham stepped down from the hard-working Code Committee, and hence the Panel, at the beginning of 2009 and I would like to thank him for his considerable contributions over recent years. Joy Seppala, with her background in the alternative investments industry, has joined the Code Committee and I am sure that her experience will be valuable and topical. Also, of course, I would like to thank all the members of the Panel for their very considerable support throughout the year.

I would like to thank Sir John Gieve, Deputy Governor of the Bank of England, for his wise counsel as a representative on the Nominations Committee, and to welcome Paul Tucker as his successor.

Within the Executive, I would like to welcome Chris Jillings, who joined in September 2008 after many years' investment banking experience at Schroders and Citi.

PETER SCOTT QC
8 July 2009

# CODE COMMITTEE CHAIRMAN'S REPORT

The Code Committee met three times during the course of the year and published two Public Consultation Papers ("PCPs") and three Response Statements ("RSs"). In addition, the Committee approved a number of minor amendments to the Code which did not require consultation because either they did not materially alter the effect of the provision in question or they were consequential on changes to relevant legislation or regulations. Four Instruments containing rules were made in the course of the year.

In July 2008, the Committee published RS 2008/1 setting out its conclusions on amendments that had been proposed in PCP 2008/1 relating to certain provisions of the Code dealing with competition reference periods. These amendments were made in order to clarify the application of the relevant Rules, to codify existing practice and to bring the Rules more closely into line with UK and EU competition law. Instrument 2008/2 was made on 15 July 2008 and the amendments became effective on 29 July.

At the same time, the Committee made Instrument 2008/3, which introduced some minor amendments to clarify the drafting of certain Rules and, in one case, to reflect an amendment required by changes introduced by the Companies Act 2006 (the "Act"). These amendments also came into effect on 29 July.

The Committee published two PCPs in July. PCP 2008/2 proposed a number of miscellaneous amendments to the Code, the purpose of which was to clarify the application of certain provisions of the Code or to codify existing practice in relation to matters not dealt with in the Code. PCP 2008/3 presented proposals arising from the Committee's consideration of the use of electronic forms of communication as a means of making documents, announcements and other offer-related information available to shareholders and the market generally. The Committee formulated its proposals following an informal consultation exercise carried out on its behalf by the Executive. Recognising the increasing use made by companies, regulatory authorities, shareholders and other market participants of electronic forms of communication and also the need to bring the Code into line with legislative changes introduced by the Act, the Committee made proposals for Code amendments to enable electronic forms of communication to be used for the purposes of sending documents and information to shareholders and other relevant persons. Proposals were also made for Code changes to facilitate and require the wider use of websites by parties to offers. At the same time, the Committee proposed amendments to ensure that persons nominated to enjoy "information rights" under the Act would receive the same information as shareholders.

Amendments arising from these two PCPs were published in RS 2008/2 and RS 2008/3 in December. Instrument 2008/4 was made on 19 December and came into effect on 30 March 2009, with the publication of a new edition of the Code.

In February 2009, the Committee, with the Panel, made some amendments to the Code to reflect the fact that, by Order in Council, the Panel had been put on a statutory footing in relation to its regulation of takeovers and mergers of Isle of Man companies and to clarify the application of the Code to certain Isle of Man companies. Instrument 2009/1 was published on 27 February and the amendments came into effect on 1 March. Further amendments were made on 25 June as a consequence of statutory authority being conferred on the Panel under legislation made in Jersey and Guernsey in relation to the regulation of takeovers and mergers of companies incorporated in those two jurisdictions. Instrument 2009/2 was published on 25 June and the amendments came into effect on 1 July. The Panel and the Code now operate on a consistent statutory basis in relation to takeovers in the UK, the Channel Islands and the Isle of Man and this is reflected in the revised Introduction to the Code.

The Committee also considered during the year possible amendments to the Code to increase transparency in relation to the positions of, and dealings by, persons involved in takeover offers. Once again, the Executive carried out an informal consultation exercise for the Committee to assist it in formulating its proposals. These were published in PCP 2009/1 in May 2009.

Chris Cheetham stood down as a Committee member in January after contributing to the Committee's work for the last 5 years. However, also in January, the Committee welcomed as a new member, Joy Seppala, whose experience of the alternative investments sector will be invaluable. I would like to thank all members for their continued diligence in tackling the Committee's work.

