# EXHIBIT 12



## 2.5 Delaying disclosure of inside information

### Delaying disclosure

2.5.1 **R** An *issuer* may, under its own responsibility, delay the public disclosure of *inside information*, such as not to prejudice its legitimate interests provided that:

(1) such omission would not be likely to mislead the public;

(2) any *person* receiving the information owes the *issuer* a duty of confidentiality, regardless of whether such duty is based on law, regulations, articles of association or contract; and

(3) the *issuer* is able to ensure the confidentiality of that information. [Note: Article 6(2) and (3) *Market Abuse Directive*]

### Legitimate interests and when delay will not mislead the public

2.5.2 **G** (1) Delaying disclosure of *inside information* will not always mislead the public, although a developing situation should be monitored so that if circumstances change an immediate disclosure can be made.

(2) Investors understand that some information must be kept confidential until developments are at a stage when an announcement can be made without prejudicing the legitimate interests of the *issuer*.

2.5.3 **R** For the purposes of applying ■ DTR 2.5.1 R, legitimate interests may, in particular, relate to the following non-exhaustive circumstances:

(1) negotiations in course, or related elements where the outcome or normal pattern of those negotiations would be likely to be affected by public disclosure. In particular, in the event that the financial viability of the *issuer* is in grave and imminent danger, although not within the scope of the applicable insolvency law, public disclosure of information may be delayed for a limited period where such a public disclosure would seriously jeopardise the interest of existing and potential shareholders by undermining the conclusion of specific negotiations designed to ensure the long term financial recovery of the *issuer*; or

> (2) decisions taken or contracts made by the management body of an *issuer* which need the approval of another body of the *issuer* in order to become effective, where the organisation of such an *issuer* requires the separation between these bodies, provided that a public disclosure of the information before such approval together with the simultaneous announcement that this approval is still pending would jeopardise the correct assessment of the information by the public. [Note: Article 3(1) 2003/124/EC]

2.5.4 [G]

(1) ■ DTR 2.5.3 R (1) does not allow an *issuer* to delay public disclosure of the fact that it is in financial difficulty or of its worsening financial condition and is limited to the fact or substance of the negotiations to deal with such a situation. An *issuer* cannot delay disclosure of *inside information* on the basis that its position in subsequent negotiations to deal with the situation will be jeopardised by the disclosure of its financial condition.

(2) The legitimate interest described in ■ DTR 2.5.3 R (2) refers to an *issuer* with a dual board structure (e.g. a management board and supervisory board if and to the extent that decisions of the management board require ratification by the supervisory board). An *issuer* with a unitary board structure would be unable to take advantage of ■ DTR 2.5.3 R (2) and, therefore, ■ DTR 2.5.3 R (2) should only be available to a very limited number of *issuers* in the *United Kingdom*.

2.5.5 [G] An *issuer* should not be obliged to disclose impending developments that could be jeopardised by premature disclosure. Whether or not an *issuer* has a legitimate interest which would be prejudiced by the disclosure of certain *inside information* is an assessment which must be made by the *issuer* in the first instance. However, the *FSA* considers that, other than in relation to impending developments or matters described in ■ DTR 2.5.3 R, there are unlikely to be other circumstances where delay would be justified.

### Selective disclosure

2.5.6 [R] **Whenever an *issuer* or a person acting on his behalf or for his account discloses any *inside information* to any third party in the normal exercise of his employment, profession or duties, the *issuer* must make complete and effective public disclosure of that information via a RIS, simultaneously in the case of an intentional disclosure and as soon as possible in the case of a non-intentional disclosure, unless ■ DTR 2.5.1 R applies. [Note: Article 6(3) *Market Abuse Directive* ]**

2.5.7 [G]

(1) When an *issuer* is permitted to delay public disclosure of *inside information* in accordance with ■ DTR 2.5.1 R, it may selectively disclose that information to *persons* owing it a duty of confidentiality.

(2) Such selective disclosure may be made to another *person* if it is in the normal course of the exercise of his employment, profession or duties. However, selective disclosure cannot be made to any *person* simply because they owe the *issuer* a duty of confidentiality. For example, an *issuer* contemplating a major transaction which requires shareholder support or which could significantly impact its lending arrangements or credit-rating may selectively disclose details of the proposed transaction to major shareholders, its lenders and/or credit-rating agency as long as the recipients are bound by a duty of confidentiality. An *issuer*