I would also like to express the Committee's appreciation once again to all those who have taken the time to contribute to the consultation process, whether informally with the Executive prior to publication of the Committee's proposals, or in responding to consultation papers. This participation is essential to the development of the Code and plays a critical role in assisting the Committee in its decision-making.

Finally, I would also like to thank the team in the Executive for their continuing support and hard work in bringing the Committee's proposals to fruition.

*Lindsay Tomlinson*

LINDSAY TOMLINSON
8 July 2009

# DIRECTOR GENERAL'S REPORT

The number of takeover proposals which became unconditional, were withdrawn, or lapsed during the year was 104. This was a significant decrease on last year's figure of 134. In the current year, the number of firm offers announced remains at a low level, reflecting the difficult economic and market conditions, although the Executive has continued to receive a significant volume of enquiries in relation to possible offers, whitewashes and other matters.

## ELECTRONIC COMMUNICATIONS

In recent years, companies, regulatory authorities, shareholders and other market participants have increasingly used electronic forms of communication and websites as a means of conveying information. In addition, legislative changes introduced by the Companies Act 2006 (the "Act") and other regulatory and technological changes led the Code Committee to conclude that the Code should be amended to:

    (i)    enable electronic forms of communication to be used to send documents and information to shareholders and certain other relevant persons;

    (ii)   facilitate and require a wider use of websites by parties to offers; and

    (iii)   ensure that persons nominated to enjoy "information rights" under the Act receive the same information as shareholders.

The new provisions of the Code became effective on 30 March 2009 and are expected to provide significant benefits to parties to offers, their advisers, shareholders, persons with information rights and other market participants.

## PRACTICE STATEMENTS

The new Practice Statements published during the course of the year were:

| | |
|---|---|
| Practice Statement No. 22 | – Irrevocable commitments, concert parties and related matters |
| Practice Statement No. 23 | – Rule 21.2 – Inducement fee agreements and other agreements between an offeror and the offeree company |
| Practice Statement No. 24 | – Appropriate offers and proposals under Rule 15 |

The text of all current Practice Statements is available on the Panel's website at www.thetakeoverpanel.org.uk.

THE TAKEOVER PANEL
2008-2009 REPORT

## ACCOUNTS

Operating income fell from £14,755,503 to £10,742,351, reflecting considerably lower levels of market activity.

Expenditure fell from £11,841,372 to £11,028,904, reflecting, in particular, reduced personnel costs. There was therefore an operating deficit of £286,553. After taking into account net interest of £732,905, a net surplus of £446,352 was recorded, compared with £3,621,278 in the previous year.

The principal sources of the Panel's income remain unpredictable and variable but, given continued difficult market conditions and low levels of takeover activity, it is considered likely that the Panel will incur a significant deficit in the current year. However, the Panel has substantial retained reserves and the Finance Committee is confident that the overall financial position of the Panel remains healthy. This will, as always, be kept under close review.

ROBERT HINGLEY
8 July 2009

# THE TAKEOVER APPEAL BOARD

## AS AT 8 JULY 2009

| | |
|---|---|
| LORD STEYN | CHAIRMAN |
| SIR MARTIN NOURSE | DEPUTY CHAIRMAN |
| ERIC E ANSTEE | NON-EXECUTIVE DIRECTOR, INSIGHT INVESTMENTS |
| KENNETH E AYERS | FORMER CHAIRMAN, NATIONAL ASSOCIATION OF PENSION FUNDS (INVESTMENT COUNCIL) |
| KAREN R COOK | MANAGING DIRECTOR, GOLDMAN SACHS INTERNATIONAL |
| JOHN K GRIEVES | FORMER SENIOR PARTNER, FRESHFIELDS BRUCKHAUS DERINGER |
| DAVID L MAYHEW | CHAIRMAN, JP MORGAN CAZENOVE |
| JOHN F NELSON | CHAIRMAN, HAMMERSON |
| SIMON CT ROBEY | MANAGING DIRECTOR, CO-CHAIRMAN OF GLOBAL M&A AND HEAD OF MORGAN STANLEY UK |
| ROBERT WA SWANNELL | SENIOR ADVISER, CITI EUROPE |
| DAVID WEBSTER | CHAIRMAN, INTERCONTINENTAL HOTELS GROUP |

The Takeover Appeal Board (the "Board") is an independent body which hears appeals against rulings of the Hearings Committee. The Chairman and Deputy Chairman are appointed by the Master of the Rolls and will usually have held high judicial office. The other members are appointed by the Chairman or Deputy Chairman of the Board and will usually have relevant knowledge and experience of takeovers and the Takeover Code. No person who is or has been a member of the Code Committee of the Panel may simultaneously or subsequently be a member of the Board.

Any party to a hearing before the Hearings Committee (or any person denied permission to be a party to a hearing before the Hearings Committee) may appeal to the Board against any ruling of the Hearings Committee or of the chairman of the relevant hearing (including in respect of procedural directions).

The procedures of the Board are set out in its Rules which can be viewed on its website at www.thetakeoverappealboard.org.uk.

No cases were heard by the Board during the year.

16

# STATISTICS

There were 104 (year ended 31 March 2008 — 134) resolved takeover or merger proposals (i.e. proposals announced under Rule 2.5 which subsequently became wholly unconditional, lapsed, or were withdrawn), of which 101 (130) reached the stage where formal documents were sent to shareholders. These proposals were in respect of 99 (128) offeree companies.

21 (13) offers were not recommended at the time of the Rule 2.5 announcement and 13 (10) of these were not recommended at the time the offer document was posted. 9 (7) of these remained unrecommended at the end of the offer period, of which 1 (2) lapsed.

5 (9) offers were, at the time of their announcement under Rule 2.5, mandatory bids under Rule 9.

A further 11 (22) proposals announced under Rule 2.5 were still open at 31 March 2009, and are not included in these figures.

|  | 2008-2009 | 2007-2008 |
|---|---|---|
| OUTCOME OF PROPOSALS |  |  |
| Successful proposals involving control | 88 | 109 |
| Unsuccessful proposals involving control | 6 | 7 |
| Proposals involving control withdrawn before issue of documents | 3 | 4 |
| Proposals involving minorities, etc | 7 | 14 |
|  | 104 | 134 |

There were 51 (72) offeree companies in an offer period as at 31 March 2009 and 211 (220) offeree companies went into an offer period during the year.

85 (69) whitewashes (i.e. documents seeking a waiver from existing shareholders of an obligation to make a mandatory offer under Rule 9 following an issue of new shares) were posted during the year.

26 (36) Code waivers (i.e. dispensations from the application of the Code to offers or proposals for companies with a very limited number of shareholders) were granted during the year.

The Executive issued 8 (4) letters of private criticism during the year of which 5 (1) related to a failure to consult, none (3) were market related and 3 (0) related to the conduct of the parties involved. The Executive issued no (1) statements of public criticism.

The Hearings Committee held one meeting to hear an appeal against a ruling by the Executive. The appeal was not successful.

THE TAKEOVER PANEL
2008-2009 REPORT

# ACCOUNTS FOR THE YEAR ENDED
# 31 MARCH 2009

## INCOME AND EXPENDITURE ACCOUNT
### FOR THE YEAR ENDED 31 MARCH 2009

|  | NOTE | 2009 £ | 2008 £ |
|---|---|---|---|
| INCOME |  |  |  |
| PTM levy |  | 5,600,650 | 6,123,521 |
| Document fees |  | 4,294,000 | 7,828,000 |
| Code sales |  | 212,355 | 267,852 |
| Exempt income |  | 370,000 | 500,000 |
| Recognised Intermediary fees |  | 255,000 | 30,000 |
| Other income |  | 10,346 | 6,130 |
|  |  | 10,742,351 | 14,755,503 |
| EXPENDITURE |  |  |  |
| Personnel costs |  | 7,936,269 | 8,759,844 |
| Accommodation costs |  | 1,008,312 | 922,364 |
| Other expenditure |  | 2,084,323 | 2,159,164 |
|  |  | 11,028,904 | 11,841,372 |
| (DEFICIT)/SURPLUS BEFORE INTEREST AND TAXATION |  | (286,553) | 2,914,131 |
| Interest receivable |  | 1,007,729 | 990,181 |
| Taxation | 2 | (274,824) | (283,034) |
| SURPLUS FOR THE YEAR |  | 446,352 | 3,621,278 |
| ACCUMULATED SURPLUS AT BEGINNING OF YEAR |  | 20,680,212 | 17,058,934 |
| ACCUMULATED SURPLUS AT END OF YEAR |  | 21,126,564 | 20,680,212 |

All activities are regarded as being continuing.

The Takeover Panel has no recognised gains and losses other than the income and expenditure shown above and therefore no statement of total recognised gains and losses has been presented.

THE TAKEOVER PANEL
2008-2009 REPORT

# BALANCE SHEET
## AT 31 MARCH 2009

|  | NOTE | 2009 | 2008 |
|---|---|---|---|
|  |  | £ | £ |
| FIXED ASSETS | 3 | 80,333 | 68,494 |
| CURRENT ASSETS |  |  |  |
| Debtors and prepayments | 4 | 2,130,318 | 2,615,944 |
| Debtors — amounts due after one year: |  |  |  |
| Rent deposit |  | 469,914 | 469,914 |
|  |  | 2,600,232 | 3,085,858 |
| Cash and short term deposits |  | 20,569,077 | 18,715,127 |
|  |  | 23,169,309 | 21,800,985 |
| CURRENT LIABILITIES |  |  |  |
| Creditors and accruals | 5 | 1,852,337 | 912,232 |
| Corporation tax |  | 270,741 | 277,035 |
|  |  | 2,123,078 | 1,189,267 |
| NET ASSETS |  | 21,126,564 | 20,680,212 |
| Representing |  |  |  |
| ACCUMULATED SURPLUS |  | 21,126,564 | 20,680,212 |

The accounts on pages 18 to 22 were approved by the Finance Committee on 8 July 2009 and signed on behalf of the Members by:

PETER SCOTT QC

The Chairman, Panel on Takeovers and Mergers

ANTONY BEEVOR

The Chairman, Finance Committee

# CASH FLOW STATEMENT
## FOR THE YEAR ENDED 31 MARCH 2009

|  | NOTE | 2009 | 2008 |
|---|---|---|---|
|  |  | £ | £ |
| NET CASH INFLOW FROM OPERATING ACTIVITIES | 6 | 1,174,352 | 3,780,849 |
| RETURNS ON INVESTMENTS AND SERVICING OF FINANCE |  |  |  |
| Interest receivable |  | 1,007,729 | 990,181 |
| TAXATION |  |  |  |
| UK corporation tax paid |  | (281,118) | (123,276) |
| CAPITAL EXPENDITURE |  | (47,013) | (86,606) |
| INCREASE IN CASH | 7 | 1,853,950 | 4,561,148 |

# NOTES TO THE ACCOUNTS

1. BASIS OF PREPARATION OF ACCOUNTS AND ACCOUNTING POLICIES

   (a) These accounts have been prepared under the historical cost basis of accounting.

   (b) Income comprises the PTM levy, Document fees, Code sales, Exempt income, Recognised Intermediary fees and other income and is accounted for on an accruals basis.

   (c) Expenditure is accounted for on an accruals basis.

   (d) Interest receivable arises wholly in the UK and relates to interest receivable on deposits held and is recognised on an accruals basis.

   (e) Fixed assets are shown at historical cost net of accumulated depreciation. Historical cost includes expenditure that is directly attributable to the acquisition of the items. Repairs and maintenance are charged to the income statement during the financial periods in which they are incurred.

   Depreciation is calculated to write down the cost of all tangible fixed assets on a straight-line basis over their estimated useful economic lives. The periods generally applicable are:

   Fixtures and fittings      4 years

   Motor vehicles             4 years

|  | 2009 | 2008 |
|---|---|---|
|  | £ | £ |
| **2. TAXATION** |  |  |
| UK corporation tax payable: |  |  |
| Current tax payable | 273,549 | 283,034 |
| Prior year adjustment | 1,275 | — |
| Tax charge for the year | 274,824 | 283,034 |

NOTES TO THE ACCOUNTS *continued*

In agreement with HM Revenue & Customs, the Panel pays Corporation Tax on the bank deposit interest it receives and on any profit it makes on Code sales. For the year to 2009, Corporation tax was charged at the full rate of 28% which after marginal relief resulted in an effective tax rate of 27%.

| | Motor vehicles | Fixtures & fittings | Total |
|---|---|---|---|
| **3. TANGIBLE FIXED ASSETS** | £ | £ | £ |
| Cost | | | |
| At 1 April 2008 | 39,181 | 54,503 | 93,684 |
| Additions | — | 47,013 | 47,013 |
| At 31 March 2009 | 39,181 | 101,516 | 140,697 |
| Depreciation | | | |
| At 1 April 2008 | 9,795 | 15,395 | 25,190 |
| Provided during the year | 9,795 | 25,379 | 35,174 |
| At 31 March 2009 | 19,590 | 40,774 | 60,364 |
| Net book value | | | |
| At 31 March 2009 | 19,591 | 60,742 | 80,333 |
| At 31 March 2008 | 29,386 | 39,108 | 68,494 |

| | 2009 | 2008 |
|---|---|---|
| **4. DEBTORS AND PREPAYMENTS** | £ | £ |
| PTM levy accrued | 1,437,188 | 1,484,965 |
| Document fees accrued | 97,000 | 467,500 |
| Exempt income accrued | 35,000 | 55,000 |
| Recognised Intermediary fees accrued | 30,000 | 10,000 |
| Code income accrued | — | 2,875 |
| Other debtors and prepayments | 531,130 | 594,604 |
| | 2,130,318 | 2,615,944 |

| | 2009 | 2008 |
|---|---|---|
| **5. CREDITORS AND ACCRUALS** | £ | £ |
| Personnel costs | 1,364,049 | 525,254 |
| Legal and professional fees | 183,745 | 48,055 |
| Other creditors and accruals | 304,543 | 294,699 |
| Provision for PTM levy repayable | — | 44,224 |
| | 1,852,337 | 912,232 |

THE TAKEOVER PANEL
2008-2009 REPORT

NOTES TO THE ACCOUNTS *continued*

| | | 2009 | 2008 |
|---|---|---|---|
| | | £ | £ |
| 6. | NET CASH FLOW FROM OPERATING ACTIVITIES | | |
| | (Deficit)/Surplus before interest and taxation | (286,553) | 2,914,131 |
| | Depreciation | 35,174 | 23,421 |
| | Decrease in debtors and prepayments | 485,626 | 585,207 |
| | Increase in creditors | 940,105 | 258,090 |
| | Net cash inflow from operating activities | 1,174,352 | 3,780,849 |
| | | 2009 | 2008 |
| 7. | RECONCILIATION OF NET CASH FLOW TO MOVEMENT IN NET FUNDS | £ | £ |
| | Increase in cash in period | 1,853,950 | 4,561,148 |
| | Change in net funds | 1,853,950 | 4,561,148 |
| | Net funds at 1 April 2008 | 18,715,127 | 14,153,979 |
| | Net funds at 31 March 2009 | 20,569,077 | 18,715,127 |

INDEPENDENT AUDITORS' REPORT TO THE MEMBERS OF THE TAKEOVER PANEL

We have audited the accounts of the Takeover Panel for the year ended 31 March 2009 which comprise the income and expenditure account, the balance sheet, the statement of cash flows and the related notes 1 to 7. These accounts have been prepared under the accounting policies set out therein.

This report is made solely to the Panel members, as a body. Our audit work has been undertaken so that we might state to the Panel members those matters we are required to state to them in an auditors' report and for no other purpose. To the fullest extent permitted by law, we do not accept or assume responsibility to anyone other than the Panel and the Panel members as a body, for our audit work, for this report, or for the opinions we have formed.

RESPECTIVE RESPONSIBILITIES OF PANEL MEMBERS AND AUDITORS

The Panel members' responsibilities for preparing the accounts in accordance with the basis of preparation and accounting policies in note 1 are set out in the statement of Panel Members' Responsibilities.

Our responsibility is to audit the accounts in accordance with International Standards on Auditing (UK and Ireland).

We report to you our opinion as to whether the accounts are properly prepared, in all material respects, in accordance with the basis of preparation and accounting policies in note 1.

In addition, we also report to you if, in our opinion, the Panel has not kept proper accounting records or if we have not received all the information and explanations we require for our audit.

We read other information contained in the Annual Report, and consider whether it is consistent with the audited accounts. The other information comprises only Panel Members and Executive, Introduction to the Takeover Panel, Chairman's Statement, Code Committee Chairman's Report, the Director General's Report, The Takeover Appeal Board, the Statistics, Statements issued by the Panel and Statements issued by the Code Committee. We consider the implications for our report if we become aware of any apparent misstatements or material inconsistencies with the accounts. Our responsibilities do not extend to any other information.

BASIS OF AUDIT OPINION

We conducted our audit in accordance with International Standards on Auditing (UK and Ireland) issued by the Auditing Practices Board. An audit includes examination, on a test basis, of evidence relevant to the amounts and disclosures in the accounts. It also includes an assessment of the significant estimates and judgments made by the Panel members in the preparation of the accounts, and of whether the accounting policies are appropriate to the Panel's circumstances, consistently applied and adequately disclosed.

We planned and performed our audit so as to obtain all the information and explanations which we considered necessary in order to provide us with sufficient evidence to give reasonable assurance that the accounts are free from material misstatement, whether caused by fraud or other irregularity or error. In forming our opinion we also evaluated the overall adequacy of the presentation of information in the accounts.

OPINION

In our opinion the accounts have been properly prepared in accordance with the basis of preparation and accounting policies in note 1 of the accounts.

GRANT THORNTON UK LLP
REGISTERED AUDITORS
CHARTERED ACCOUNTANTS

HEMEL HEMPSTEAD
8 July 2009

STATEMENT OF PANEL MEMBERS' RESPONSIBILITIES

Pursuant to section 963 of the Companies Act 2006, the Panel has a duty to include accounts in its Annual Report. The Panel members have determined that these accounts should present fairly the state of affairs of the Panel as at the end of the financial year and of its surplus or deficit for that period.

The Panel members confirm that suitable accounting policies have been used and applied consistently and reasonable and prudent judgments and estimates have been made in the preparation of the accounts for the year ended 31 March 2009. The Panel members also confirm that applicable accounting standards have been followed and that the accounts have been prepared on the going concern basis.

The Panel members are responsible for keeping proper accounting records and for taking reasonable steps to safeguard the assets of the Panel and to prevent and to detect fraud and other irregularities.

# STATEMENTS ISSUED BY THE PANEL

**2008**

| | | |
|---|---|---|
| 3 April | 2008/14 | FRIENDS PROVIDENT PLC<br>*(Requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid by 30 April 2008)* |
| 4 April | 2008/15 | CODE AMENDMENTS<br>*(Implementation of minor amendments to Rule 29 of the Code (Asset valuations))* |
| 10 April | 2008/16 | IMPRINT PLC<br>*(Auction procedure introduced under Rule 32.5)* |
| 11 April | 2008/17 | KAZAKHMYS PLC<br>*(Requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid by 16 May 2008)* |
| 14 April | 2008/18 | IMPRINT PLC<br>*(Result of auction procedure)* |
| 8 May | 2008/19 | NOVERA ENERGY PLC<br>*(Requirement for potential competing offerors to make Rule 2.5 announcement or announce no intention to bid by 2 June 2008)* |
| 21 May | 2008/20 | TDG PLC<br>*(Requirement for potential competing offerors to make Rule 2.5 announcement or announce no intention to bid by 20 June 2008)* |
| 30 May | 2008/21 | NOVERA ENERGY PLC<br>*(Procedure regarding the requirement for potential competing offerors to make Rule 2.5 announcement or announce no intention to bid ahead of the deadline of 2 June 2008)* |
| 5 June | 2008/22 | COMPANIES (TAKEOVERS AND MERGERS) (JERSEY) LAW<br>*(Regulation of takeovers and mergers of Jersey companies)* |
| 6 June | 2008/23 | NEW DEPUTY DIRECTOR GENERAL FOR THE TAKEOVER PANEL<br>*(Panel Executive appointment)* |
| 13 June | 2008/24 | TDG PLC<br>*(Procedure regarding the requirement for potential competing offerors to make Rule 2.5 announcement or announce no intention to bid ahead of 20 June 2008)* |
| 20 June | 2008/25 | TDG PLC<br>*(Extension of the requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid from 20 June to 27 June 2008)* |
| 24 June | 2008/26 | ENODIS PLC<br>*(Auction procedure introduced under Rule 32.5)* |
| 27 June | 2008/27 | TDG PLC<br>*(Extension of the requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid from 27 June to 4 July 2008)* |
| 30 June | 2008/28 | ENODIS PLC<br>*(Result of auction procedure)* |
| 2 July | 2008/29 | TAYLOR NELSON SOFRES PLC<br>*(Requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid by 9 July 2008)* |
| 4 July | 2008/30 | GRAINGER PLC<br>*(Requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid by 19 August 2008)* |

**2008**

| | | |
|---|---|---|
| 10 July | 2008/31 | ISSUE, WITHDRAWAL AND AMENDMENT OF PRACTICE STATEMENTS<br>*(Issue of Practice Statements No. 22, No. 23 and No. 24, withdrawal of Practice Statements No. 4 and No. 15 and amendment of Practice Statement No. 20)* |
| 16 July | 2008/33 | 2008 ANNUAL REPORT<br>*(Publication of Panel's 2008 Annual Report)* |
| 29 July | 2008/35 | CODE AMENDMENTS<br>*(Implementation of amendments in relation to competition reference periods and other minor and consequential amendments)* |
| 21 August | 2008/36 | ANGLE PLC<br>*(Requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid by 12 September 2008)* |
| 21 August | 2008/37 | THUS GROUP PLC<br>*(Offer timetable extended)* |
| 27 August | 2008/38 | MICHAEL PAGE INTERNATIONAL PLC<br>*(Requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid by 30 September 2008)* |
| 3 September | 2008/39 | LONMIN PLC<br>*(Requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid by 2 October 2008)* |
| 4 September | 2008/40 | TAYLOR NELSON SOFRES PLC<br>*(Offer timetable extended)* |
| 9 September | 2008/41 | INFORMA PLC<br>*(Requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid by 26 September 2008)* |
| 7 October | 2008/42 | ANDOR TECHNOLOGY PLC<br>*(Requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid by 13 October 2008)* |
| 16 October | 2008/43 | SERICA ENERGY PLC<br>*(Requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid by 10 November 2008)* |
| 26 November | 2008/44 | RIO TINTO PLC<br>*(End of offer period as a result of inability to satisfy ECMR pre-condition)* |
| 8 December | 2008/45 | IMPERIAL ENERGY CORPORATION PLC<br>*(Holding announcement of the Hearings Committee decision)* |
| 11 December | 2008/46 | IMPERIAL ENERGY CORPORATION PLC<br>*(Reasons for the Hearings Committee's decision)* |

**2009**

| | | |
|---|---|---|
| 18 February | 2009/1 | DEUTSCHE LAND PLC<br>*(Requirement for potential offeror to make Rule 2.5 announcement or announce no intention to bid by 27 March 2009)* |
| 27 February | 2009/2 | CODE AMENDMENTS<br>*(Code amendments to have effect on 1 March 2009 in relation to legislative changes relating to the Isle of Man)* |
| 27 March | 2009/3 | DEUTSCHE LAND PLC<br>*(Potential offeror no longer required to make Rule 2.5 announcement or announce no intention to bid by 27 March 2009)* |
| 30 March | 2009/4 | CODE AMENDMENTS AND UPDATING OF PANEL'S WEBSITE<br>*(Code amendments relating to electronic communications, websites and information rights, other miscellaneous Code amendments and updating of the Panel's website)* |
| 30 March | 2009/5 | AMENDMENT OF PRACTICE STATEMENTS<br>*(Amendment of Practice Statements No. 5, No. 10, No. 20 and No. 24)* |

THE TAKEOVER PANEL
2008-2009 REPORT

# STATEMENTS ISSUED BY THE CODE COMMITTEE

**2008**

| | | |
|---|---|---|
| 15 July | 2008/32 | CODE COMMITTEE - RESPONSE STATEMENT 2008/1 (COMPETITION REFERENCE PERIODS) AND OTHER MINOR AND CONSEQUENTIAL CODE AMENDMENTS<br>*(Publication of Response Statement 2008/1 and Instruments 2008/2 and 2008/3)* |
| 18 July | 2008/34 | CODE COMMITTEE - PUBLIC CONSULTATION PAPERS<br>*(Issue of Public Consultation Paper 2008/2 (Miscellaneous Code amendments) and Public Consultation Paper 2008/3 (Electronic communications, websites and information rights))* |
| 19 December | 2008/47 | CODE COMMITTEE - RESPONSE STATEMENTS<br>*(Publication of Response Statement 2008/2 (Miscellaneous Code amendments), Response Statement 2008/3 (Electronic communications, websites and information rights) and Instrument 2008/4)* |